UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

STATE OF CALIFORNIA, by and through )
ARNOLD SCHWARZENEGGER, )
GOVERNOR OF THE STATE OF CALIFORNIA, )
and the CALIFORNIA AIR RESOURCES BOARD, )    Case No. 1:07-CV-02024
)
Plaintiff, )
)    **MOTION TO**
v. )    **INTERVENE AS**
)    **PARTY PLAINTIFFS**
THE UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY, and )
STEPHEN L. JOHNSON, Administrator, )
)
Defendants. )
_____)

The Commonwealth of Massachusetts and the States of New York, Arizona, Connecticut,

Illinois, Maine, Maryland, New Jersey, New Mexico, Oregon, Rhode Island, Vermont,

Washington, and the Commonwealth of Pennsylvania Department of Environmental Protection

("the Proposed Intervenors") move to intervene as party-plaintiffs pursuant to Fed. R. Civ. Pro.

24(a) and (b).  A proposed complaint is annexed to this motion as Exhibit A.

1.    On October 24, 2007, the State of California ("California"), by and through

Governor Arnold Schwarzenegger, and the California Air Resources Board ("CARB"), filed a

complaint in this Court seeking to compel the United States Environmental Protection Agency

("EPA"), and its Administrator, Stephen L. Johnson, to decide California's petition for a waiver

of federal preemption, as provided for in Section 209(b) of the Clean Air Act ("CAA"), 42

U.S.C. § 7543(b), with respect to California's Regulation to Control Greenhouse Gas Emissions

from Motor Vehicles (Cal. Code Regs. tit. 13, §§ 1900, 1961, 1961.1 (2007); CARB Exec. Order

1

No. G-05-061, Cal. Reg. Notice Register 2005, No. 39-Z, at 1427-28 (2005)).  This regulation requires reductions in fleet-average, greenhouse-gas emissions for most new motor vehicles sold in California, beginning with the 2009 model-year.

2.      California, acting through CARB, requested the  waiver of preemption from EPA on December 21, 2005 (EPA Docket EPA-HQ-OAR-2006-0173), pursuant to CAA § 209(b), but as California's petition to this Court demonstrates, EPA has unreasonably delayed acting on the waiver request.

3.      The Proposed Intervenors have strong interests in ensuring that EPA grants California's waiver petition without any further unnecessary delay, as each of them has promulgated or is contemplating promulgating California's motor vehicle greenhouse gas emissions standards, which cannot be enforced unless and until EPA grants California's waiver.

<u>**BACKGROUND**</u>

<u>**Statutory Background: the Clean Air Act**</u>

4.      The CAA authorizes the EPA to regulate tailpipe emissions from new motor vehicles.  CAA § 202, 42 U.S.C. § 7521.  Although the CAA generally prohibits states from adopting their own emission standards for new motor vehicles, CAA § 209, 42 U.S.C. § 7543(a), CAA § 209(b) grants California the authority to set its own emission standards because of the state's long-standing, severe air pollution problems as well as its pioneering effortsin adopting "motor vehicle emission standards different from and in large measure more advanced than the corresponding federal program; in short, to act as a kind of laboratory for innovation." <u>Motor and Equip. Mfrs. Ass'n, Inc. v. EPA</u>, 627 F.2d 1095, 1110-1111 (D.C. Cir.1979).  Under CAA § 209(b), California must request and be granted a waiver of preemption from EPA before it may

2

enforce its regulations.

In 1977, Congress added CAA § 177, 42 U.S.C. § 7507, which authorizes other states to adopt emission standards for new motor vehicles that are identical to those California standards for which a waiver has been granted by EPA.

**California's Adoption of its Greenhouse Gas Emission Regulation
and Request for a Waiver**

5.      Recognizing that motor vehicles are the second greatest source of greenhouse gas emissions, CARB in September 2004approved regulations that limit the amount of greenhouse gases that light- and medium-duty passenger vehicles sold in California may emit.  See, e.g., 2005 Cal. Regulatory Notice Reg. 1427 (Sept. 30, 2005) (noting 2004 amendments).

6.      On December 21, 2005, pursuant to § 209, California requested a waiver of preemption for its greenhouse gas regulations from EPA.

**Because Proposed Intervenors Have or Expect to Adopt California's Greenhouse Gas
Regulation, the Proposed Intervenors Have a Substantial Interest in this Action**

7.      Pursuant to their authority under CAA § 177, 42 U.S.C. § 7507, many of the Proposed Intervenors have adopted or promulgated the greenhouse gas emissions regulation first adopted by California.  See Conn. Agencies Regs. § 22a-174-36b; 06-096 Code of Maine Regs. Ch. 127; 310 Code of Mass. Regs. 7.40; N.J. Admin. Code 7:27-29; Title 6 of the N.Y. Code of Rules and Regs., Part 218-8; Ore. Admin. Regs. 340-257-0100; 25 Pa. Code § 126.411; R. I. Low Emission Vehicle Program, Air Pollution Control Reg. No. 37.; Vt. Air Pollution Control Regs. Subch. XI and App. F; Wash. Admin. Code Ch.173-423.

8.      Proposed Intervenors Maryland and New Mexico are in the process of promulgating the GHG regulation, see 34 Md. Reg. 1609; 20.2.88 NMAC.

9.    Pursuant to Executive Order 2006-13, plaintiff-intervenor Arizona is in the process of drafting rules adopting the California GHG regulation.

10.    Proposed Intervenor Illinois is considering adoption of the GHG regulation first adopted by California.

11.    Indeed, some of the Proposed Intervenors are required as a matter of state law to adopt California's emission standards.  See, e.g., Conn. Gen. Stat. § 22a-174g; 06-096 Code of Maine Regs. Ch. 127; Md. Code Ann. Envir. § 2-1102 (2007); Mass. G. L. Ch. 111, § 142K; N.J. Stat. Ann. § 26:2C-8.15 et seq.; Ore. Admin. Regs. 340-257-0100; Rev. Code Wash. 70.120A.

12.    However, before the motor vehicle greenhouse gas regulations of the Proposed Intervenors can be enforced, EPA must first decide – and grant – California's waiver application.

