IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STATE OF CALIFORNIA by and through ARNOLD SCHWARZENEGGER, GOVERNOR OF THE STATE OF CALIFORNIA, and the CALIFORNIA AIR RESOURCES BOARD,** | Case No: 1:07-CV-02024 |
| Plaintiff, | **COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **THE COMMONWEALTH OF MASSACHUSETTS, THE STATE OF NEW YORK, THE STATE OF ARIZONA, THE STATE OF CONNECTICUT, THE STATE OF ILLINOIS, THE STATE OF MAINE, THE STATE OF MARYLAND, THE STATE OF NEW JERSEY, THE STATE OF OREGON, THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, THE STATE OF RHODE ISLAND, THE STATE OF VERMONT, AND THE STATE OF WASHINGTON,** | |
| Plaintiff-Intervenors, | |
| **v.** | |
| **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and STEPHEN L. JOHNSON, ADMINISTRATOR,** | |
| Defendants. | |

Plaintiff-intervenors, the Commonwealth of Massachusetts, the State of New

York, the State of Arizona, the State of Connecticut, the State of Illinois, the State of

Maine, the State of Maryland, the State of New Jersey, the State of Oregon, the

Commonwealth of Pennsylvania Department of Environmental Protection, the State of

1

Rhode Island, the State of Vermont, and the State of Washington, allege as follows for their complaint in intervention:

### INTRODUCTION

1.    The State of California, by and through Arnold Schwarzenegger, Governor of the State of California, and the California Air Resources Board, brought an action to compel the United States Environmental Protection Agency and Stephen L.  Johnson, Administrator for the United States Environmental Protection Agency ("USEPA"), to either grant or deny California's request for a waiver of preemption of its Regulation to Control Greenhouse Gas Emissions from Motor Vehicles ("GHG Regulation"), under Clean Air Act ("CAA") § 209(b), 42 U.S.C. § 7543(b).  The California Air Resources Board ("CARB") requested the waiver from USEPA on December 21, 2005.  The administrative docket is EPA-HQ-OAR-2006-0173.

2.    California  adopted the GHG Regulation to reduce the future harm to California's public health, welfare, safety, and economy resulting from increased global warming. The GHG Regulation requires a reduction in the emissions of greenhouse gases from most light-duty motor vehicles sold in California, on a fleet-wide basis, beginning with the 2009 model-year.

3.    Like California, plaintiff-intervenors recognize that motor vehicles are one of the most significant sources of the greenhouse gases that cause global warming.  Global warming, in turn, is already negatively impacting their states' public health, economies

and environments.  Accordingly, pursuant to their authority under CAA § 177, 42 U.S.C. § 7507, which authorizes other states to adopt California's emission standards for new motor vehicles, most plaintiff-intervenors adopted or promulgated the GHG Regulation first adopted by California.  However, plaintiff-intervenors' regulations cannot be enforced unless and until USEPA grants California's waiver application.

4.    USEPA must act on the GHG Regulation without further delay because manufacturers cannot market their 2009 model-year vehicles in California or any of the plaintiff-intervenor states without first certifying them.  Marketing of the 2009 models can begin as early as January 2008.

5.    USEPA has unreasonably delayed action on the requested waiver.  The agency has had nearly two years since CARB applied for the waiver to review the application and supporting materials and to make a decision.

6.    The comments submitted to the USEPA overwhelmingly support the GHG Regulation. Of the approximately 98,000 comments referenced in the USEPA's docket, more than 99.9% support the GHG Regulation.  Only one automaker subject to the GHG regulation submitted any opposition to the USEPA granting California a waiver.  Two automaker trade groups submitted opposing comments.

7.    The effect of global warming on California and plaintiff-intervenors' population, economy and environment has been extensively demonstrated both during CARB's and USEPA's administrative proceedings on the GHG Regulation as well as in other public

fora and scientific proceedings.  The accelerating  rate at which GHG emissions are

increasing in the absence of regulation is another reason that the USEPA must take

immediate action on California's waiver request.  The measured rate of change is

exceeding earlier projections.  Recent studies, of which the USEPA is aware, indicate the

Earth may be perilously close to an irreversible melting of ice sheets within this century.

8.      Greenhouse gases are causing global warming and the measured rate of change is

exceeding scientists' projections.  Motor vehicles are a major source of greenhouse gases.

