UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
STATE OF CALIFORNIA, by and through  )
ARNOLD SCHWARZENEGGER,               )
GOVERNOR OF THE STATE OF CALIFORNIA, )
and the CALIFORNIA AIR RESOURCES BOARD )
                                     )
                 Plaintiff,          )
                                     )
         v.                          ) Case No. 1:07-cv-02024-RCL
                                     )
STATE OF DELAWARE, by and through its )
ATTORNEY GENERAL JOSEPH R. BIDEN, III, )
820 NORTH FRENCH STREET, CARVEL STATE )
OFFICE BUILDING, WILMINGTON, DE 19801 )
                                     )
                 Proposed            )
                 Plaintiff-Intervenor, )
                                     )
THE UNITED STATES ENVIRONMENTAL      )
PROTECTION AGENCY, and               )
STEPHEN JOHNSON, Administrator,      )
                                     )
                 Defendants.         )
                                     )
_____)

**STATE OF DELAWARE'S COMPLAINT IN INTERVENTION
FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff-intervenor, the State of Delaware alleges as follows for its complaint in intervention.

1. On or about October 24, 2007, the State of California ("California"), by and through Governor Arnold Schwarzenegger, and the California Air Resources Board ("CARB"), brought an action to compel the United States Environmental Protection Agency ("EPA"), and its Administrator, Stephen L. Johnson, to either grant or deny California's request for a waiver of

1

federal preemption of California's Regulation to Control Greenhouse Gas Emissions from Motor Vehicles ("GHG Regulation") under section 209(b) of the Clean Air Act ("CAA"), 42 U.S.C. § 7543(b). The CARB requested the waiver from EPA on December 21, 2005. The administrative docket is EPA-HQ-OAR-2006-0173.

2.      California adopted the GHG Regulation to reduce the future harm to California's public health, welfare, safety and economy resulting from increased global warming. The GHG Regulation requires a reduction in the emissions of greenhouse gases from most light duty motor vehicles sold in California, on a fleet-wide basis, beginning with the 2009 model year.

3.      Like California, the State of Delaware recognizes that motor vehicles are one of the most significant sources of the greenhouse gases that cause global warming. Global warming, in turn, is already negatively impacting Delaware's public health, economy and environment. Accordingly, pursuant to its authority under CAA § 177, 42 U.S.C. § 7507, which authorizes other states to adopt California's emission standards for new motor vehicles, Delaware is contemplating adopting or promulgating the GHG Regulation first adopted by California. However, any regulation adopted by the State of Delaware could not be enforced unless and until EPA grants California's application for a waiver of preemption.

4.      EPA must act on the GHG Regulation without further delay, because manufacturers cannot market their 2009 model-year vehicles in California or in Delaware, should it adopt the California standards, without first certifying them. Marketing of the 2009 models can begin as early as January of 2008.

5.      EPA has unreasonably delayed acting on California's requested waiver. EPA has had nearly two years since CARB applied for the waiver to review the application and supporting

materials and to make a decision.

6.     The comments submitted to EPA overwhelmingly support the GHG Regulation. Of the approximately 98,000 comments referenced in the EPA docket, more than 99.9 percent support the GHG Regulation. Only one automaker subject to the GHG Regulation submitted any opposition to EPA granting California a waiver. Two automaker trade groups submitted opposing comments.

7.     The effect of global warming on California and on the State of Delaware's population, economy and environment has been extensively demonstrated both during the administrative proceeds at CARB and EPA on the GHG Regulation, as well as in other public forums and scientific proceedings. The rate at which GHG emissions are increasing in the absence of regulation is another reason why EPA must take immediate action on California's waiver request. The measured rate of change is exceeding earlier projections. Recent studies, of which EPA is aware, indicate the Earth may be perilously close to an irreversible melting of ice sheets within this century.

8.     Motor vehicles are a major source of greenhouse gases. Automotive emissions of greenhouse gases are increasing more rapidly than any other sources. The longer the delay in reducing these emissions, the more costly and harmful the impact will be on California and the State of Delaware.

