IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF CALIFORNIA, by and through                1-07-CV-2024
ARNOLD SCHWARZENEGGER, Governor of
the State of California, and CALIFORNIA AIR
RESOURCES BOARD

                    Plaintiffs,

and

WASHINGTON ENVIRONMENTAL COUNCIL
615 Second Ave., Suite 380
Seattle, WA 98104

CLIMATE SOLUTIONS
219 Legion Way SW, Ste 201
Olympia, WA 98501

ENVIRONMENT WASHINGTON
3240 Eastlake Ave E., Ste 102
Seattle, WA 98102

OREGON WILD
5825 N. Greeley Ave
Portland, Oregon 97217

3E STRATEGIES
16 NW Kansas Ave.
Bend, OR 97702

ENVIRONMENT OREGON
1536 SE 11th Avenue, Suite B
Portland, OR 97214

ANGUS DUNCAN
11334 S.W. Aventine Circus
Portland, OR 97219

CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 549
Joshua Tree, CA 92252

FRIENDS OF THE EARTH
311 California Street, Suite 510
San Francisco, CA 94104

        Applicants-in-Intervention/
            Plaintiffs
  v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, and STEPHEN L.
JOHNSON, Administrator of the Environmental
Protection Agency Interior,

            Defendants.

## COMPLAINT IN INTERVENTION FOR DECLARATORY AND INJUNCTIVE RELIEF

Conservation organizations seeking to intervene in this action on the side of plaintiff California–the Washington Environmental Council, Climate Solutions, Environment Washington, Oregon Wild, Environment Oregon, 3EStrategies, Angus Duncan, the Center for Biological Diversity, and Friends of the Earth, hereafter, "Applicants"–allege as follows for their complaint in intervention:

1.    The State of California, by and through Arnold Schwarzenegger, Governor of the State of California, and the California Air Resources Board, brought an action to compel the United States Environmental Protection Agency and Stephen L. Johnson, Administrator for the United States Environmental Protection Agency (USEPA), to either grant or deny California's request for a waiver of preemption of its Regulation to Control Greenhouse Gas Emissions from Motor Vehicles (GHG Regulation), under section 209(b) of the Clean Air Act (42 U.S.C. § 7543(b)). The California Air Resources Board (CARB) requested the waiver from USEPA on December 21, 2005. The administrative docket is EPA-HQ-OAR-2006-0173.

2. California adopted the GHG Regulation to reduce the future harm to California's public health, welfare, safety, and economy resulting from increased global warming. The GHG Regulation requires a reduction in the emissions of greenhouse gases from most light-duty motor vehicles sold in California, on a fleet-wide basis, beginning with the 2009 model-year.

3. Applicants, recognizing that motor vehicles are one of the most significant sources of GHGs that cause global warming, advocated for development of the vehicle GHG standards by California and for the adoption of those standards in Oregon and Washington.

4. USEPA must act on the GHG Regulation without further delay because manufacturers cannot market their 2009 model-year vehicles in California without first certifying them. Marketing of the 2009 models can begin as early as January 2008. Also, at least 14 states other than California have adopted or are considering the adoption of the same emission standards for new vehicles sold in their states. Implementation of their regulations depends on the USEPA first granting California's waiver application.

5. USEPA has unreasonably delayed action on the requested waiver. The agency has had nearly two years since CARB applied for the waiver to review the application and supporting materials and to make a decision.

6. Comments submitted to the USEPA–which include comments by Applicants – overwhelmingly support the GHG Regulation. Of the approximately 98,000 comments referenced in the USEPA's docket, more than 99.9% support the GHG Regulation. Only one automaker subject to the GHG regulation submitted any opposition to the USEPA. Two automaker trade groups submitted opposing comments.

7. The effect of global warming on the environment and society has been extensively demonstrated both during CARB's and USEPA's administrative proceedings on the GHG

Regulation and in other public forums and scientific proceedings. The accelerating rate at which GHG emissions are increasing in the absence of regulation also makes the USEPA's delay unreasonable. The measured rate of change is exceeding earlier projections. Recent studies, of which the USEPA is aware, indicate the Earth may be perilously close to an irreversible melting of ice sheets within this century.