**The Proposed Intervenors Also Have a Substantial Interest in This Action
Because of the Effects of Global Warming on Their States**

13.    The Proposed Intervenors have adopted or promulgated, or are contemplating adopting or promulgating, the greenhouse gas emissions regulation first adopted by California, because, like California, they recognize that motor vehicles are one of the most significant sources of the greenhouse gases that cause global warming.  Global warming, in turn, is already negatively impacting the public health, economies and environments of the Proposed Intervenors. The effects of global warming are very serious, and in the absence of any abatement in global warming, these effects will only worsen.  A few examples follow.

14.    Global warming accelerates sea level rise, which threatens coastal populations, vital infrastructure and property, and delicate ecosystems.  See http://yosemite.epa.gov/OAR/globalwarming.nsf/content/CoastalZones.html.  Many of the

Proposed Intervenors – Maine, Massachusetts, Connecticut, Rhode Island, New Jersey, New York, Maryland, Oregon, and Washington – have significant coastlines and densely populated coastal areas. States on the East Coast below Cape Cod are particularly vulnerable to problems such as loss of coastal wetlands, erosion of beaches, saltwater intrusion of drinking water, and decreased longevity of low-lying infrastructure because this part of the East Coast is low and sandy. See, e.g., See EPA, "Climate Change and Connecticut," (Sept. 1997) ("CT Impacts") at 3; Climate Change and Maryland" (Sept. 1998) ("MD Impacts") at 3; "Climate Change and Massachusetts" (Sept. 1997) ("MA Impacts") at 3; "Climate Change and New Jersey" (Sept. 1997) ("NJ Impacts") at 3; "Climate Change and New York" (Sept. 1997) ("NY Impacts") at 3; "Climate Change and Rhode Island" (Sept. 1997) ("RI Impacts") at 3.

One of the causes of sea level rise is ice melt, which is occurring far faster than scientists had previously thought. See Richard A. Kerr, "Is Battered Arctic Sea Ice Down For the Count?" Science, Oct. 5, 2007, at 33-34; Daniel Cressey, "Arctic Melt Opens Northwest Passage," Nature 449, 267 - 267 (19 Sep 2007); Andrew C. Revkin, "Arctic Melt Unnerves the Experts," N.Y. Times, Oct. 2, 2007 ("The pace of change has far exceeded what had been estimated by almost all simulations used to envision how the Arctic will respond to rising concentrations of greenhouse gases linked to global warming.").

15.     Of equal concern are two recent studies that strongly suggest a link between increased global warming and hurricanes. See P.J. Webster, et. al, "Changes in Tropical Cyclone Number, Duration, and Intensity in a Warming Environment," Science, Sept. 16, 2005, Vol. 309. no. 5742, at 1844-1846 (showing that in the last 35 years the number of category 4 and 5 hurricanes has almost doubled); Kerry Emanuel, "Increasing Destructiveness of Tropical

Cyclones over the past 30 Years," Nature, July 31, 2005 (finding a similar increase in intensity in storms in the Atlantic and western North Pacific). Because these weather events would be superimposed on a higher sea level, they would cause damage over a larger area.

16.    Heat waves have become more prolonged and intense with global warming. See Center for Health and the Global Environment, Harvard Medical School, "Climate Change Futures: Health, Ecological and Economic Dimensions" (Nov. 2005) ("Climate Change Futures") at 53. In the United States, heat waves are the most prominent cause of weather-related mortality, exceeding the mortality rates for all other weather events combined. See S. A. Changnon, et al., "Impacts and Responses to the 1995 Heat Wave: A Call to Action," Bull. Am. Meteorol. Soc. 77:1497-1506 (1996). Many Mid-Atlantic and Midwestern states, with their irregular, intense heat waves, are particularly susceptible to heat-related deaths and illnesses. See CT Impacts at 3; "Climate Change and Illinois," (Sept. 1997) ("IL Impacts") at 3; MA Impacts at 3; MD Impacts at 2-3; NJ Impacts at 3; NY Impacts at 3; "Climate Change and Pennsylvania," (Sept. 1997) ("PA Impacts") at 3; RI Impacts at 3.

17.    Rising temperatures also lead to increased air pollution levels, with their attendant increases in respiratory illness and death. See http://yosemite.epa.gov/OAR/globalwarming.nsf/content/health.html. The presence of ground-level ozone in concentrations above the national ambient air quality standard has significant adverse health affects in these non-attainment areas, including increased hospitalizations and mortality risk for people with asthma and other respiratory diseases. See EPAWebsite/Impactshealth.html. Many proposed intervenors have large areas of the state that are in non-attainment for national ambient air quality standards for ozone. See, e.g., MA Impacts

6

at 3; NY Impacts at 3; PA Impacts at 3.  In other cases, the entire state, or virtually the entire state, is in non-attainment for ozone.  See, e.g., CT Impacts at 3; MD Impacts at 3; NJ Impacts at 3; RI Impacts at 3.

18.    Hotter, drier weather could increase the frequency and intensity of wildfires in Western and Pacific Northwestern states.  See EPA, "Climate Change and Arizona," (Sept. 1997) ("AZ Impacts") at 4; "Climate Change and New Mexico" (Sept. 1997) (NM Impacts) at 4; EPA, "Oregon and Climate Change" ("OR Impacts") at 4; "Washington and Climate Change" ("WA Impacts") at 4.

19.    Other effects include disrupted water supplies.  For example, warmer temperatures have already resulted in decreased mountain snowfall, which negatively impacts states that depend on mountain snowpack for part of their water supply, such as states in the Pacific Northwest and New England.  See, e.g., OR Impacts at 3; WA Impacts at 4; EPA, "Climate Change and Maine" (Sept. 1998) ("ME Impacts") at 4; MA Impacts at 4; EPA, "Climate Change and Vermont" ("VT Impacts") at 4.

20.    Another effect is the alteration of forest character, including the loss of hardwood trees that give many Northeastern forests their brilliant fall colors and support tourism and the maple syrup industry.  See CT Impacts at 4; MA Impacts at 4; ME Impacts at 4; VT Impacts at 4.

21.    The undertaking of projects to prepare for harmful global warming effects -- for example, modifying infrastructure to withstand rising sea levels and increased severe weather -- are long-term projects that cannot practicably be deferred until a crisis is at hand.

22.    For Proposed Intervenors, adopting California's motor vehicle greenhouse gas regulations is part of a larger state strategy to abate greenhouse gas emissions.  For example,

several Northeastern states have agreed to stabilize and reduce carbon dioxide emissions from

power plants. See http://www.rggi.org (describing the Regional Greenhouse Gas Initiative).