Automotive emissions of greenhouse gases are increasing more rapidly than any other

source.  The longer the delay in reducing these emissions, the more costly and harmful

will be the impact on California and plaintiff-intervenors.

### JURISDICTION, VENUE AND NOTICE

9.      Jurisdiction of this court is invoked pursuant to the citizen's suit provision of the

Clean Air Act, 42 U.S.C. § 7604(a).

10.     Venue in this court is proper as the GHG Regulation is "nationally applicable" by

reason of the multiple states that have adopted the same regulation under 42 U.S.C. §

7507 and because the regulation applies to automobile manufacturers residing outside the

jurisdiction of the Court of Appeals for the Ninth Circuit.

11.     California notified the USEPA of its intent to file this action pursuant to 42 U.S.C.

§ 7604(a) on April 25 and 26, 2007.

## REGULATORY HISTORY

12.    In 2002, the California Legislature adopted Assembly Bill 1493 (Pavley), which amended California Health and Safety Code section 42823 and added section 43018.5. The legislation required CARB to develop and adopt a regulation for the control of greenhouse gas emissions by motor vehicles.

13.    In 2002, CARB began holding public workshops and soliciting public comments on the development of a draft regulation.

14.    After a series of workshops, comment analysis, and public hearings, the CARB Board approved its GHG Regulation on September 23, 2004.  Final language and adoption occurred on August 4, 2005.  The regulation amended Title 13 of the California Code of Regulations, sections 1900 and 1961, and added section 1961.1.

15.    On December 21, 2005, CARB applied to the USEPA for waiver of federal preemption of the GHG Regulation under the Clean Air Act pursuant to 42 U.S.C. § 7543(b).

16.    USEPA did not notice a hearing or solicit additional comments on California's waiver application until April 30, 2007, sixteen months after CARB applied for the waiver.  USEPA held  hearings on May 22 and 30, 2007.  The noticed comment period expired on June 15, 2007.

17.    To date, USEPA has not granted or denied California's request for the waiver.

18.    Pursuant to their authority under CAA § 177, 42 U.S.C. § 7507, the following

plaintiff-intervenors have also adopted or promulgated the GHG Regulation first adopted by California: Connecticut, Maine, Massachusetts, New Jersey, New York, Oregon, the Pennsylvania Department of Environmental Protection, Rhode Island, Vermont, and Washington.  See Conn. Agencies Regs. § 22a-174-36b; 06-096 Code of Maine Regs. Ch. 127; 310 Code of Mass. Regs. 7.40; N.J. Admin. Code 7:27-29; Title 6 of the N.Y. Code of Rules and Regs., Part 218-8; Ore. Admin. Regs. 340-257-0100; 25 Pa. Code § 126.411; R. I. Low Emission Vehicle Program, Air Pollution Control Reg. No. 37.; Vt. Air Pollution Control Regs. Subch. XI and App. F; Wash. Admin. Code Ch.173-423.

19.     Plaintiff-intervenors Maryland and New Mexico are in the process of promulgating the GHG regulation.  See 34 Md. Reg. 1609; 20.2.88 NMAC.

20.     Pursuant to Executive Order 2006-13, plaintiff-intervenor Arizona is in the process of drafting rules adopting the California GHG regulation.

21.     Plaintiff-intervenor Illinois is considering adopting the GHG regulation first adopted by California.

### GLOBAL WARMING IS MAKING PLAINTIFF-INTERVENORS' CLIMATES WORSE

22.     Increasing emissions of greenhouse gases into the atmosphere are causing global warming.  The resultant climatic change in plaintiff-intervenor states includes: increasing temperatures, reduced mountain snowfall, deteriorating air quality, and more extreme weather events.

23.     These climatic changes will in turn have very serious effects on plaintiff-

6

intervenors' public health, welfare, safety, economies, and environment.

## GLOBAL WARMING ENDANGERS PLAINTIFF-INTERVENORS' PUBLIC HEALTH, WELFARE, SAFETY, ECONOMY AND ENVIRONMENT

24.    As temperatures increase, heat waves become more prolonged and intense.  In the United States, heat waves are the most prominent cause of weather-related mortality, exceeding the mortality rates for all other weather events combined.  Many Mid-Atlantic and Midwestern states, with their irregular, intense heat waves, are particularly susceptible to heat-related deaths and illnesses.