**JURISDICTION, VENUE AND NOTICE**

9.     Jurisdiction of this Court is invoked pursuant to the citizen's suit provision of the CAA, 42 U.S.C. § 7604(a).

10.    Venue is proper in this Court as the GHG Regulation is "nationally applicable" by

reason of the multiple states that have adopted the same regulation under 42 U.S.C. § 7507 and because the GHG Regulation applies to automotive manufacturers residing outside the jurisdiction of the Court of Appeals for the Ninth Circuit.

11. California notified EPA of its intent to file its action pursuant to 42 U.S.C. § 7604(a) on April 25 and 26, 2007.

**REGULATORY HISTORY**

12. In 2002, the California Legislature adopted Assembly Bill 1493 (Paveley), which amended California Health and Safety Code § 42823 and added § 43018.5. The Legislation required CARB to develop and adopt a regulation for the control of greenhouse gas emissions by motor vehicles.

13. In 2002, CARB began holding public workshops and soliciting public comments on the development of the draft regulation,

14. After a series of workshops, comment analysis, and public hearings, CARB approved its GHG Regulation on September 23, 2004. Adoption of the final language occurred on August 4, 2005. The Regulation amended Title 13 of the California Code of Regulations, §§ 1900 and 1961, and added § 1961.1.

15. On December 21, 2005, CARB applied to EPA for waiver of federal preemption of the GHG Regulation under the CAA, pursuant to 42 U.S.C. § 7543(b).

16. EPA did not notice a hearing or solicit additional comments on California's waiver application until April 30, 2007, 16 months after CARB applied for the waiver. EPA held hearings on May 22 and 30, 2007. The noticed public comment period expired on June 15, 2007.

17. To date, EPA has not granted or denied California's request for the waiver.

18. Pursuant to its authority under CAA § 177, 42 U.S.C. § 7507, the State of Delaware is considering adopting the GHG Regulation first adopted by California. However, before any Delaware GHG Regulation can be enforced, EPA must first decide – and grant – California's waiver application. Should EPA disapprove California's waiver after Delaware promulgates California's motor vehicle greenhouse gas emissions standard, Delaware will have wasted the substantial time and resources associated with adopting a regulation that it cannot enforce.

**GLOBAL WARMING IS NEGATIVELY IMPACTING**
**THE STATE OF DELAWARE'S CLIMATE**

20. Increasing emissions of greenhouse gases into the atmosphere are causing global warming. The resultant climate change in the State of Delaware includes increasing temperatures, deteriorating air quality and more extreme weather events.

21. These climatic changes will in turn have very serious effects on the State of Delaware's public health, welfare, safety, economy and environment.

**GLOBAL WARMING ENDANGERS THE STATE OF DELAWARE'S**
**PUBLIC HEALTH, WELFARE, SAFETY, ECONOMY AND ENVIRONMENT**

22. As temperatures increase, heat waves become more prolonged and intense. In the United States, heat waves are the more prominent cause of weather-related mortality, exceeding the mortality rates for all other weather events combined. Many Mid-Atlantic states, with their irregular, intense heat waves, are particularly susceptible to heat-related deaths and illnesses.

23. Higher temperatures also increase the concentration of ground-level ozone, which in turn exacerbates respiratory illnesses such as asthma. The entire State of Delaware is in non-attainment with the national ambient air quality 8-hour standard for ground-level ozone. The

presence of ground-level ozone in concentrations above the national ambient air quality standard has significant adverse health affects in Delaware, including increased hospitalizations and mortality risk for people with asthma and other respiratory diseases.

24.     Global warming also accelerates sea level rise, which threatens Delaware's coastal populations, vital infrastructure, property and delicate ecosystems.  Delaware is a very narrow coastal state that is approximately 96 miles long and varies from 9 miles to 35 miles in width. http://portal.delaware.gov/delfacts/geo.shtml (last visited 11/20/2007).  It borders the Atlantic Ocean, the Delaware Bay and the States of Maryland and New Jersey and the Commonwealth of Pennsylvania. *Id.*  The coast of Delaware is an important resource with approximately 381 miles of shoreline. *Id.* Delaware's coastline includes barrier beaches, inland bays and productive estuaries.  Freshwater and salt marshes, tidal flats and several islands dot its coast.  See, e.g., EPA, "Climate Change and Delaware," (Sept. 1997) at 3.  The Delaware Bay is the chief spawning ground for the horseshoe crab and a nursery for many coastal fisheries. *Id.* States on the East Coast below Cape Cod are particularly vulnerable to problems such as loss of coastal wetlands, erosion of beaches, saltwater intrusion of drinking water, and decreased longevity of low-lying infrastructure because this part of the East Coast is low and sandy. *Id.* At Lewes, Delaware, sea level already is rising about 12 inches per century, and it is likely to rise another 23 inches by 2100. *Id.* Rising sea levels, combined with possible decreases in summer stream flows could increase the salinity of the Delaware River and Bay. *Id.* A 20-inch rise in sea level could inundate about 50 percent of the wetlands in the Delaware Bay. *Id.*