8.      Motor vehicles are a major source of greenhouse gases. Automotive emissions of greenhouse gases are increasing more rapidly than any other source. The longer the delay in reducing these emissions, the more harmful will be the impact on the environment and on society, including especially persons with limited financial resources.

**JURISDICTION, VENUE AND NOTICE**

9.      Jurisdiction of this court is invoked pursuant to the citizen's suit provision of the Clean Air Act, 42 U.S.C. § 7604(a).

10.     Venue in this court is proper as the GHG Regulation is "nationally applicable" by reason of the multiple states that have adopted the same regulation under 42 U.S.C. § 7507 and because the regulation applies to automobile manufacturers residing outside the jurisdiction of the Court of Appeals for the Ninth Circuit.

11.     California notified the USEPA of its intent to file this action pursuant to 42 U.S.C. § 7604(a) on April 25 and 26, 2007.

**REGULATORY HISTORY**

12.     In 2002, the California Legislature adopted Assembly Bill 1493 (Pavley), which amended California Health and Safety Code section 42823 and added section 43018.5. The legislation required CARB to develop and adopt a regulation for the control of greenhouse gas emissions by light-duty motor vehicles.

3

13. In 2002, CARB began holding public workshops and soliciting public comments on the development of a draft regulation.

14. After a series of workshops, comment analysis, and public hearings, the CARB Board approved its GHG Regulation on September 23, 2004. Final language and adoption occurred on August 4, 2005. The regulation amended Title 13 of the California Code of Regulations, sections 1900 and 1961, and added section 1961.1.

15. On December 21, 2005, CARB applied to the USEPA for waiver of federal preemption of the GHG Regulation under the Clean Air Act pursuant to 42 U.S.C. § 7543(b).

16. USEPA did not notice a hearing or solicit additional comments on California's waiver application until April 30, 2007, sixteen months after CARB applied for the waiver. USEPA held hearings on May 22 and 30, 2007. The noticed comment period expired on June 15, 2007. To date, USEPA has not granted or denied California's request for the waiver.

17. Pursuant to their authority under CAA §177, 42 U.S.C. §7507, the following states have adopted, or are in the process of adopting the California vehicle GHG standard: Arizona, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington.

**GLOBAL WARMING ENDANGERS HUMAN HEALTH, WELFARE, SAFETY, ECONOMY AND THE ENVIRONMENT**

18. Increasing emissions of greenhouse gases into the atmosphere are causing global warming. The resultant climatic change in western states, including in California, Washington, and Oregon in which states Applicant organizations have members and maintain offices, include increasing temperatures, reduced snowfall in the mountains, a northward shift in the prevailing winter storm track, deteriorating air quality, and more extreme weather events.

19. Warming of the climate system is unequivocal, according to the international consensus of scientists, evidenced by the fact that eleven of the last twelve years rank among the 12 warmest years for which instrumental record of global average surface temperature exist, and that the warming trend over the last five decades is nearly twice that for the last 100 years. The net effect of human activities since 1750 has been one of warming and most of the observed increase in globally averaged temperatures since the mid-20th century is very likely due to the observed increase in anthropogenic greenhouse gas concentrations.

20. Sea levels have risen from the 19th to the 20th century and continued GHG emissions at or above current rates will cause further warming, inducing many changes in the global climate system during the 21st century that will be larger than those observed during the 20th century.

21. Significant climate change impacts in the Pacific Northwest have already occurred, including an average regional temperature increased of 1-3 °F over the last century, with the 1975 to present warming attributed to human-causes. Hydrologically important consequences of regional warming have already occurred, including a 35% decline in spring snowpack, a shift in peak streamflow by 1-3 weeks, and an increase in winter and decrease in summer flows.

22. Oregon and Washington scientists predict that, absent significant reductions in global GHG emissions, regional annual average temperatures are likely to increase approximately 2.7 °F by 2030, and 5.4 °F by the 2050s, resulting in shifting isotherms and changes in vegetation zones, higher elevation treelines, earlier animal and plant breeding, a longer and more intense allergy season, rising sea levels, further snowpack declines, longer fire seasons, and drier summers with a likely "increase in drought stress and vulnerability of forests to insects, disease and fire."