Similarly, other states, including Massachusetts, Oregon, and Washington, have adopted statutes

and/or regulations regulating carbon dioxide from power plants. See 310 Code Mass. Regs. 7.29;

ORS 469.503 and Or. Admin. Rules 345-024-0500 to 0720; Rev. Code of Wash. 70.94.892,

80.70; Wash. Admin. Code Ch. 173-407. In addition, 22 states, including several Proposed

Intervenors, and the District of Columbia, have established Renewable Portfolio Standards,

which require states to increase the percentage of energy that they obtain from low-carbon energy

sources such as solar, tidal and wind power. See

http://www.pewclimate.org/what_s_being_done/in_the_states/rps.cfm.

## ARGUMENT

### A.    The Proposed Intervenors Satisfy the Standard for Intervention As of Right Under Fed. R. Civ. Proc. 24(a).

Federal Rule of Civil Procedure 24(a)(2) provides that:

Upon timely application, anyone shall be permitted to intervene in an action: . . . .
when the applicant claims an interest relating to the property or transaction which
is the subject of the action and the applicant is so situated that the disposition of
the action may as a practical matter impair or impede the applicant's ability to
protect that interest, unless the applicant's interest is adequately represented by
existing parties.

Fed. R. Civ. Proc. 24(a)(2). Rule 24(a) is construed liberally in favor of granting intervention. In

Re Vitamins Antitrust Class Actions, 215 F.3d 26, 29 (D.C. Cir. 2000); Southwest Ctr. for

Biological Diversity v. Berg, 268 F.3d 810, 818 (9th Cir. 2001); Fed. Savings & Loan Ins. Corp.

v. Falls Chase Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993). The Proposed

Intervenors easily meet all of these criteria.

8

1.      The Proposed Intervenors' Ability to Regulate Motor Vehicle
        Greenhouse Gas Emissions is Contingent Upon A Decision From EPA on
        California's Waiver Petition

This Circuit has granted intervention as of right when the intervenor's "ability to protect

its claimed interest may by impaired or impeded by the District Court's disposition of the

action." Williams and Humbert, Ltd. v. W & H Trade Marks, Ltd., 840 F.2d 72, 77 (D.C. Cir.

1988). See also International Mortgage & Invest. Corp. v. Von Clemm, 301 F.2d 857, 862 (2d

Cir. 1962) (intervention granted under previous version of rule where decision in the matter

"would seriously prejudice" claimed interest); Yniguez v. Arizona, 939 F.2d 727, 737 (9th Cir.

1991) ("the question . . . is whether the district court's decision will result in practical

impairment" of the interests of the applicants for intervention) (emphasis in original).  The courts

are especially sensitive to the needs of states to intervene in actions that implicate state laws and

policy interests.  See Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 135

(1967) (allowing California to intervene as of right in an antitrust enforcement action to assert

"California interests in a competitive system").

The Proposed Intervenors' interest in this action will be more than "impaired" or

"impeded" by EPA's decision; their interest depends directly on EPA's decision.  The only way

Proposed Intervenors' motor vehicle greenhouse gas emission regulations can be enforced is if

EPA decides and grants California's petition for waiver of federal preemption pursuant to CAA §

209(b).  As long as EPA refuses to act, the Proposed Intervenors' efforts to control motor vehicle

derived greenhouse gas emissions within their borders are completely stymied.  See, e.g., Motor

Vehicle Manufacturers Assoc. v. Jorling,17 F.3d 521, 534 (2nd Cir. 1994) (New York can adopt,

but not enforce, California emissions standards pending a waiver from EPA).  Since this case

9

asks the Court to order EPA to act expeditiously on California's waiver petition, the Proposed

Intervenors' interest is clear and compelling.

The application of effective greenhouse gas emission regulations would, at a minimum,

begin the process of reducing and reversing global warming.  It is not necessary that the Proposed

Intervenors show that the regulations would solve the problem.  Massachusetts v. EPA, 127 S.Ct.

1438, 1457, 1458-1459, 167 L.Ed.2d 248, 75 USLW 4149 (2007) ("Agencies, like legislatures,

do not generally resolve massive problems in one fell regulatory swoop.")

       2.      California May Not Adequately Represent Proposed Intervnors' Interests

An applicant meets the inadequate representation requirement if he "shows that

representation of his interest 'may be' inadequate; and the burden of making that showing should

be treated as minimal."  Trbovich v. United Mine Workers, 404 U.S. 528, 538 n.10 (1972)

(emphases added).  See also Fund for Animals v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003)

(burden is not onerous).  Moreover, "[a] governmental party that enters a lawsuit solely to

represent the interests of its citizens . . . differs from other parties, public or private, that assert

their own interests, even when these interests coincide."  United States v. Hooker Chems. &

Plastics Corp., 749 F.2d 968 at 992 n.21 (emphasis added).  Any doubts in favor of intervention

should be resolved in favor of intervention.  See Federal Sav. & Loan Ins. Corp. v. Falls Chase

Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993).

Because California has a unique status under the Clean Air Act, Proposed Intervenors'

authority to enforce their emissions regulations is derived from California.  California, however,

may prosecute or settle this action in a manner that does not square with the interests of the

Proposed Intervenors.  This potential difference between the interests of the Proposed Intervenors

and California is not theoretical.  Some of the Proposed Intervenors have previously found themselves opposed to California in other motor vehicle emissions regulation cases.  See, e.g., Assoc. of Int'l Auto. Mfrs. v. Comm'r, Mass. Dep't of Env. Prot., 208 F.3d 1, 5, 7-8 (1st Cir. 2000) (although California repealed its "Zero Emissions Vehicle" (ZEV) program and entered into Memoranda of Understanding (MOA) with auto manufacturers, Massachusetts could not adopt the MOA because they were not considered "standards" under CAA §§ 209, 177).

       3.     Proposed Intervenors' Intervention Is Timely.

The timeliness of a party's intervention is to be determined by looking at all the circumstances of the case, "especially weighing the factors of time elapsed since inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case."  Smoke v. Norton, 252 F.3d 468, 471 (D.C. Cir. 2001) (citing United States v. AT&T, 206 U.S.App. D.C. 317, 642 F.2d 1285, 1295 (D.C. Cir. 1980).  Given that Proposed Intervnors are moving promptly after California filed its complaint, there can be no question of prejudice to defendant.