25.    Higher temperatures also increase the concentration of ground level ozone, which in turn exacerbates respiratory illnesses such as asthma.  Many plaintiff-intervenors have large areas of the state that are in non-attainment for national ambient air quality standards for ozone.  For other plaintiff-intervenors, the entire state, or virtually the entire state, is in non-attainment for ozone.  The presence of ground-level ozone in concentrations above the national ambient air quality standard has significant adverse health affects in these non-attainment areas, including increased hospitalizations and mortality risk for people with asthma and other respiratory diseases.

26.    Hotter, drier weather could increase the frequency and intensity of wildfires in Western and Pacific Northwest states.

27.    Global warming also accelerates sea level rise, which threatens coastal populations, vital infrastructure and property, and delicate ecosystems.  Many of the plaintiff-intervenors have significant coastlines and densely populated coastal areas.

States on the East Coast below Cape Cod are particularly vulnerable to problems such as loss of coastal wetlands, erosion of beaches, saltwater intrusion of drinking water, and decreased longevity of low-lying infrastructure because this part of the East Coast is low and sandy.

28.    One of the causes of sea level rise is ice melt, which is occurring far faster than scientists had previously thought.

29.    Another very serious concern for coastal plaintiff-intervenors are recent studies that strongly suggest a link between increased global warming and hurricanes, with their potential for very significant loss of life and property and widespread environmental damage.

30.    Warmer temperatures have also already reduced, and are very likely to further reduce, late winter snowpack and therefore the water supply available for late summer. As melting occurs earlier, peak flows shift to earlier in the spring, and summer runoff is reduced, thereby increasing winter and early spring floods as well as aggravating summer droughts.  This in turn disrupts water supplies in areas such as the West, the Pacific Northwest, and New England that depend on mountain snowpack for part of their water supply.

31.    Warmer temperatures also result in lower river flows and lower lake levels, which in turn disrupt water supplies in Midwestern and Northeastern states that depend in part on rivers and lakes for water.

32.     Warmer weather will also expand the habitat of disease-carrying insects such as mosquitoes and ticks.  Mosquitos can carry illnesses such as malaria, Eastern equine encephalitis and West Nile virus and already flourish in many parts of the Northeast and the Southwest.  Likewise, ticks can carry Lyme disease and already exist throughout the Northeast, California and Oregon.

33.     Another effect of global warming is the alteration of forest character, including the loss of hardwood trees that give many Northeastern forests their brilliant fall colors and support tourism and the maple syrup industry.

34.     The undertaking of projects to prepare for harmful global warming -- for example, modifying infrastructure to withstand rising sea levels and increased severe weather -- are long-term projects that cannot practicably be deferred until a crisis is at hand.

## AUTOMOTIVE EMISSIONS ARE A MAJOR
## SOURCE OF GREENHOUSE GASES

35.     Motor vehicles are a significant source of American carbon dioxide emissions; on average, they account for one-third of total state GHG emissions.

36.     USEPA approval of the GHG regulation would reduce greenhouse gas emissions in California and plaintiff-intervenor states by about 74 million metric tons in 2020.

37.     A reduction in greenhouse gas emissions will reduce the rate of global warming and the associated risks and magnitude of the adverse impacts of global warming on California and plaintiff-intervenor states.

**THE GHG REGULATION REQUIRES REDUCTIONS IN
VEHICULAR EMISSIONS OF GREENHOUSE GASES**

38.     The GHG Regulation requires that the major manufacturers of light-duty vehicles

sold in California and plaintiff-intervenor states begin to reduce the vehicular emissions

of greenhouse gases on a fleet-wide basis beginning with the 2009 model-year.

39.     The regulation divides the light-duty vehicles of each affected manufacturer into

two fleets.  One fleet (PC/LDT1) comprises passenger cars, pick-up trucks and small

sports utility vehicles.  The other fleet (LDT2/MDPV) comprises larger light-duty trucks,

up to 8500 pounds (gross vehicle weight), large sports utility vehicles, and medium-duty

passenger vehicles of less than 10,000 pounds.