25.     One of the causes of sea level rise is thought to be ice melt, which is occurring far faster than scientists had previously thought.

26. Of serious concern for Delaware are recent studies that strongly suggest a link between increased global warming and hurricanes, with their potential for very significant loss of life and property and widespread environmental damage.

27. Warmer weather will also expand the habitat for disease-carrying insects such as mosquitoes and ticks. Mosquitos carry illnesses such as malaria, Eastern equine encephalitis and West Nile virus and already flourish in many parts of the Northeast including Delaware. Likewise, ticks carrying Lyme disease already exist throughout Delaware.

28. The undertaking of projects to prepare for harmful global warming – for example, modifying infrastructure to withstand rising sea levels and increased severe weather – are long-term projects that cannot practicably be deferred until a crisis is at hand.

## AUTOMOTIVE EMISSIONS ARE A MAJOR SOURCE OF GREENHOUSE GASES

29. Motor vehicles are a significant source of American carbon dioxide emissions. On average, motor vehicle emissions account for approximately one-third of total GHG emissions.

30. California anticipates that EPA approval of the GHG Regulation would reduce greenhouse gas emissions in California by about 74 million metric tons in 2020.

31. A reduction in greenhouse gas emissions will reduce the rate of global warming and the associated risks and magnitude of the adverse impacts of global warming on California and the State of Delaware.

## THE GHG REGULATION REQUIRES REDUCTIONS IN VEHICULAR EMISSIONS OF GREENHOUSE GASES

32. The GHG Regulation requires that the major manufacturers of light-duty vehicles sold in California begin to reduce the vehicular emissions of greenhouse gases on a fleet-wide

basis beginning with the 2009 model-year. If Delaware could enact and enforce California's GHG Regulation, it could require the same reductions.

33. The GHG Regulation divides the light-duty vehicles of each affected manufacturer into two fleets. One fleet (PC/LDT1) comprises passenger cars, pick-up trucks and small sports utility vehicles. The other fleet (LDT2/MDPV) comprises larger light-duty trucks, up to 8,500 pounds (gross vehicle weight), large sports utility vehicles and medium-duty passenger vehicles of less than 10,000 pounds.

34. Greenhouse gas emissions, measured in terms of $CO_2$-equivalents, are limited to a fleet-average of 323 grams per mile for PC/LDT1s in the 2009 model-year and decline over the years to 205 grams per mile in the 2016 model-year. Emission limits for LTD2/MDPVs are 439 grams per mile in the 2009 model-year and decline to 332 grams per mile in the 2016 model-year.

35. Automakers can achieve compliance with the GHG Regulation through a combination of improved technologies and other actions. Compliance can be achieved by reductions in tailpipe emissions of greenhouse gases, the use of alternative fuels, credits for air conditioner improvements, credits carried over from another year or fleet, and credit-trading among manufacturers.

**CONGRESS INTENDED PROMPT EPA ACTION ON WAIVER
APPLICATIONS FOR CALIFORNIA AUTOMOBILE EMISSIONS REGULATIONS**

36. Congress intended that California (1) serve as a laboratory for the nation in the control of automotive emissions, (2) be able to adopt more stringent regulations for automotive emissions than the federal government, and (3) be able to act more quickly than EPA in adopting air pollution control measures.

37. California has traditionally led EPA in establishing emission standards for light-duty vehicles.

38. The CAA, in 42 U.S.C. § 7543(a), requires, subject to specified exceptions, that EPA's Administrator grant a waiver of federal preemption under the Clean Air Act if California has determined that its "standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards."