23.     The western states have extensive forests and other wild lands. Global warming has already increased the number of large wild land fires by causing fire seasons to be drier and hotter, start earlier, and last longer. Fires larger than 1000 acres in the western United States occurred four time more often between 1987 and 2003 than they did between 1970 and 1986. The resulting property damage and fire suppression costs have increased as well. Further acceleration of snow melt and higher temperatures will increase the frequency of large fires by making wild land vegetation drier and fire seasons last longer. The area historically burned by fires is expected to expand by nine to fifteen percent by the end of the century.

24.     Global warming will also alter the natural biota. Alpine and subalpine forests will decline and coniferous forests will be partly replaced by mixed conifer and evergreen hardwoods. Grasslands will expand, largely at the expense of woodlands and chaparral. Increases in woody growth due to longer growing seasons and, under some climatic scenarios, more precipitation, will be cut short by the increased wildfires. Warming temperatures will allow the expansion of agricultural weeds, pests and microbial diseases.

25.      Atmospheric GHG concentrations have neared a tipping point beyond which irreparable and exceptionally severe climate change will be unavoidable. Once global temperatures climb more than 1°C above present, widespread sea-ice melting may trigger climate feedback loops that ensure further warming. Thus, continued GHG emissions at present or greater levels make it practically certain that there will be abrupt climate changes this century.

26.     If the potential full effects of melting or disintegrating ice sheets in Greenland and Antarctica are accounted for, unabated GHG emissions could lead to a sea level rise of 1 meter or more this century, a dynamically changing ice sheet that is out of human control, and eventual sea-level rise of twenty-six feet. Many cities and communities in their present configuration,

including most major cities along the U.S. east coast, will not successfully adapt to such a sea-level rise.

27. To avoid dangerous interference with the global climate system, there must be no further delay in capping and reducing GHG emissions.

**AUTOMOTIVE EMISSIONS ARE A MAJOR SOURCE OF GREENHOUSE GASES**

28. Vehicle emissions are responsible for a substantial portion of GHG pollution emitted in California, Oregon, Washington and other states. Light-duty motor vehicles account for nearly a third of the greenhouse gases emitted in the U.S.

29. Enforcement by states of the California standards will assist in limiting the most severe impacts of climate change, including mass species extinctions.

30. The California standards are consistent with the mitigation measures identified by the Intergovernmental Panel on Climate Change (IPCC) as needed to arrest the projected growth of global GHG emissions.

31. USEPA approval of the GHG regulation would reduce greenhouse gas emissions by about 74 million metric tons by 2020.

**THE GHG REGULATION REQUIRES REDUCTIONS IN VEHICULAR EMISSIONS OF GREENHOUSE GASES**

32. The GHG Regulation requires that the major manufacturers of light duty vehicles begin to reduce the vehicular emissions of greenhouse gases on a fleet-wide basis beginning with the 2009 model-year.

33. The regulation divides the light-duty vehicles of each affected manufacturer into two fleets. One fleet (PC/LDT1) comprises passenger cars, pick-up trucks and small sports utility vehicles. The other fleet (LDT2/MDPV) comprises larger light-duty trucks, up to 8500 pounds

(gross vehicle weight), large sports utility vehicles, and medium-duty passenger vehicles of less than 10,000 pounds.

34. Greenhouse gas emissions, measured in terms of $CO_2$-equivalents, are limited to a fleet-average 323 grams per mile for PC/LDT1s in the 2009 model-year and decline over the years to 205 grams per mile in the 2016 model year. Emission limits for LTD2/MDPVs are 439 grams per mile in the 2009 model-year and decline to 332 grams per mile in the 2016 model-year.

35. Automakers can achieve compliance with the GHG Regulation through a combination of improved technologies and other actions. Compliance can be achieved by reductions in tailpipe emissions of greenhouse gases, the use of alternative fuels, credits for air conditioner improvements, credits carried over from another year or fleet, and credit-trading among manufacturers.

**CONGRESS INTENDED PROMPT USEPA ACTION ON WAIVER APPLICATIONS FOR CALIFORNIA AUTOMOBILE EMISSIONS REGULATIONS.**

36. Congress intended that California and other states (1) serve as a laboratories for the nation in the control of automotive emissions, (2) be able to adopt more stringent regulations for automotive emissions than the federal government, and (3) be able to act more quickly than USEPA in adopting air pollution control measures.