**B.    Proposed Intervnors Should Be Granted Permissive Intervention**.

Should the Court deny Proposed Intervenors' motion to intervene as of right, it should grant Proposed Intervenors' permissive intervention.  This Court has the discretion to allow intervention when the proposed intervenor makes a timely application demonstrating that its "claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b).  In exercising such discretion, courts "shall consider whether the intervention will unduly delay or prejudice the rights of the original parties."  Id.; see also Citizens for an Orderly

Energy Policy, 101 F.R.D. at 502 (possibility of undue delay or prejudice is the "principal consideration").

      As discussed above in the Statutory Background section and Section A1, the enforceability of the Proposed Intervnors' motor vehicle greenhouse gas emissions regulation rises or falls with EPA's decision on California's waiver application. Moreover, given that California has just filed its complaint, there can be no question of prejudice to defendant.

## <u>CONCLUSION</u>

For the foregoing reasons, Proposed Intervenors respectfully requests that the Court grant

this motion to intervene.

Dated: November 8, 2007
        New York, New York

                                        Respectfully submitted,

                                        FOR THE STATE OF NEW YORK
                                        ANDREW M. CUOMO
                                        ATTORNEY GENERAL
                                        Katherine Kennedy
                                        Michael Myers
                                        /s/ Yueh-ru Chu
                                        Assistant Attorneys General
                                        120 Broadway, 26th floor
                                        New York, NY 10271
                                        (212) 416-6588

                                        FOR THE COMMONWEALTH OF
                                        MASSACHUSETTS
                                        MARTHA COAKLEY
                                        ATTORNEY GENERAL
                                        /s/Frederick D. Augenstern
                                        James R. Milkey
                                        William L. Pardee
                                        Assistant Attorneys General
                                        Environmental Protection Division
                                        1 Ashburton Place, 18th Floor
                                        Boston, MA 02108
                                        (617) 727-2200 x. 2427

13

FOR THE STATE OF ARIZONA
TERRY GODDARD
ATTORNEY GENERAL
/s/ Joseph Mikitish
Tamara Huddleston
Assistant Attorneys General
1275 W. Washington
Phoenix, Arizona 85007
(602) 542-8553

FOR THE STATE OF CONNECTICUT
RICHARD BLUMENTHAL
ATTORNEY GENERAL
/s/ Kimberly Massicotte
Jose A. Suarez
55 Elm Street
P.O. Box 120
Hartford, CT 06106
Phone: (860) 808-5250

FOR THE STATE OF ILLINOIS
LISA MADIGAN
ATTORNEY GENERAL
/s/ Gerald T. Karr
Senior Assistant Attorney General
Environmental Bureau
69 West Washington Street, Suite 1800
Chicago, Illinois 60602
(312) 814-3369

FOR THE STATE OF MAINE
G. STEVEN ROWE
ATTORNEY GENERAL
/s/ Gerald D. Reid
Assistant Attorney General
Chief, Natural Resources Division
Department of the Attorney General
6 State House Station
Augusta, Maine 04333
(207) 626-8545

14

FOR THE STATE OF MARYLAND
DOUGLAS F. GANSLER
ATTORNEY GENERAL
/s/ Kathy M. Kinsey
Assistant Attorney General
Maryland Department of the Environment
1800 Washington Boulevard
Baltimore, Maryland 21230
410-537-3954

FOR THE STATE OF NEW JERSEY
ANNE MILGRAM
ATTORNEY GENERAL
/s/ Lisa Morelli
Assistant Attorney General
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, NJ 08625
(609) 633-8713

FOR THE STATE OF NEW MEXICO
GARY K. KING
ATTORNEY GENERAL
/s/ Stephen R. Farris
Judith Ann Moore
Assistant Attorneys General
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 827-6939

FOR THE STATE OF OREGON
HARDY MYERS
ATTORNEY GENERAL
/s/ Philip Schradle
Special Counsel to the Attorney General
Richard Whitman
Assistant Attorney General
1162 Court St. N.E.
Salem, Oregon 97301
(503) 378-6002

15

FOR THE COMMONWEALTH
OF PENNSYLVANIA, DEPARTMENT
OF ENVIRONMENTAL PROTECTION
SUSAN SHINKMAN, CHIEF COUNSEL
/s/ Richard P. Mather, Sr.
Deputy Chief Counsel
Kristen M. Campfield
Robert A. Reiley
Assistant Counsel
Rachel Carson State Office Bldg., 9th Flr.
P.O. Box 8464
Harrisburg, Pennsylvania 17105
(717) 787-7060

FOR THE STATE OF RHODE ISLAND
PATRICK C. LYNCH
ATTORNEY GENERAL
/s/ Patricia K. Jedele
Special Assistant Attorney General
Office of the Attorney General
150 South Main Street
Providence, Rhode Island
401-274-4400, ext. 2400

FOR THE STATE OF VERMONT
WILLIAM H. SORRELL
ATTORNEY GENERAL
/s/ Kevin O. Leske
Assistant Attorney General
109 State Street
Montpelier, VT  050609

FOR THE STATE OF WASHINGTON
ROB McKENNA
ATTORNEY GENERAL
/s/ Leslie Seffern
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504
(360) 586-6770

# CALIFORNIA v. EPA

## Case No. 1: 07-CV-02024

**EXHIBIT A: Proposed Complaint in Intervention**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STATE OF CALIFORNIA by and through ARNOLD SCHWARZENEGGER, GOVERNOR OF THE STATE OF CALIFORNIA, and the CALIFORNIA AIR RESOURCES BOARD,** | Case No: 1:07-CV-02024 |
| Plaintiff, | **COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **THE COMMONWEALTH OF MASSACHUSETTS, THE STATE OF NEW YORK, THE STATE OF ARIZONA, THE STATE OF CONNECTICUT, THE STATE OF ILLINOIS, THE STATE OF MAINE, THE STATE OF MARYLAND, THE STATE OF NEW JERSEY, THE STATE OF OREGON, THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, THE STATE OF RHODE ISLAND, THE STATE OF VERMONT, AND THE STATE OF WASHINGTON,** | |
| Plaintiff-Intervenors, | |
| v. | |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and STEPHEN L. JOHNSON, ADMINISTRATOR,** | |
| Defendants. | |