40.     Greenhouse gas emissions, measured in terms of $CO2$-equivalents, are limited to a

fleet-average of 323 grams per mile for PC/LDT1s in the 2009 model-year and decline

over the years to 205 grams per mile in the 2016 model-year.  Emission limits for

LTD2/MDPVs are 439 grams per mile in the 2009 model-year and decline to 332 grams

per mile in the 2016 model-year.

41.     Automakers can achieve compliance with the GHG Regulation through a

combination of  improved technologies and other actions.  Compliance can be achieved

by reductions in tailpipe emissions of  greenhouse gases, the use of alternative fuels,

credits for air conditioner improvements, credits carried over from another year or fleet,

and credit-trading among manufacturers.

10

## CONGRESS INTENDED PROMPT USEPA ACTION
## ON WAIVER APPLICATIONS FOR CALIFORNIA
## AUTOMOBILE EMISSIONS REGULATIONS.

42.    Congress intended that California (1) serve as a laboratory for the nation in the control of automotive emissions, (2) be able to adopt more stringent regulations for automotive emissions than the federal government,  and (3) be able to act more quickly than USEPA in adopting air pollution control measures.

43.    California has traditionally led the USEPA in establishing emission standards for light-duty vehicles.

44.    42 U.S.C. § 7543(a) requires, subject to specified exceptions, that USEPA's Administrator grant a waiver of federal preemption under the Clean Air Act if California has determined that its "standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards."

45.    The specified exceptions are set out in 42 U.S.C. § 7543 (b)(1).  The USEPA Administrator must make at least one of the following three findings in order to deny the waiver application:

(a) California's determination of protectiveness is arbitrary and capricious,

(b) California does not need the standards to meet compelling and extraordinary conditions, or

(c) the standards and accompanying enforcement procedures are not consistent with 42 U.S.C. § 7521(a).

11

46.    Under 42 U.S.C. § 7543, the USEPA does not go through the process of independent rule-making.  Instead USEPA provides notice and opportunity for public participation during its review of the California emission regulation.

47.    Congress generally intended that the USEPA make determinations of this type in a matter of "weeks or months, not years."  See In re American Rivers and Idaho Rivers United, 372 F.3d 413, 419 (D.C. Cir. 2004)

### REASONABLE TIME FOR THE USEPA TO ACT HAS EXPIRED

48.    CARB submitted a comprehensive analysis of the GHG regulation when it applied for the waiver in December 2005.  The USEPA requested no additional information.

49.    When the USEPA took no action on California's waiver application, California Governor Arnold Schwarzenegger wrote the President of the United States on April 10, 2006 and requested urgent action on California's waiver application.  A copy was sent to the USEPA Administrator.

50.    The USEPA did not respond.  It did not indicate what action, if any, it was taking on CARB's application.

51.    California's Governor again wrote the President and copied the USEPA on October 24, 2006.  The Governor repeated his request for urgent action.

52.    On February 21, 2007, the USEPA informed CARB that USEPA did not intend to act on California's waiver application, other than opening an electronic docket, until the United States Supreme Court decided whether USEPA was obligated to address

12

greenhouse gases as air pollutants under the Clean Air Act. The Supreme Court ruled on April 2, 2007, that the greenhouse gases are subject to regulation under the Clean Air Act. See Massachusetts v. EPA, 127 S.Ct. 1438, 1457, 1458-1459, 167 L.Ed.2d 248, 75 USLW 4149 (2007).

53.    USEPA requires no additional time to review California's determination that its standards are "at least as protective of public health and welfare as applicable Federal standards under 42 U.S.C. § 7543(b)(1) and (2)." California explicitly documented its determination in its December 2005 submission to the USEPA.

54.    The protectiveness comparison of state and federal standards also requires no additional time, since USEPA has no federal standards.

55.    USEPA requires no additional time to determine whether California's rule making was arbitrary and capricious under 42 U.S.C. § 7543(b)(1)(A). USEPA was provided with a comprehensive exposition of CARB's two-year rule-making when CARB first requested the waiver in December 2005. CARB's December 2005 submission to USEPA included an outline of its rule-making process, a detailed 251-page Initial Statement of Reasons for the rule, as well as a 446-page Final Statement of Reasons containing CARB's further analysis and response to additional comments and statements presented on the rule. The public policy objective of reducing atmospheric greenhouse gases is directly achieved by the GHG regulation since it set standards for reducing emissions of these very gases.