39. The specified exceptions are set out in 42 U.S.C. § 7543(b)(1). EPA's Administrator must make at least one of the following three findings in order to deny the waiver applications:

> (a) California's determination of protectiveness is arbitrary and capricious;
> (b) California does not need the standards to meet compelling and extraordinary conditions; or
> (c) the standards and accompanying enforcement procedures are not consistent with 42 U.S.C. § 7521(a).

40. Under 42 U.S.C. § 7543, EPA does not go through the process of independent rule-making. Instead, EPA provides notice and opportunity for public participation during its review of the California emission regulation.

41. Congress generally intended that EPA make determinations of this type in a matter of "weeks or months, not years." See In Re American Rivers and Idaho Rivers United, 372 F.3d 413, 419 (D.C. Cir. 2004).

**REASONABLE TIME FOR THE EPA TO ACT HAS EXPIRED**

42. CARB submitted a comprehensive analysis of the GHG Regulation when it applied for the waiver in December 2005. EPA requested no additional information.

43. When EPA took no action on California's waiver application, California's Governor Arnold Schwarzenegger wrote the President of the United States on April 10, 2006, and requested urgent action on California's waiver application. A copy was sent to the EPA Administrator.

44. EPA did not respond to Governor Schwarzenegger. EPA make no indication what action, if any, it was taking on CARB's application.

45. California's Governor wrote to the President again on October 24, 2006, and again sent EPA a copy of the letter. Governor Schwarzenegger repeated his request for urgent action.

46. On February 21, 2007, EPA informed CARB that EPA did not intend to act on California's waiver application, other than opening an electronic docket, until the United States Supreme Court decided whether EPA was obligated to address greenhouse gases as air pollutants under the CAA. The U.S. Supreme Court ruled on April 2, 2007, that the greenhouse gases are subject to regulation under the Clean Air Act. See Massachusetts v. EPA, 127 S.Ct. 1438, 1458-1459, 167 L.Ed.2d 248, 75 USLW 4149 (2007).

47. EPA requires no additional time to review California's determination that its standards are "at least as protective of public health and welfare as applicable Federal standards under 42 U.S.C. § 7543(b)(1) and (2)." California explicitly documented its determination in its December 2005 submission to EPA.

48. The protectiveness comparison of state and federal standards also requires no additional time, since EPA has no federal standards for greenhouse gas emissions from motor vehicles.

49. EPA should not require any additional time to determine whether California's rule-

making was arbitrary and capricious under 42 U.S.C. § 7543(b)(1) and (2). EPA was provided with a comprehensive exposition of CARB's 2-year rule-making when CARB first requested the waiver in December 2005. CARB's December 2005 submission to EPA included an outline of its rule-making process, a detailed 251-page Initial Statement of Reasons for the rule, as well as a 446-page Final Statement of Reasons containing CARB's further analysis and response to additional comments and statements presented on the rule. The public policy objective or reducing atmospheric greenhouse gases is directly achieved by the GHG Regulation since it sets standards for reducing emissions of these very gases.

50. EPA requires no additional time to determine whether California needs the GHG Regulation to meet compelling and extraordinary conditions under 42 U.S.C. § 7543(b)(1)(B). EPA is already aware, through its administration of other provisions of the CAA, that criteria air pollutants in California's South Coast and San Joaquin air basins continue to exceed national air quality standards. EPA is also aware of the perils of global warming, as it has been separately studying global warming effects since at least 1984.

51. In addition, the policy and practice of EPA is to evaluate California's need to meet compelling and extraordinary conditions in terms of California's motor vehicle emissions program as a whole. In this respect, EPA was already aware of California's motor vehicle emissions program as a whole and California's continuing need for this program.

52. EPA requires no additional time to determine whether California's standards are consistent with 42 U.S.C. § 7521(a), as the substantive comments based on lead time and technological feasibility were limited, and CARB submitted comprehensive documentation in its original December 2005 submission.