37. California has traditionally led the USEPA in establishing emission standards for light-duty vehicles.

38. 42 U.S.C. § 7543(a) requires, subject to specified exceptions, that USEPA's Administrator grant a waiver of federal preemption under the Clean Air Act if California has determined that its "standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards."

39. The specified exceptions are set out in 42 U.S.C. § 7543 (b)(1). The USEPA Administrator must make at least one of the following three findings in order to deny the waiver application: (a) California's determination of protectiveness is arbitrary and capricious, (b) California does not need the standards to meet compelling and extraordinary conditions, or (c) the standards and accompanying enforcement procedures are not consistent with 42 U.S.C. § 7521(a).

40. Under 42 U.S.C. § 7543, the USEPA does not go through the process of independent rule-making. Instead USEPA provides notice and opportunity for public participation during its review of the California emission regulation.

41. Congress generally intended that the USEPA make determinations of this type in a matter of weeks or months, not years.

**REASONABLE TIME FOR THE USEPA TO ACT HAS EXPIRED**

42. CARB submitted a comprehensive analysis of the GHG regulation when it applied for the waiver in December 2005. The USEPA requested no additional information.

43. When the USEPA took no action on California's waiver application, California Governor Arnold Schwarzenegger wrote the President of the United States on April 10, 2006 and requested urgent action on California's waiver application. A copy was sent to the USEPA Administrator.

44. The USEPA did not respond. It did not indicate what action, if any, it was taking on CARB's application. Nevertheless, the USEPA had been studying the GHG regulation since at least September of 2004.

45. California's Governor again wrote the President and copied the USEPA on October 24, 2006. The Governor repeated his request for urgent action.

46. On February 21, 2007, the USEPA informed CARB that USEPA did not intend to act on California's waiver application, other than opening an electronic docket, until the United States Supreme Court decided whether USEPA was obligated to address greenhouse gases as air pollutants under the Clean Air Act. The Supreme Court ruled on April 2, 2007, that the greenhouse gases are subject to regulation under the Clean Air Act.

47. USEPA requires no additional time to review California's determination that its standards are "at least as protective of public health and welfare as applicable Federal standards" under 42 U.S.C. § 7543(b)(1) and (2). California explicitly documented its determination in its December 2005 submission to the USEPA.

48. The protectiveness comparison of state and federal standards also requires no additional time, since USEPA has no federal standards.

49. USEPA requires no additional time to determine whether California's rule making was arbitrary and capricious under 42 U.S.C. § 7543(b)(1)(A). USEPA was provided with a comprehensive exposition of CARB's two-year rule-making when CARB first requested the waiver in December 2005. CARB's December 2005 submission to USEPA included an outline of its rule-making process, a detailed 251-page Initial Statement of Reasons for the rule, as well as a 446-page Final Statement of Reasons containing CARB's further analysis and response to additional comments and statements presented on the rule. The public policy objective of reducing atmospheric greenhouse gases is directly achieved by the GHG regulation since it set standards for reducing emissions of these very gases.

50. USEPA requires no additional time to determine whether California needs the GHG regulation to meet compelling and extraordinary conditions under 42 U.S.C. § 7543(b)(1)(B). The USEPA is already aware, through its administration of other provisions of the Clean Air

Act, that criteria air pollutants in California's South Coast and San Joaquin air basins continue to exceed national air quality standards. The USEPA is also aware of the perils of global warming, as it has been separately studying global warming effects since at least 1984.

51. In addition, the policy and practice of the USEPA is to evaluate California's need to meet compelling and extraordinary conditions in terms of California's motor vehicle emissions program as a whole. In this respect, the USEPA was already aware of California's continuing need for this program.

52. USEPA needs no additional time to determine whether California standards are consistent with 42 U.S.C. § 7521(a), as the substantive comments based on lead time and technological feasibility were limited, and CARB submitted comprehensive documentation in its original December 2005 submission.

53. USEPA requires no additional time to consider comments submitted in the course of its review of the GHG regulation. The deadline for comment submission expired on June 15, 2007. Of the approximately 98,000 comments referenced by the USEPA's docket, more than 99.9% support the GHG Regulation. General Motors Corporation is the only automaker subject to the regulation that submitted any comments. Opposition is largely restricted to two automaker advocacy groups, the Alliance of Automobile Manufacturers and the Association of International Automobile Manufacturers. Only 15 entities who opposed the regulation included any analysis in their comments, so the review time cannot be lengthy.