Plaintiff-intervenors, the Commonwealth of Massachusetts, the State of New

York, the State of Arizona, the State of Connecticut, the State of Illinois, the State of

Maine, the State of Maryland, the State of New Jersey, the State of Oregon, the

Commonwealth of Pennsylvania Department of Environmental Protection, the State of

1

Rhode Island, the State of Vermont, and the State of Washington, allege as follows for their complaint in intervention:

## INTRODUCTION

1.     The State of California, by and through Arnold Schwarzenegger, Governor of the State of California, and the California Air Resources Board, brought an action to compel the United States Environmental Protection Agency and Stephen L.  Johnson, Administrator for the United States Environmental Protection Agency ("USEPA"), to either grant or deny California's request for a waiver of preemption of its Regulation to Control Greenhouse Gas Emissions from Motor Vehicles ("GHG Regulation"), under Clean Air Act ("CAA") § 209(b), 42 U.S.C. § 7543(b).  The California Air Resources Board ("CARB") requested the waiver from USEPA on December 21, 2005.  The administrative docket is EPA-HQ-OAR-2006-0173.

2.     California  adopted the GHG Regulation to reduce the future harm to California's public health, welfare, safety, and economy resulting from increased global warming. The GHG Regulation requires a reduction in the emissions of greenhouse gases from most light-duty motor vehicles sold in California, on a fleet-wide basis, beginning with the 2009 model-year.

3.     Like California, plaintiff-intervenors recognize that motor vehicles are one of the most significant sources of the greenhouse gases that cause global warming.  Global warming, in turn, is already negatively impacting their states' public health, economies

and environments.  Accordingly, pursuant to their authority under CAA § 177, 42 U.S.C. § 7507, which authorizes other states to adopt California's emission standards for new motor vehicles, most plaintiff-intervenors adopted or promulgated the GHG Regulation first adopted by California.  However, plaintiff-intervenors' regulations cannot be enforced unless and until USEPA grants California's waiver application.

4.     USEPA must act on the GHG Regulation without further delay because manufacturers cannot market their 2009 model-year vehicles in California or any of the plaintiff-intervenor states without first certifying them.  Marketing of the 2009 models can begin as early as January 2008.

5.     USEPA has unreasonably delayed action on the requested waiver.  The agency has had nearly two years since CARB applied for the waiver to review the application and supporting materials and to make a decision.

6.     The comments submitted to the USEPA overwhelmingly support the GHG Regulation. Of the approximately 98,000 comments referenced in the USEPA's docket, more than 99.9% support the GHG Regulation.  Only one automaker subject to the GHG regulation submitted any opposition to the USEPA granting California a waiver.  Two automaker trade groups submitted opposing comments.

7.     The effect of global warming on California and plaintiff-intervenors' population, economy and environment has been extensively demonstrated both during CARB's and USEPA's administrative proceedings on the GHG Regulation as well as in other public

3

fora and scientific proceedings.  The accelerating  rate at which GHG emissions are increasing in the absence of regulation is another reason that the USEPA must take immediate action on California's waiver request.  The measured rate of change is exceeding earlier projections.  Recent studies, of which the USEPA is aware, indicate the Earth may be perilously close to an irreversible melting of ice sheets within this century.

8.      Greenhouse gases are causing global warming and the measured rate of change is exceeding scientists' projections.  Motor vehicles are a major source of greenhouse gases. Automotive emissions of greenhouse gases are increasing more rapidly than any other source.  The longer the delay in reducing these emissions, the more costly and harmful will be the impact on California and plaintiff-intervenors.

## JURISDICTION, VENUE AND NOTICE

9.      Jurisdiction of this court is invoked pursuant to the citizen's suit provision of the Clean Air Act, 42 U.S.C. § 7604(a).

10.     Venue in this court is proper as the GHG Regulation is "nationally applicable" by reason of the multiple states that have adopted the same regulation under 42 U.S.C. § 7507 and because the regulation applies to automobile manufacturers residing outside the jurisdiction of the Court of Appeals for the Ninth Circuit.

11.     California notified the USEPA of its intent to file this action pursuant to 42 U.S.C. § 7604(a) on April 25 and 26, 2007.

## REGULATORY HISTORY

12.     In 2002, the California Legislature adopted Assembly Bill 1493 (Pavley), which amended California Health and Safety Code section 42823 and added section 43018.5. The legislation required CARB to develop and adopt a regulation for the control of greenhouse gas emissions by motor vehicles.

13.     In 2002, CARB began holding public workshops and soliciting public comments on the development of a draft regulation.

14.     After a series of workshops, comment analysis, and public hearings, the CARB Board approved its GHG Regulation on September 23, 2004.  Final language and adoption occurred on August 4, 2005.  The regulation amended Title 13 of the California Code of Regulations, sections 1900 and 1961, and added section 1961.1.

15.     On December 21, 2005, CARB applied to the USEPA for waiver of federal preemption of the GHG Regulation under the Clean Air Act pursuant to 42 U.S.C. § 7543(b).

16.     USEPA did not notice a hearing or solicit additional comments on California's waiver application until April 30, 2007, sixteen months after CARB applied for the waiver.  USEPA held  hearings on May 22 and 30, 2007.  The noticed comment period expired on June 15, 2007.

17.     To date, USEPA has not granted or denied California's request for the waiver.

18.     Pursuant to their authority under CAA § 177, 42 U.S.C. § 7507, the following

plaintiff-intervenors have also adopted or promulgated the GHG Regulation first adopted

by California: Connecticut, Maine, Massachusetts, New Jersey, New York, Oregon, the

Pennsylvania Department of Environmental Protection, Rhode Island, Vermont, and

Washington.  See Conn. Agencies Regs. § 22a-174-36b; 06-096 Code of Maine Regs. Ch.

127; 310 Code of Mass. Regs. 7.40; N.J. Admin. Code 7:27-29; Title 6 of the N.Y. Code

of Rules and Regs., Part 218-8; Ore. Admin. Regs. 340-257-0100; 25 Pa. Code § 126.411;

R. I. Low Emission Vehicle Program, Air Pollution Control Reg. No. 37.; Vt. Air

Pollution Control Regs. Subch. XI and App. F; Wash. Admin. Code Ch.173-423.

19.     Plaintiff-intervenors Maryland and New Mexico are in the process of

promulgating the GHG regulation.  See 34 Md. Reg. 1609; 20.2.88 NMAC.