13

56.    USEPA requires no additional time to determine whether California needs the GHG regulation to meet compelling and extraordinary conditions under 42 U.S.C. § 7543(b)(1)(B).   The  USEPA is already aware, through its administration of other provisions of the Clean Air Act, that criteria air pollutants in California's South Coast and San Joaquin air basins continue to exceed national air quality standards.   The USEPA is also aware of the perils of  global warming, as it has been separately studying global warming effects since at least 1984.

57.    In addition, the policy and practice of the USEPA is to evaluate California's need to meet compelling and extraordinary conditions in terms of California's motor vehicle emissions program as a whole.  In this respect, the USEPA was already aware of California's continuing need for this program.

58.    USEPA requires no additional time to determine whether California standards are consistent with 42 U.S.C. § 7521(a), as the substantive comments  based on lead time and technological feasibility were limited, and CARB submitted comprehensive documentation in its original December 2005 submission.

59.    USEPA requires no additional time to consider comments submitted in the course of its review of the GHG regulation. The deadline for comment submission expired on June 15, 2007.  Of the approximately 98,000 comments referenced by the USEPA's docket, more than 99.9% support the GHG Regulation.  General Motors Corporation is the only automaker subject to the regulation that submitted any comments.  Opposition is

14

largely restricted to two automaker advocacy groups, the Alliance of Automobile
Manufacturers and the Association of International Automobile Manufacturers. Only 15
entities who opposed the regulation included any analysis in their comments, so the
review time cannot be lengthy.

60.     The automakers' ability to timely and reasonably comply with the GHG Regulation
was independently confirmed in a civil action, tried over the course of five weeks, before
the United States District Court for the State of Vermont.  The action for federal
preemption was brought by General Motors, DaimlerChrysler, and domestic and foreign
automaker trade associations, as well as car dealers, in an attempt to invalidate Vermont's
identical version of California's GHG Regulation.  The same adverse claims contained in
the comments submitted in this USEPA proceeding were litigated in that civil action.  In
the 240-page opinion, issued on September 12, 2007, the trial court rejected plaintiffs'
claims.

## MULTIPLE AND SUBSTANTIAL INTERESTS
## ARE PREJUDICED BY DELAY

61.     Since the GHG Regulation's graduated emission standards begin to apply with the
2009 model-year, further delay by the USEPA will interfere with implementation of the
certification procedure required under the GHG Regulation.  An order of the United
States District Court for the Eastern District of California prohibits implementation of the
GHG regulation until the USEPA grants the waiver.

62.     Automakers that will be subject to the GHG regulation have alleged in court

15

pleadings, either directly or through their trade associations, that "it is essential for manufacturers subject to the rules like the AB 1493 regulations to obtain approval of their vehicle models well before the relevant model-year begins." As the automakers correctly observe, the 2009 model-year can begin as early as January 2008.

63.    Further delay also means that the postponed restoration of a relatively stable climate would be less likely. Such a delay would also require more drastic and rapid greenhouse gas reductions in the future at a greater cost.

64.    Longer delay also increases the risk of an abrupt climate change within this century that would include a larger and more rapid rise of sea levels. Disintegration of the Greenland Ice Sheet would substantially raise sea level, as would disintegration of the West Antarctic Ice Sheet and a later loss of the East Antarctic Ice Sheet.

65.    The USEPA is obligated to either grant or deny California's request for a waiver of federal preemption of its GHG Regulation under 42 U.S.C. § 7543(b)(1).

66.    The USEPA's current failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes an unreasonable delay under 42 U.S.C. § 7604(a).

67.    The USEPA's failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes an unreasonable delay under 5 U.S.C. § 706(1).

68.    The USEPA's failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes agency action unlawfully withheld under 5 U.S.C. § 706(1).

16

WHEREFORE, plaintiff-intervenors demand:

1.  That this court issue an order declaring that defendants United States

Environmental Protection Agency and Stephen L. Johnson, Administrator, have

unreasonably delayed in deciding California's application for waiver of federal

preemption of California's GHG Regulation under 42 U.S.C. § 7543(b) and that their

failure constitutes agency action unlawfully withheld.