53.     EPA requires no additional time to consider comments submitted in the course of its review of the GHG Regulation.  The deadline to submit comments expired on June 15, 2007.  Of the approximately 98,000 comments referenced by EPA's docket, more than 99.9 percent support the GHG Regulation.  General Motors Corporation is the only automaker subject to the GHG Regulation that submitted any comments.  Opposition is largely restricted to two automaker advocacy groups:  the Alliance of Automobile Manufacturers and the Association of International Automotive Manufacturers.  Only 15 entities who opposed the GHG Regulation included any analysis of their comments, so the amount of time necessary for EPA to review these comments cannot realistically be lengthy.

54.     The automakers' ability to timely and reasonably comply with the GHG Regulation was independently confirmed in a civil action, tried over the course of five weeks, before the United States District Court for the State of Vermont.  The action for federal preemption was brought by General Motors, DaimlerChrysler, and domestic and foreign automaker trade associations, as well as car dealers, in an attempt to invalidate Vermont's identical version of California's GHG Regulation.  The same adverse claims contained in the comments submitted to EPA in the waiver proceeding were litigated in that civil action.  In the 240-page opinion, issued on September 12, 2007, the trial court rejected the claims of the automakers.  <u>Green Mountain Chrysler Plymouth Dodge Jeep et al. v. Crombie</u>, C.A. No. 2:05-cv-302 (Sept. 12, 2007).

**MULTIPLE AND SUBSTANTIAL INTERESTS ARE PREJUDICED BY DELAY**

55.     Since the GHG Regulation's graduated emission standards begin to apply with the 2009 model-year, further delay by EPA will interfere with implementation of the certification procedure required under the GHG Regulation.  An order of the United States District Court for

the United States District Court for the Eastern District of California prohibits implementation of the GHG Regulation until EPA grants the waiver.

56. Automakers that will be subject to the GHG Regulation have alleged in court pleadings, either directly or through their trade associations, that "it is essential for manufacturers subject to the rules like the AB 1493 regulations to obtain approval of their vehicle models well before the relevant model-year begins." As the automakers correctly observe, the 2009 model-year can begin as early as January 2008.

57. Further delay also means that restoration of a relatively stable climate would be less likely. Such a delay would also require more drastic and rapid greenhouse gas reductions in the future at a greater cost.

58. Longer delay also increases the risk of an abrupt climate change within this century that would include a larger and more rapid rise of sea levels. Disintegration of the Greenland Ice Sheet would substantially raise sea level, as would disintegration of the West Antarctic Ice Sheet and a later loss of the East Antarctic Ice Sheet.

59. EPA is obligated to either grant or deny California's request for a waiver of federal preemption of its GHG Regulation under 42 U.S.C. § 7543(b)(1).

60. EPA's current failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes an unreasonable delay under 42 U.S.C. § 7604(a).

61. EPA's failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes agency action unlawfully withheld under 5 U.S.C. § 706(1).

WHEREFORE, the State of Delaware demands:

1. That this Honorable Court issue an order declaring that Defendants United States

Environmental Protection Agency and Stephen L. Johnson, its Administrator, have unreasonably delayed in deciding California's application for a waiver of federal preemption of California's GHG Regulation under 42 U.S.C. § 7543(b) and that the Defendants' failure constitutes agency action unlawfully withheld; and

2. That this Honorable Court issue an order compelling Defendants United States Environmental Protection Agency and Stephen L. Johnson, its Administrator, to decide forthwith California's application for a waiver of federal preemption of California's GHG Regulation under 42 U.S.C. § 7543(b); and

3. That this Honorable Court retain jurisdiction over this action until Defendants United States Environmental Protection Agency and its Administrator Stephen L. Johnson either approve or disapprove California's application for a waiver; and

4. That this Honorable Court grant such other and further relief as may be just and proper.

Respectfully submitted,

FOR THE STATE OF DELAWARE
JOSEPH R. BIDEN III
DELAWARE ATTORNEY GENERAL


_____/S/_____
Valerie S. Csizmadia [1]
Deputy Attorney General
Delaware Attorney General's Office
102 W. Water Street
Dover, DE 19904
(302) 739-4636

---

[1] Appearing as a designee of State of Delaware Attorney General Joseph R. Biden, III, pursuant to L.R. 83.2(f). The Government Attorney Information form has already been submitted.