54. The automakers' ability to timely and reasonably comply with the GHG Regulation was independently confirmed in a civil action, tried over the course of five weeks, before the United States District Court for the State of Vermont. The action for federal preemption was brought by General Motors Corporation, DaimlerChrysler Corporation, and domestic and foreign automaker

trade associations, as well as car dealers, in an attempt to invalidate Vermont's identical version of California's GHG Regulation. The same adverse claims contained in the comments submitted in this USEPA proceeding were litigated in that civil action. The District Court rejected those claims in a 240-page opinion issued on September 12, 2007.

**MULTIPLE AND SUBSTANTIAL INTERESTS ARE PREJUDICED BY DELAY**

55.     Since the GHG Regulation's graduated emission standards begin to apply with the 2009 model-year, further delay by the USEPA will interfere with implementation of the certification procedure required under the GHG Regulation. An order of the United States District Court for the Eastern District of California prohibits implementation of the GHG regulation until the USEPA grants the waiver.

56.     Automakers that will be subject to the GHG regulation have alleged in court pleadings, either directly or through their trade associations, that "it is essential for manufacturers subject to the rules like the AB 1493 regulations to obtain approval of their vehicle models well before the relevant model-year begins." As the automakers correctly observe, the 2009 model-year can begin as early as January 2008.

57.     At least the following 14 states have adopted the GHG Regulation under Section 177 of the Clean Air Act or are in the process of adopting it: Arizona, Connecticut, Florida, Maine, Maryland, Massachusetts, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont and Washington. In at least ten of these states, the regulations apply beginning with the 2009 model-year. They account for more than 40% of the nation's population. USEPA's delay prejudices these states as it does California, since implementation of their regulations requires that USEPA first waive federal preemption for the GHG regulation.

58.     Further delay also means that the postponed restoration of a relatively stable and more equable climate would be less likely. Such a delay would also require more drastic and rapid greenhouse gas reductions in the future at a greater cost.

59.     Longer delay also increases the risk of an abrupt climate change within this century that would include a larger and more rapid rise of sea level along California's coasts, inland bays and deltas. Disintegration of the Greenland Ice Sheet would raise sea level by twenty-one feet and disintegration of the West Antarctic Ice Sheet would raise sea level by twenty-six feet. A later loss of the East Antarctic Ice Sheet would add more than 210 additional feet to the sea level.

60.     The USEPA is obligated to either grant or deny California's request for a waiver of federal preemption of its GHG Regulation under 42 U.S.C. § 7543(b)(1).

61.     The USEPA's current failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes an unreasonable delay under 42 U.S.C. § 7604(a).

62.     The USEPA's failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes an unreasonable delay under 5 U.S.C. § 706(1).

63.     The USEPA's failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes agency action unlawfully withheld under 5 U.S.C. § 706(1).

**WHEREFORE, Applicants demand:**

1.     That this court issue an order declaring that defendants United States Environmental Protection Agency and Stephen L. Johnson, Administrator, have unreasonably delayed in deciding California's application for waiver of federal preemption of California's GHG Regulation under 42 U.S.C. § 7543(b) and that their failure constitutes agency action unlawfully withheld.

2.	That this court issue an order compelling defendants United States Environmental Protection Agency and Stephen L. Johnson, Administrator, to decide California's application for waiver of federal preemption of California's GHG Regulation under 42 U.S.C. § 7543(b) forthwith.

3.	That this court retain jurisdiction over this action until the United States Environmental Protection Agency and Administrator decide California's application.

4.	That the court grant such other and further relief as may be proper.


Dated: December 3, 2007					Respectfully Submitted,


						/s/ Daniel Galpern
						Daniel Galpern, OR Bar #06195
						Western Environmental Law Center
						1216 Lincoln St.
						Eugene, OR  97401
						(541) 485-2471
						galpern@westernlaw.org
						Applicant *Pro Hac Vice*


						/s/ Matt Kenna
						Matt Kenna, Bar #CO0028
						Western Environmental Law Center
						679 E. 2nd Ave., Suite 11B
						Durango, CO  81301
						(970) 385-6941
						mattkenna@gmail.com

						Attorneys for Applicants-in-Intervention