20.     Pursuant to Executive Order 2006-13, plaintiff-intervenor Arizona is in the

process of drafting rules adopting the California GHG regulation.

21.     Plaintiff-intervenor Illinois is considering adopting the GHG regulation first

adopted by California.

## GLOBAL WARMING IS MAKING
## PLAINTIFF-INTERVENORS' CLIMATES WORSE

22.     Increasing emissions of greenhouse gases into the atmosphere are causing global

warming.  The resultant climatic change in plaintiff-intervenor states includes: increasing

temperatures, reduced mountain snowfall, deteriorating air quality, and more extreme

weather events.

23.     These climatic changes will in turn have very serious effects on plaintiff-

6

intervenors' public health, welfare, safety, economies, and environment.

## GLOBAL WARMING ENDANGERS PLAINTIFF-INTERVENORS' PUBLIC HEALTH, WELFARE, SAFETY, ECONOMY AND ENVIRONMENT

24.     As temperatures increase, heat waves become more prolonged and intense.  In the United States, heat waves are the most prominent cause of weather-related mortality, exceeding the mortality rates for all other weather events combined.  Many Mid-Atlantic and Midwestern states, with their irregular, intense heat waves, are particularly susceptible to heat-related deaths and illnesses.

25.     Higher temperatures also increase the concentration of ground level ozone, which in turn exacerbates respiratory illnesses such as asthma.  Many plaintiff-intervenors have large areas of the state that are in non-attainment for national ambient air quality standards for ozone.  For other plaintiff-intervenors, the entire state, or virtually the entire state, is in non-attainment for ozone.  The presence of ground-level ozone in concentrations above the national ambient air quality standard has significant adverse health affects in these non-attainment areas, including increased hospitalizations and mortality risk for people with asthma and other respiratory diseases.

26.     Hotter, drier weather could increase the frequency and intensity of wildfires in Western and Pacific Northwest states.

27.     Global warming also accelerates sea level rise, which threatens coastal populations, vital infrastructure and property, and delicate ecosystems.  Many of the plaintiff-intervenors have significant coastlines and densely populated coastal areas.

7

States on the East Coast below Cape Cod are particularly vulnerable to problems such as loss of coastal wetlands, erosion of beaches, saltwater intrusion of drinking water, and decreased longevity of low-lying infrastructure because this part of the East Coast is low and sandy.

28.    One of the causes of sea level rise is ice melt, which is occurring far faster than scientists had previously thought.

29.    Another very serious concern for coastal plaintiff-intervenors are recent studies that strongly suggest a link between increased global warming and hurricanes, with their potential for very significant loss of life and property and widespread environmental damage.

30.    Warmer temperatures have also already reduced, and are very likely to further reduce, late winter snowpack and therefore the water supply available for late summer. As melting occurs earlier, peak flows shift to earlier in the spring, and summer runoff is reduced, thereby increasing winter and early spring floods as well as aggravating summer droughts.  This in turn disrupts water supplies in areas such as the West, the Pacific Northwest, and New England that depend on mountain snowpack for part of their water supply.

31.    Warmer temperatures also result in lower river flows and lower lake levels, which in turn disrupt water supplies in Midwestern and Northeastern states that depend in part on rivers and lakes for water.

32.    Warmer weather will also expand the habitat of disease-carrying insects such as mosquitoes and ticks.  Mosquitos can carry illnesses such as malaria, Eastern equine encephalitis and West Nile virus and already flourish in many parts of the Northeast and the Southwest.  Likewise, ticks can carry Lyme disease and already exist throughout the Northeast, California and Oregon.

33.    Another effect of global warming is the alteration of forest character, including the loss of hardwood trees that give many Northeastern forests their brilliant fall colors and support tourism and the maple syrup industry.

34.    The undertaking of projects to prepare for harmful global warming -- for example, modifying infrastructure to withstand rising sea levels and increased severe weather -- are long-term projects that cannot practicably be deferred until a crisis is at hand.

## AUTOMOTIVE EMISSIONS ARE A MAJOR
## SOURCE OF GREENHOUSE GASES

35.    Motor vehicles are a significant source of American carbon dioxide emissions; on average, they account for one-third of total state GHG emissions.

36.    USEPA approval of the GHG regulation would reduce greenhouse gas emissions in California and plaintiff-intervenor states by about 74 million metric tons in 2020.

37.    A reduction in greenhouse gas emissions will reduce the rate of global warming and the associated risks and magnitude of the adverse impacts of global warming on California and plaintiff-intervenor states.

## THE GHG REGULATION REQUIRES REDUCTIONS IN VEHICULAR EMISSIONS OF GREENHOUSE GASES

38.    The GHG Regulation requires that the major manufacturers of light-duty vehicles sold in California and plaintiff-intervenor states begin to reduce the vehicular emissions of greenhouse gases on a fleet-wide basis beginning with the 2009 model-year.

39.    The regulation divides the light-duty vehicles of each affected manufacturer into two fleets.  One fleet (PC/LDT1) comprises passenger cars, pick-up trucks and small sports utility vehicles.  The other fleet (LDT2/MDPV) comprises larger light-duty trucks, up to 8500 pounds (gross vehicle weight), large sports utility vehicles, and medium-duty passenger vehicles of less than 10,000 pounds.

40.    Greenhouse gas emissions, measured in terms of CO2-equivalents, are limited to a fleet-average of 323 grams per mile for PC/LDT1s in the 2009 model-year and decline over the years to 205 grams per mile in the 2016 model-year.  Emission limits for LTD2/MDPVs are 439 grams per mile in the 2009 model-year and decline to 332 grams per mile in the 2016 model-year.

41.    Automakers can achieve compliance with the GHG Regulation through a combination of  improved technologies and other actions.  Compliance can be achieved by reductions in tailpipe emissions of  greenhouse gases, the use of alternative fuels, credits for air conditioner improvements, credits carried over from another year or fleet, and credit-trading among manufacturers.

### CONGRESS INTENDED PROMPT USEPA ACTION
### ON WAIVER APPLICATIONS FOR CALIFORNIA
### AUTOMOBILE EMISSIONS REGULATIONS.

42.     Congress intended that California (1) serve as a laboratory for the nation in the

control of automotive emissions, (2) be able to adopt more stringent regulations for

automotive emissions than the federal government,  and (3) be able to act more quickly

than USEPA in adopting air pollution control measures.