2.  That this court issue an order compelling defendants United States Environmental

Protection Agency and Stephen L.  Johnson, Administrator, to decide California's

application for waiver of federal preemption of California's GHG Regulation under

42 U.S.C. § 7543(b) forthwith.

3.   That this court retain jurisdiction over this action until the  United States

Environmental Protection Agency and Administrator decide California's application.

4.  That the court grant such other and further relief as may be proper.

Dated:         November 8, 2007          Respectfully Submitted,

                                         FOR THE STATE OF NEW YORK
                                         ANDREW M. CUOMO
                                         ATTORNEY GENERAL
                                         Katherine Kennedy
                                         Michael Myers
                                         /s/ Yueh-ru Chu
                                         Assistant Attorneys General
                                         120 Broadway, 26th floor
                                         New York, NY 10271
                                         (212) 416-6588

FOR THE COMMONWEALTH OF
MASSACHUSETTS
MARTHA COAKLEY
ATTORNEY GENERAL
Frederick D. Augenstern
James R. Milkey
William L. Pardee
Assistant Attorneys General
Environmental Protection Division
1 Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200 x. 2427

FOR THE STATE OF ARIZONA
TERRY GODDARD
ATTORNEY GENERAL
Joseph Mikitish
Tamara Huddleston
Assistant Attorneys General
1275 W. Washington
Phoenix, Arizona 85007
(602) 542-8553

FOR THE STATE OF CONNECTICUT
RICHARD BLUMENTHAL
ATTORNEY GENERAL
Kimberly Massicotte
Jose A. Suarez
55 Elm Street
P.O. Box 120
Hartford, CT 06106
Phone: (860) 808-5250

FOR THE STATE OF ILLINOIS
LISA MADIGAN
ATTORNEY GENERAL
Gerald T. Karr
Senior Assistant Attorney General
Environmental Bureau
69 West Washington Street, Suite 1800
Chicago, Illinois 60602
(312) 814-3369

18

FOR THE STATE OF MARYLAND
DOUGLAS F. GANSLER
ATTORNEY GENERAL
Kathy M. Kinsey
Assistant Attorney General
Maryland Department of the Environment
1800 Washington Boulevard
Baltimore, Maryland 21230
410-537-3954

FOR THE STATE OF NEW JERSEY
ANNE MILGRAM
ATTORNEY GENERAL
Lisa Morelli
Assistant Attorney General
Richard J. Hughes Justice Complex
25 Market Street, P.O. Box 093
Trenton, NJ 08625
(609) 633-8713

FOR THE STATE OF NEW MEXICO
GARY K. KING
ATTORNEY GENERAL
Stephen R. Farris
Judith Ann Moore
Assistant Attorneys General
P.O. Drawer 1508
Santa Fe, NM 87504-1508
(505) 827-6939

FOR THE STATE OF OREGON
HARDY MYERS
ATTORNEY GENERAL
Philip Schradle
Special Counsel to the Attorney General
Richard Whitman
Assistant Attorney General
1162 Court St. N.E.
Salem, Oregon 97301
(503) 378-6002

19

FOR THE COMMONWEALTH
OF PENNSYLVANIA, DEPARTMENT
OF ENVIRONMENTAL PROTECTION
SUSAN SHINKMAN, CHIEF COUNSEL
Richard P. Mather, Sr.
Deputy Chief Counsel
Kristen M. Campfield
Robert A. Reiley
Assistant Counsel
Rachel Carson State Office Bldg., 9th Flr.
P.O. Box 8464
Harrisburg, Pennsylvania 17105
(717) 787-7060

FOR THE STATE OF RHODE ISLAND
PATRICK C. LYNCH
ATTORNEY GENERAL
Patricia K. Jedele
Special Assistant Attorney General
Office of the Attorney General
150 South Main Street
Providence, Rhode Island
401-274-4400, ext. 2400

FOR THE STATE OF VERMONT
WILLIAM H. SORRELL
ATTORNEY GENERAL
Kevin O. Leske
Assistant Attorney General
109 State Street
Montpelier, VT  05609
(802) 828-6902

FOR THE STATE OF WASHINGTON
ROB McKENNA
ATTORNEY GENERAL
Leslie Seffern
Assistant Attorney General
Office of the Attorney General
P.O. Box 40117
Olympia, Washington 98504
(360) 586-6770

20