43.     California has traditionally led the USEPA in establishing emission standards for

light-duty vehicles.

44.     42 U.S.C. § 7543(a) requires, subject to specified exceptions, that USEPA's

Administrator grant a waiver of federal preemption under the Clean Air Act if California

has determined that its "standards will be, in the aggregate, at least as protective of public

health and welfare as applicable Federal standards."

45.     The specified exceptions are set out in 42 U.S.C. § 7543 (b)(1).  The USEPA

Administrator must make at least one of the following three findings in order to deny the

waiver application:

    (a) California's determination of protectiveness is arbitrary and capricious,

    (b) California does not need the standards to meet compelling and extraordinary

    conditions, or

    (c) the standards and accompanying enforcement procedures are not consistent

    with 42 U.S.C. § 7521(a).

11

46.     Under 42 U.S.C. § 7543, the USEPA does not go through the process of
independent rule-making.  Instead USEPA provides notice and opportunity for public
participation during its review of the California emission regulation.

47.     Congress generally intended that the USEPA make determinations of this type in a
matter of "weeks or months, not years."  See In re American Rivers and Idaho Rivers
United, 372 F.3d 413, 419 (D.C. Cir. 2004)

### REASONABLE TIME FOR THE USEPA TO ACT HAS EXPIRED

48.     CARB submitted a comprehensive analysis of the GHG regulation when it applied
for the waiver in December 2005.  The USEPA requested no additional information.

49.     When the USEPA took no action on California's waiver application, California
Governor Arnold Schwarzenegger wrote the President of the United States on April 10,
2006 and requested urgent action on California's waiver application.  A copy was sent to
the USEPA Administrator.

50.     The USEPA did not respond.  It did not indicate what action, if any, it was taking
on CARB's application.

51.     California's Governor again wrote the President and copied the USEPA on
October 24, 2006.  The Governor repeated his request for urgent action.

52.     On February 21, 2007, the USEPA informed CARB that USEPA did not intend to
act on California's waiver application, other than opening an electronic docket, until the
United States Supreme Court decided whether USEPA was obligated to address

12

greenhouse gases as air pollutants under the Clean Air Act.   The Supreme Court ruled on April 2, 2007, that the greenhouse gases are subject to regulation under the Clean Air Act. See Massachusetts v. EPA, 127 S.Ct. 1438, 1457, 1458-1459, 167 L.Ed.2d 248, 75 USLW 4149 (2007).

53.    USEPA requires no additional time to review California's determination that its standards are "at least as protective of public health and welfare as applicable Federal standards under 42 U.S.C. § 7543(b)(1) and (2)."  California explicitly documented its determination in its December 2005 submission to the USEPA.

54.    The protectiveness comparison of state and federal standards also requires no additional time, since USEPA has no federal standards.

55.    USEPA requires no additional time to determine whether California's rule making was arbitrary and capricious under 42 U.S.C. § 7543(b)(1)(A).  USEPA was provided with a comprehensive exposition of CARB's two-year rule-making when CARB first requested the waiver in December 2005.  CARB's December 2005 submission to USEPA included an outline of its rule-making process, a detailed 251-page Initial Statement of Reasons for the rule, as well as a 446-page Final Statement of Reasons containing CARB's further analysis and response to additional comments and statements presented on the rule.   The public policy objective of reducing atmospheric greenhouse gases is directly achieved by the GHG regulation since it set standards for reducing emissions of these very gases.

56.     USEPA requires no additional time to determine whether California needs the GHG regulation to meet compelling and extraordinary conditions under 42 U.S.C. § 7543(b)(1)(B).   The  USEPA is already aware, through its administration of other provisions of the Clean Air Act, that criteria air pollutants in California's South Coast and San Joaquin air basins continue to exceed national air quality standards.   The USEPA is also aware of the perils of  global warming, as it has been separately studying global warming effects since at least 1984.

57.     In addition, the policy and practice of the USEPA is to evaluate California's need to meet compelling and extraordinary conditions in terms of California's motor vehicle emissions program as a whole.  In this respect, the USEPA was already aware of California's continuing need for this program.

58.     USEPA requires no additional time to determine whether California standards are consistent with 42 U.S.C. § 7521(a), as the substantive comments  based on lead time and technological feasibility were limited, and CARB submitted comprehensive documentation in its original December 2005 submission.

59.     USEPA requires no additional time to consider comments submitted in the course of its review of the GHG regulation. The deadline for comment submission expired on June 15, 2007.  Of the approximately 98,000 comments referenced by the USEPA's docket, more than 99.9% support the GHG Regulation.  General Motors Corporation is the only automaker subject to the regulation that submitted any comments.  Opposition is

largely restricted to two automaker advocacy groups, the Alliance of Automobile

Manufacturers and the Association of International Automobile Manufacturers. Only 15

entities who opposed the regulation included any analysis in their comments, so the

review time cannot be lengthy.

60.    The automakers' ability to timely and reasonably comply with the GHG Regulation

was independently confirmed in a civil action, tried over the course of five weeks, before

the United States District Court for the State of Vermont.  The action for federal

preemption was brought by General Motors, DaimlerChrysler, and domestic and foreign

automaker trade associations, as well as car dealers, in an attempt to invalidate Vermont's

identical version of California's GHG Regulation.  The same adverse claims contained in

the comments submitted in this USEPA proceeding were litigated in that civil action.  In

the 240-page opinion, issued on September 12, 2007, the trial court rejected plaintiffs'

claims.

### MULTIPLE AND SUBSTANTIAL INTERESTS ARE PREJUDICED BY DELAY

61.    Since the GHG Regulation's graduated emission standards begin to apply with the

2009 model-year, further delay by the USEPA will interfere with implementation of the

certification procedure required under the GHG Regulation.  An order of the United

States District Court for the Eastern District of California prohibits implementation of the

GHG regulation until the USEPA grants the waiver.

62.    Automakers that will be subject to the GHG regulation have alleged in court

15

pleadings, either directly or through their trade associations, that "it is essential for manufacturers subject to the rules like the AB 1493 regulations to obtain approval of their vehicle models well before the relevant model-year begins." As the automakers correctly observe, the 2009 model-year can begin as early as January 2008.

63.   Further delay also means that the postponed restoration of a relatively stable climate would be less likely. Such a delay would also require more drastic and rapid greenhouse gas reductions in the future at a greater cost.

64.   Longer delay also increases the risk of an abrupt climate change within this century that would include a larger and more rapid rise of sea levels. Disintegration of the Greenland Ice Sheet would substantially raise sea level, as would disintegration of the West Antarctic Ice Sheet and a later loss of the East Antarctic Ice Sheet.

65.   The USEPA is obligated to either grant or deny California's request for a waiver of federal preemption of its GHG Regulation under 42 U.S.C. § 7543(b)(1).

66.   The USEPA's current failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes an unreasonable delay under 42 U.S.C. § 7604(a).

67.   The USEPA's failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes an unreasonable delay under 5 U.S.C. § 706(1).

68.   The USEPA's failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes agency action unlawfully withheld under 5 U.S.C. § 706(1).

16

WHEREFORE, plaintiff-intervenors demand:

1.  That this court issue an order declaring that defendants United States

Environmental Protection Agency and Stephen L. Johnson, Administrator, have

unreasonably delayed in deciding California's application for waiver of federal

preemption of California's GHG Regulation under 42 U.S.C. § 7543(b) and that their

failure constitutes agency action unlawfully withheld.

2.  That this court issue an order compelling defendants United States Environmental

Protection Agency and Stephen L. Johnson, Administrator, to decide California's

application for waiver of federal preemption of California's GHG Regulation under

42 U.S.C. § 7543(b) forthwith.

3.   That this court retain jurisdiction over this action until the  United States

Environmental Protection Agency and Administrator decide California's application.

4.  That the court grant such other and further relief as may be proper.

Dated:          November 8, 2007          Respectfully Submitted,

                                          FOR THE STATE OF NEW YORK
                                          ANDREW M. CUOMO
                                          ATTORNEY GENERAL
                                          Katherine Kennedy
                                          Michael Myers
                                          /s/ Yueh-ru Chu
                                          Assistant Attorneys General
                                          120 Broadway, 26th floor
                                          New York, NY 10271
                                          (212) 416-6588

FOR THE COMMONWEALTH OF
MASSACHUSETTS
MARTHA COAKLEY
ATTORNEY GENERAL
Frederick D. Augenstern
James R. Milkey
William L. Pardee
Assistant Attorneys General
Environmental Protection Division
1 Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200 x. 2427

FOR THE STATE OF ARIZONA
TERRY GODDARD
ATTORNEY GENERAL
Joseph Mikitish
Tamara Huddleston
Assistant Attorneys General
1275 W. Washington
Phoenix, Arizona 85007
(602) 542-8553

FOR THE STATE OF CONNECTICUT
RICHARD BLUMENTHAL
ATTORNEY GENERAL
Kimberly Massicotte
Jose A. Suarez
55 Elm Street
P.O. Box 120
Hartford, CT 06106
Phone: (860) 808-5250

FOR THE STATE OF ILLINOIS
LISA MADIGAN
ATTORNEY GENERAL
Gerald T. Karr
Senior Assistant Attorney General
Environmental Bureau
69 West Washington Street, Suite 1800
Chicago, Illinois 60602
(312) 814-3369

18

FOR THE STATE OF MARYLAND
DOUGLAS F. GANSLER
ATTORNEY GENERAL
Kathy M. Kinsey
Assistant Attorney General
Maryland Department of the Environment
1800 Washington Boulevard
Baltimore, Maryland 21230
410-537-3954

FOR THE STATE OF NEW JERSEY
ANNE MILGRAM
ATTORNEY GENERAL
Lisa Morelli
Assistant Attorney General
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, NJ 08625
(609) 633-8713

FOR THE STATE OF NEW MEXICO
GARY K. KING
ATTORNEY GENERAL
Stephen R. Farris
Judith Ann Moore
Assistant Attorneys General
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 827-6939

FOR THE STATE OF OREGON
HARDY MYERS
ATTORNEY GENERAL
Philip Schradle
Special Counsel to the Attorney General
Richard Whitman
Assistant Attorney General
1162 Court St. N.E.
Salem, Oregon 97301
(503) 378-6002

19

FOR THE COMMONWEALTH
OF PENNSYLVANIA, DEPARTMENT
OF ENVIRONMENTAL PROTECTION
SUSAN SHINKMAN, CHIEF COUNSEL
Richard P. Mather, Sr.
Deputy Chief Counsel
Kristen M. Campfield
Robert A. Reiley
Assistant Counsel
Rachel Carson State Office Bldg., 9th Flr.
P.O. Box 8464
Harrisburg, Pennsylvania 17105
(717) 787-7060

FOR THE STATE OF RHODE ISLAND
PATRICK C. LYNCH
ATTORNEY GENERAL
Patricia K. Jedele
Special Assistant Attorney General
Office of the Attorney General
150 South Main Street
Providence, Rhode Island
401-274-4400, ext. 2400

FOR THE STATE OF VERMONT
WILLIAM H. SORRELL
ATTORNEY GENERAL
Kevin O. Leske
Assistant Attorney General
109 State Street
Montpelier, VT  05609
(802) 828-6902

FOR THE STATE OF WASHINGTON
ROB McKENNA
ATTORNEY GENERAL
Leslie Seffern
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504
(360) 586-6770

20

21

# CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2007, I caused a true and accurate copy of the foregoing Motion for Leave to Intervene, together with the attached exhibit, to be served on the following via registered mail, return receipt requested:

U. S. Environmental Protection Agency
Ariel Rios Building, Room 3000
1200 Pennsylvania Ave., N.W.
Mail Code 1101A
Washington, D.C. 20460

Honorable Stephen L. Johnson, Administrator
U. S. Environmental Protection Agency
Ariel Rios Building, Room 3000
1200 Pennsylvania Ave., N.W.
Mail Code 1101A
Washington, D.C. 20460

Peter D. Keisler, Acting United States Attorney General
United States Department of Justice, Room 4400
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Jeffrey A. Taylor
Interim United States Attorney for the District of Columbia
555 4th Street, NW
Washington, D.C. 20530

In addition, on November 8, 2007, I caused a true and accurate copy of the foregoing Motion to Intervene to be served on all counsel for the Proposed Intervenors listed in the Motion to Intervene by first class mail, postage prepaid, and by electronic mail.

Yueh-ru Chu
Assistant Attorney General
Office of the Attorney General
Environmental Protection Bureau
120 Broadway, 26th floor
New York, NY 10271