IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 07-cv-02024-RCL |
| COMMONWEALTH OF MASSACHUSETTS, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| STATE OF DELAWARE, | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| and | ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL 40 West 20th Street New York, NY 10011 | ) ) ) ) | |
| SIERRA CLUB 85 Second Street, 2nd Floor San Francisco, CA 94105 | ) ) ) ) | |
| ENVIRONMENTAL DEFENSE 257 Park Avenue South New York, NY 10010 | ) ) ) ) | |
| CONSERVATION LAW FOUNDATION 62 Summer Street Boston, MA 02110 | ) ) ) ) | |
| Proposed Intervenor Plaintiffs, | ) ) ) | |
| v. | ) ) | |

|  | ) |
| UNITED STATES ENVIRONMENTAL | ) |
| PROTECTION AGENCY, and STEPHEN L. | ) |
| JOHNSON, Administrator of the Environmental | ) |
| Protection Agency, | ) |
|  | ) |
| Defendants. | ) |
| _____ | ) |

## UNOPPOSED MOTION TO INTERVENE AS A PLAINTIFF AND MEMORANDUM IN SUPPORT

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the Natural Resources Defense Council ("NRDC"), Environmental Defense Fund ("EDF"), Sierra Club, and Conservation Law Foundation ("CLF") (collectively "Applicants") hereby move to intervene on the side of Plaintiffs in the above-captioned case. Applicants' motion is unopposed; Plaintiffs, Intervenors and Defendants have all indicated that they do not oppose the motion.

## I.    BACKGROUND

### A.    California's Waiver Request

This case involves the State of California's request to the United States Environmental Protection Agency (EPA) for a waiver needed to implement California's own emission standards for new motor vehicles. The Clean Air Act grants California authority to set its own emission standards because of the state's long-standing and severe air pollution problems as well as the state's pioneering efforts to adopt "motor vehicle emission standards different from and in large measure more advanced than the corresponding federal program; in short, to act as a kind of laboratory for innovation." Motor and Equip. Mfrs. Ass'n v. EPA, 627 F.2d 1095, 1110-11 (D.C. Cir. 1979). Under CAA Section 209(b), 42 U.S.C. § 7507, California must request and be granted a waiver of preemption from EPA before it may enforce its regulations. The Clean Air Act permits other States to adopt California's emissions standards, provided those standards have

been granted a waiver by EPA.

In 2002, the California legislature passed legislation requiring the California Air Resources Board (CARB) to adopt regulations for the control of greenhouse gas (GHG) emissions by light-duty motor vehicles.  In 2004, CARB approved GHG regulations for vehicles. On December 21, 2005, CARB applied to EPA for a waiver of federal preemption of its GHG Regulation under the Clean Air Act pursuant to 42 U.S.C. § 7543(b).

In letters submitted May 22, 2007 and June 15, 2007, Applicants NRDC, EDF and Sierra Club provided EPA Administrator Stephen L. Johnson notice that Applicants intended to file a case alleging undue delay by EPA.  A copy of these letters are attached.   Ex. 1.

On December 19, 2007, EPA Administrator Stephen L. Johnson issued a letter to Governor Arnold Schwarzenegger stating, "I have decided that EPA will be denying the waiver and have instructed my staff to draft appropriate documents setting forth the rationale for this denial in further detail and to have them ready for my signature as soon as possible."  Ex. 2.

Applicants contend that EPA's December 19, 2007, letter denying California's request is final agency action and have filed a petition for review of the Administrators decision in the Ninth Circuit Court of Appeals.  However, in the Answer EPA filed on January 7, 2008 in this case, EPA stated that it had not yet granted or denied California's waiver request.  To the extent that EPA is correct that it has not yet reached a final decision, EPA continues to unreasonably delay issuing such a decision.

**B.     The Movant National and Regional Environmental Organizations**

The Natural Resources Defense Council is a national nonprofit environmental organization with approximately 421,550 members nationwide.  NRDC uses law, science and the support of its members to ensure a safe and healthy environment for all living things.  One of

NRDC's top priorities is to reduce emission of air pollutants, which are causing global warming. NRDC worked with the California legislature to support passage of the Pavley GHG legislation and with CARB on the GHG regulations.   NRDC has also worked in other states to ensure adoption of California's GHG emissions standards.

The Environmental Defense Fund has 343,757 members nationally and specializes in the development of innovative, scientifically-sound, market-based solutions to environmental problems.  Through its Climate and Air Program, EDF works expansively on the international, national and state levels to address the causes and effects of global warming.  EDF supported the adoption of automotive greenhouse gas standards in California as part of its State Climate Action Project.

The Sierra Club is a national nonprofit environmental organization with approximately 800,000 members nationwide.  One of Sierra Club's major programs is the national Global Warming and Energy Campaign to promote solutions to global warming. Using current and cutting-edge technologies as well as securing promulgation of the GHG emission standards was among the top priorities of this Campaign.

The Conservation Law Foundation is a non-profit, member-driven environmental advocacy organization dedicated to protecting the people, environment and communities of New England.  CLF has a total of 3,761 current members; 3,001 CLF members live in Massachusetts, Vermont, Rhode Island, and Maine – states that have adopted California's clean car emission standards.  As part of its long-standing sustainable transportation and air quality campaigns, CLF has advocated for adoption of California's clean car emission standards in its home states of New England, and in upwind states that contribute to the poor air quality across the Northeast.

## II.    ARGUMENT

### A.    Applicants Are Entitled To Intervene As Of Right.

The D.C. Circuit weighs the following four factors to determine whether intervention as of right is appropriate under Fed. R. Civ. P. 24(a): "(1) the timeliness of the motion; (2) whether the applicant 'claims an interest relating to the property or transaction which is the subject of the action'; (3) whether 'the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest'; and (4) whether 'the applicant's interest is adequately represented by the existing parties.'" Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1074 (D.C. Cir. 1998), quoting Fed. R. Civ. P. 24(a). Rule 24(a) is construed liberally in favor of granting intervention. In re Vitamins Antitrust Class Actions, 215 F.3d 26, 29 (D.C. Cir. 2000). As outlined below, Applicants satisfying each of the four requirements of Rule 24(a) and should be permitted to intervene as of right. Applicants have provided EPA notice of their intent to sue and therefore could bring an independent suit challenging EPA's unreasonable delay. However, Applicants have moved to intervene because doing so is significantly more efficient for the Court and parties.

### 1.    The Motion To Intervene Is Timely.

The timeliness of a motion to intervene depends on "consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." United States v. AT&T Co., 64 2 F.2d 1285, 1295 (D.C. Cir. 1980). Applicants' motion is timely because it is being filed early in the case and no Party to the case will suffer any prejudice from Applicants' intervention.

California filed its complaint on October 24, 2007, less than three months ago. Defendants filed their answer to California's complaint on January 7, 2008, less than two weeks ago. Defendants have not yet filed their answer to three Plaintiff-Intervenor groups, whose motions to intervene the Court granted on January 7, 2008. No substantive pleadings concerning the merits of California's case have been filed. At present, the Court has set only one deadline: a February 1, 2008 date for the meet and confer report. The Parties have not yet met or conferred and Applicants' intervention should not delay the Parties ability to meet the Court's deadline.

In sum, Applicants' intervention at this point will not cause delay or prejudice any party and is, accordingly, timely. See Me-Wuk Indian Community of the Wilton Rancheria v. Kempthorne, --- F.R.D. ---, 2007 WL 3088581, *4 (D.D.C.) (finding motion timely where it was filed "less than three months after the complaint").

**2.    Applicants Have A Significant Protected Interest In The GHG Vehicle Regulations and The Timely Resolution of California's Waiver Request.**

Applicants satisfy the second requirement of Fed. R. Civ. P. 24(a) based on their significant interest in the subject matter of this litigation. Rule 24(a) (2) requires that an intervenor have an interest that is related "to the property or transaction which is the subject of the action." This case concerns California's request for a waiver for its GHG regulations for vehicle emissions, which is necessary for those regulations to go into effect.

Applicants have a substantial interest because they were extensively involved in passage of the Pavley GHG legislation in California, development and approval of the GHG regulations by the California Air Resources Board, and adoption of California's GHG regulations by other States. Applicants have also submitted comments to EPA in support of California's requested

waiver and have written the agency to complain of its delay and demand that the agency reach a decision.

Applicants have also been involved in other litigation concerning California's GHG vehicle regulations.  For example, Applicants successfully moved to intervene on the side of the defendant states in three challenges to the GHG regulations brought by auto companies in Vermont, California, and Rhode Island.[1]  In addition, applicants have filed a petition challenging Administrator Johnson's December 19, 2007 letter denying California's waiver before the Ninth Circuit.  This case has been consolidated with a challenge filed by the State of California.

Applicants also have a substantial interest because their members use and enjoy property and resources which will suffer severe harm from global warming.  California's GHG vehicle regulations seek to protect public health and natural resources from the impacts of greenhouse gas emissions.  Greenhouse gases, which are known to cause global warming, are creating devastating effects on a wide range of natural resources.  Already, greenhouse gas emissions are increasing temperatures, reducing snowfall in the mountains, creating a northward shift in the prevailing winter storm track, worsening air quality, and causing more extreme weather events.  Scientists predict that if greenhouse gases continue to be emitted at their current rates average United States temperatures could be three to nine degrees higher by the end of the century.  Such changes will dramatically alter natural biota and disrupt agriculture.  Droughts and forest fires in Western states are predicted to worsen as higher temperatures reduce the accumulation of mountain snowpacks.  Global warming will also increase storm intensities and extreme heat

---

[1] <u>Green Mountain Chrysler-Plymouth-Dodge-Jeep v. Crombie</u>, 508 F. Supp. 2d 295 (D. Vt. 2007); <u>Central Valley Chrysler-Jeep, Inc. v. Goldstone</u>, --- F.Supp.2d ---, 2007 WL 4372878 (E.D. Cal. December 11, 2007); <u>Lincoln-Dodge, Inc. v. Sullivan</u>, No. 06-70T (D. RI. Feb. 13, 2006).

waves.  In addition, global warming increases the formation of ground-level ozone, a component of smog that damages the respiratory tract and increases the symptoms of asthma.

Finally, if greenhouse gases are left unchecked, scientists predict global warming could cause the Greenland and/or West Antarctic ice sheets to melt in the next century.  Substantial melting of either ice sheet could cause a catastrophic rise in sea level.  Loss of the Greenland Ice Sheet would cause the sea level to rise twenty-one feet and loss of the West Antarctic Ice Sheet would cause a rise of twenty-six feet.  Many major cities in the United States are located on the coast and are therefore at tremendous risk from sea level change.

In sum, Applicants have a substantial interest in the subject matter of this legislation by virtue of their active efforts to support the GHG regulations and their use and enjoyment of property and resources that will be harmed by global warming.

### 3. Applicants' Interests May Be Impaired As A Result of This Litigation.

Disposition of this case "may as a practical matter impair or impede" Applicants' interests.  Fund for Animals, Inc. v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003) (quoting Fed. R. Civ. P. 24(a)(2)).  EPA's failure to grant or deny the waiver California has applied for, which is required in order for the GHG regulations to go into effect, threatens to thwart Applicants' substantial advocacy efforts on behalf of those regulations and to allow the continued emissions of greenhouse gases and the destruction of resources and property Applicants use and enjoy. Applicants seek to intervene in order to obtain an order requiring that, to the extent that Administrator Johnson's December 19, 2007, letter is not final agency action, the Administrator must make a final decision without further delay.  An adverse ruling by the Court would harm Applicants' interests by allowing EPA to continue to delay its decision and, accordingly, delay implementation of the GHG regulations.

### 4.    No Other Party Adequately Represents Applicants' Interests.

Plaintiffs will not adequately represent Applicants' interests.  Applicants are private nonprofit organizations who have been heavily involved in both the development of California's GHG regulations, adoption of those regulations by other states and other litigation over the regulations.  As private organizations whose missions focus solely on environmental and conservation objectives, Applicants have a more focused set of interests from the States represented in this case.  For this reason, the D.C. Circuit has "often concluded that government entities do not adequately represent the interests of aspiring intervenors." Fund For Animals, Inc. v. Norton, 322 F.3d 728, 736 (D.C. Cir. 2003).

Applicants' interests are also not adequately represented by the other environmental organizations which have intervened.  First, Applicants are involved in all of the other litigation concerning California's GHG regulations except for a recently filed case in New Mexico.  In light of their participation in these other cases, Applicants may bring a different perspective, make different arguments and seek different relief from the environmental organizations which have already intervened.  Second, the majority of the environmental organizations which have intervened are based in Oregon and Washington.  In contrast, NRDC, EDF and Sierra Club are national environmental organizations and CLF focuses on New England.  This different geographic perspective may lead Applicants to approach the case differently.  In addition, the four applicants for intervention have been deeply engaged in the adoption and legal defense of the standards adopted by California, Vermont, and other states.

In sum, the differences between the position of Applicants and the existing parties to the litigation is more than enough to meet the minimal threshold for showing that other parties do

not represent Applicants' interests.  See Dimond v. District of Columbia, 792 F.2d 179, 193

(D.C. Cir. 1986) (stating the burden of showing inadequate representation "is not onerous").

**B.    In The Alternative, Applicants Should Be Granted Permissive Intervention.**

In the alternative, Applicants respectfully request that the Court grant permissive

intervention pursuant to Fed. R. Civ. P. 24(b).  Rule 24(b)(2) states: "Upon timely application

anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and

the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).  In

addition, the court must consider whether the proposed intervention will "unduly delay or

prejudice the adjudication of the rights of the original parties," id., and whether there is an

independent ground for subject matter jurisdiction.  See Friends of Animals v. Kempthorne, 452

F. Supp. 2d 64, 68 (D.D.C. 2006).  As described above, this intervention request is timely.

Applicants are filing shortly after defendants filed the Answer to California's complaint and

before defendants have answered the complaints of other plaintiff-intervenors.  Also, Applicants

complaints in intervention and the plaintiffs' claims have questions of law and fact in common.

Finally, Applicants' intervention would not delay the progress of the case, nor cause any

prejudice to the other parties.  Therefore, should the Court not grant Applicants' intervention as

of right, the Court should exercise its discretion to grant Applicants permissive intervention.

**C.    Applicants Have Standing.**

Applicants have standing to pursue claims of unreasonable delay against EPA in this case

because members of Applicants' organizations have demonstrated injury-in-fact, causation and

redressability.  Applicants are environmental organizations dedicated to protecting the human

health and the natural environment.  In light of the present and projected harm from global

warming, reduction of greenhouse gases is a high priority for Applicants.  Applicants' members

use, own and enjoy property and natural resources which are harmed or are at risk of harm from global warming.  See Declaration of Josephine Merck (describing harm to coastal property in Rhode Island); Declaration of Timothy Gomes (describing harm to coastal property on Long Island); Declaration of Joy Covey (describing projected increase in drought conditions in Utah due to reduced snowpack and earlier runoff); Declaration of Bob Epstein (describing expected reduction in length of ski season in Sierra Nevadas and likely reduction in value of property owned there); Declaration of Arthur P. Cooley (describing harms to California's wild rivers and biodiversity); Declaration of Robert H. Gardiner (describing harm to ocean-front property in Maine); Declaration of Peggy B. Sharpe (describing loss of coastal property in Maine).  New York, Rhode Island and Maine have adopted and Utah is considering adopting California's greenhouse gas emission standards for vehicles.  These harms to Applicants' use and enjoyment of their property as well as their interests in natural resources are sufficiently particularized to establish injury.  See Massachusetts v. EPA, 127 S.Ct. 1438, 1456 (2007) (finding particularized injury based on harm to coastal property owned by Massachusetts).  In addition, Applicants' members wish to be able to choose from a wider selection of vehicles with low greenhouse gas emissions.  See Epstein Decl. ¶ 12; Sharpe Decl. ¶ 15.

Applicants' members' injuries from global warming are traceable to Defendants' failure to reach a final decision on California's request for a waiver.  The Supreme Court confirmed "the existence of a causal connection between man-made greenhouse gas emissions and global warming."  Massachusetts, 127 S. Ct. at 1457.  California's GHG regulations, which have been adopted by twelve states, represent a substantial step in addressing the problem of global warming.  Id. (finding failure to take "small incremental step" to regulate greenhouse gases sufficient to satisfy causation).  As the Supreme Court recognized in Massachusetts, "EPA's

refusal to regulate [man-made greenhouse gas] emissions 'contributes' to Massachusetts' injuries." <u>Id.</u> Likewise, here EPA's refusal to grant or deny California's waiver request contributes to Applicants' member's injuries because the regulations cannot go into effect until the waiver is granted.

Finally, Applicants harm can be remedied through an order setting a deadline by which EPA must grant or deny California's requested waiver. If EPA grants the waiver, the GHG regulations can go into effect. If EPA denies the waiver, Applicants will have the opportunity to challenge that denial in court. Once in effect, the GHG regulations will at least slow the pace of global warming and thereby reduce Applicants' member's injuries. <u>Id.</u> at 1458 (finding that a "reduction in domestic emissions would slow the pace of global emissions increases, no matter what happens elsewhere").

In sum, Applicants satisfy all three elements of constitutional standing.

## III.    CONCLUSION

For the foregoing reasons, this Court should grant Applicants' motion to intervene, pursuant to Fed. R. Civ. P. 24.

Dated: January 17, 2008

Respectfully submitted,

*/s/ Benjamin Longstreth*
Benjamin Longstreth (D.C. Bar No. 974015)
David Doniger (D.C. Bar No. 305383)
Natural Resources Defense Council
1200 New York Avenue, NW, Suite 400
Washington, DC 20005
(202) 289-6868 (ph)
(202) 289-1060 (fax)

*Counsel for Natural Resources Defense Council*

David Bookbinder (DC Bar No. 455525)
Sierra Club
408 C Street, NE
Washington, DC 20002
(202) 548-4598

*Counsel for Sierra Club*


Vickie Patton
Environmental Defense
2334 North Broadway
Boulder, CO 80304
(303) 447-7215

James T.B. Tripp
Environmental Defense
257 Park Avenue South
New York, NY 10010
(212) 505-2100

*Counsel for Environmental Defense*


Melissa A. Hoffer
Conservation Law Foundation
27 North Main Street
Concord, New Hampshire 03301
(603) 225-3060

*Counsel for Conservation Law Foundation*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, January 17, 2008, I caused to be served a true and correct copy of the following documents:

**Applicants' Motion to Intervene and Memorandum in Support**
**[Proposed] Complaint**
**Affidavits in Support of Applicants' Standing**
**Corporate Disclosure Statement**
**[Proposed] Order on Unopposed Motion to Intervene as a Plaintiff**

by first-class mail on the following counsel:

Jan Zabriskie
California Department of Justice
Office of Attorney General
1300 I Street
Sacramento, CA 95814

Norman Louis Rave
U.S. Department of Justice
P.O. Box 23986
Washington, DC 20026

Yueh-ru Chu
Office of the Attorney General, NY
120 Broadway, 26th Floor
New York, NY 10127

Matthew G. Kenna
Western Environmental Law Center
Rocky Mountains Office
679 East 2nd Avenue, Suite 11B
Durango, CO 81301

Valerie S. Csizmadia
Delaware Attorney General's Office
102 West Water Street, 3rd Floor
Dover, DE 19904

*/s/ Benjamin Longstreth*

<u>California v. EPA</u>, Case No. 07-cv-02024-RCL

UNOPPOSED MOTION TO INTERVENE AS A PLAINTIFF
AND MEMORANDUM IN SUPPORT

# EXHIBIT 1

May 22, 2007

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**ALSO BY FACSIMILE TRANSMISSION**

The Honorable Stephen L. Johnson
Administrator
United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Mail Code: 1101A
Washington, D.C. 20460
Telefax: (202) 501-1450

Re: Notice of Intent to Sue for EPA's Failure to Take Final Action on California's December
    21, 2005 Request Under Section 209(b) of the Clean Air Act to Waive Application of
    Preemption for California's Regulations to Control Greenhouse Gas Emissions from Motor
    Vehicles

Dear Administrator Johnson:

Pursuant to section 304 of the Clean Air Act, 42 U.S.C. § 7604, and 40 C.F.R. part 54,
Environmental Defense and the Natural Resources Defense Council respectfully provide notice
of intent to sue to address the U.S. Environmental Protection Agency's unreasonable delay and
failure to perform its nondiscretionary duties in taking final action on California's December 21,
2005 request to waive application of preemption for California's regulations to control
greenhouse gas emissions from motor vehicles.

Seventeen months ago California submitted its request for the Administrator of the U.S.
Environmental Protection Agency ("the Administrator" or "EPA") to grant the waiver pursuant
to section 209(b) of the Clean Air Act. At that time, the State pointedly requested "that U.S.
EPA act expeditiously to review and approve this request." Letter from Catherine Witherspoon,
Executive Officer, California Air Resources Board, to Stephen L. Johnson, Administrator, U.S.
Environmental Protection Agency (Dec. 21, 2005). Since December 21, 2005, California has
repeatedly urged EPA action, but final action has not been forthcoming.

We are hereby providing advance notice before commencing a civil action in United States
District Court pursuant to section 304 of the Clean Air Act to compel EPA's unreasonably
delayed and unlawfully withheld final action on California's waiver request. Section 209(b) of
the Clean Air Act plainly instructs EPA to act on California's waiver request:

> "The Administrator shall, after notice and opportunity for public hearing, waive
> application of this section to any State which has adopted standards...for the control of

1

emissions from new motor vehicles or new motor vehicle engines prior to March 30, 1966, if the State determines that the State standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards."

See 42 U.S.C. § 7543(b).

Our organizations also reserve all legal rights to seek relief under the laws of the United States to compel Agency action including the All Writs Act, 28 U.S.C. § 1651, the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* & §706(1), or any other provision of law.   See also CAA § 304(e), 42 U.S.C. § 7604(e).

Pursuant to 40 C.F.R. § 54.3, the full names and addresses of the organizations giving notice are:

| **Environmental Defense** | **Natural Resources Defense Council** |
|---|---|
| 257 Park Avenue South | 40 West 20th Street |
| New York, NY 10010 | New York, NY 10011 |
| | |
| California Offices: | California Offices: |
| 3250 Wilshire Blvd. Suite 1400 | 111 Sutter St., 20th floor, |
| Los Angeles, CA 90010 | San Francisco, CA 94104 |
| | |
| 5655 College Avenue | |
| Suite 304 | 1314 Second Street, |
| Oakland, CA 94618 | Santa Monica, CA 90401 |
| | |
| 1107 9th Street,     Suite 540 | |
| Sacramento, CA 95814 | |

The contact information for our legal counsel is as follows:

| **Environmental Defense** | **Natural Resources Defense Council** |
|---|---|
| Vickie Patton | David Doniger |
| Environmental Defense | NRDC |
| 2334 North Broadway | 1200 New York Ave., NW, Suite 400, |
| Boulder, CO  80304 | Washington, D.C. 20005 |
| (303) 447-7215 | (202) 289-6868 |

We are willing to discuss effective measures to correct EPA's failure to comply with the Clean Air Act and to discuss any information which bears on this notice.   If you wish to pursue such discussions in the absence of litigation, we request that you initiate them immediately.  We plan to promptly take legal action to compel compliance with the law and to seek all appropriate relief, including injunctive relief.

Please contact us if you have any questions.

Sincerely,

Vickie Patton
Environmental Defense
2334 North Broadway
Boulder, CO  80304
(303) 447-7215

David Doniger
NRDC
1200 New York Ave., NW, Suite 400,
Washington, D.C. 20005
(202) 289-6868


Cc:    William Wehrum, US EPA
       Margo Oge, US EPA
       Roger Martella, US EPA
       Linda Adams, California EPA



June 15, 2007

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
The Honorable Stephen L. Johnson
Administrator
United States Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, N.W.
Mail Code:  1101A
Washington, D.C. 20460

Dear Administrator Johnson:

Pursuant to section 304 of the Clean Air Act, 42 U.S.C. § 7604, and 40 C.F.R. part 54, Sierra Club hereby provides notice of intent to sue to address the U.S. Environmental Protection Agency's unreasonable delay and failure to perform its nondiscretionary duties in taking final action on California's December 21, 2005 request to waive application of preemption for California's regulations to control greenhouse gas emissions from new motor vehicles.

Eighteen months ago California submitted its request that you grant the waiver pursuant to section 209(b) of the Clean Air Act.   At that time, the State pointedly requested "that U.S. EPA act expeditiously to review and approve this request."  Letter from Catherine Witherspoon, Executive Officer, California Air Resources Board, to Stephen L. Johnson, Administrator, U.S. Environmental Protection Agency (Dec. 21, 2005).   Since December 21, 2005, California has repeatedly urged EPA action, but final action has not been forthcoming.

We are hereby providing advance notice before commencing a civil action in United States District Court pursuant to section 304 of the Clean Air Act to compel EPA's unreasonably delayed and unlawfully withheld final action on California's waiver request.   Section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b), plainly instructs EPA to act on California's waiver request:

"The Administrator shall, after notice and opportunity for public hearing, waive application of this section to any State which has adopted standards…for the control of emissions from new motor vehicles or new motor vehicle engines prior to March 30, 1966, if the State determines that the State standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards."

Sierra Club also reserves all legal rights to seek relief under the laws of the United States to compel Agency action including the All Writs Act, 28 U.S.C. § 1651, the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* & §706(1), or any other provision of law.   See also CAA § 304(e), 42 U.S.C. § 7604(e).

Pursuant to 40 C.F.R. § 54.3, the full name and address of the organization giving notice is:

Sierra Club
85 Second Street, 2nd Floor
San Francisco, CA 94105

The contact information for our legal counsel is as follows:

David Bookbinder
Sierra Club
408 C. Street, NE
Washington, DC  20002
202-548-4598

We are willing to discuss effective measures to correct EPA's failure to comply with the Clean Air Act and to discuss any information which bears on this notice.   If you wish to pursue such discussions in the absence of litigation, we request that you initiate them immediately.  We plan to promptly take legal action to compel compliance with the law and to seek all appropriate relief, including injunctive relief.

Please contact us if you have any questions.

Sincerely,


David Bookbinder


Cc:    Bill Wehrum, US EPA
       Margo Oge, US EPA

<u>California v. EPA</u>, Case No. 07-cv-02024-RCL

UNOPPOSED MOTION TO INTERVENE AS A PLAINTIFF
AND MEMORANDUM IN SUPPORT

# EXHIBIT 2



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

DEC 1 9 2007

OFFICE OF THE
ADMINISTRATOR

The Honorable Arnold Schwarzenegger
Governor of the State of California
State Capitol
Sacramento, California 95814

Dear Governor Schwarzenegger,

    As I have committed to you in previous correspondence, I am writing to inform you of my decision with respect to the request for a waiver of Federal preemption for motor vehicle greenhouse gas emission standards submitted by the California Air Resources Board (CARB).

    As you know, EPA undertook an extensive public notice and comment process with regard to the waiver request. The Agency held two public hearings: one on May 22, 2007 in Washington, D.C. and one in Sacramento, California on May 30, 2007. We heard from over 80 individuals at these hearings and received thousands of written comments during the ensuing public comment process from parties representing a broad set of interests, including state and local governments, public health and environmental organizations, academia, industry and citizens. The Agency also received and considered a substantial amount of technical and scientific material submitted after the close of the comment deadline on June 15, 2007.

    EPA has considered and granted previous waivers to California for standards covering pollutants that predominantly affect local and regional air quality. In contrast, the current waiver request for greenhouse gases is far different; it presents numerous issues that are distinguishable from all prior waiver requests. Unlike other air pollutants covered by previous waivers, greenhouse gases are fundamentally global in nature. Greenhouse gases contribute to the problem of global climate change, a problem that poses challenges for the entire nation and indeed the world. Unlike pollutants covered by the other waivers, greenhouse gas emissions harm the environment in California and elsewhere regardless of where the emissions occur. In other words, this challenge is not exclusive or unique to California and differs in a basic way from the previous local and regional air pollution problems addressed in prior waivers.

    Also, I firmly believe that, just as the problem extends far beyond the borders of California, so too must be the solution. Congress has recognized the need for very aggressive yet technically feasible national standards to address greenhouse gases and energy security by passing the Energy Independence and Security Act. Just today the President signed these national standards into law, providing environmental benefits and economic certainty for Californians and all Americans. I strongly support this national approach to this national challenge which establishes an aggressive standard of 35 miles per gallon for all 50 states, as opposed to 33.8 miles per gallon in California and a patchwork of other states. This legislation

will deliver energy security benefits and bring a much needed national approach to addressing global climate change, improving the environment for all Americans.

In light of the global nature of the problem of climate change, I have found that California does not have a "need to meet compelling and extraordinary conditions." Accordingly, I have decided that EPA will be denying the waiver and have instructed my staff to draft appropriate documents setting forth the rationale for this denial in further detail and to have them ready for my signature as soon as possible.

Please be assured that my decision in this matter is made specific to the facts and circumstances of this request, which, as explained above, are distinctly different from prior waiver requests. I do not intend for this decision to affect any future requests by the State of California for waiver determinations for non-greenhouse gas emissions from vehicles.

Finally, I want to acknowledge the leadership that you and your state have shown to increase vehicle fuel economy, to address energy security, and to reduce greenhouse gases. I agree that increased vehicle standards can be a win-win for the environment and the economy. I have no doubt that the national standards Congress adopted and the President signed into law this week were enacted, in part, because of your efforts.

Sincerely,

Stephen L. Johnson

cc:    Governor Janet Napolitano
       Governor Bill Ritter
       Governor Charlie Crist
       Governor Deval Patrick
       Governor Martin O' Malley
       Governor John Baldacci
       Governor Jon S. Corzine
       Governor Eliot Spitzer
       Governor Ted Kulongoski
       Governor Don Carcieri
       Governor Jon Huntsman, Jr.
       Governor Jim Douglas
       Governor Christine Gregoire
       Governor M. Jodi Rell
       Governor Edward Rendell
       Governor Bill Richardson
       Senator Barbara Boxer
       Senator Dianne Feinstein
       Representative Xavier Becerra
       Representative Howard Berman
       Representative Brian Bilbray
       Representative Mary Bono
       Representative Ken Calvert
       Representative John Campbell
       Representative Lois Capps
       Representative Dennis Cardoza
       Representative Jim Costa
       Representative Susan Davis
       Representative John Doolittle
       Representative David Dreier
       Representative Anna Eshoo
       Representative Sam Farr
       Representative Bob Filner
       Representative Elton Gallegly
       Representative Jane Harman
       Representative Wally Herger
       Representative Mike Honda
       Representative Duncan Hunter
       Representative Darrell Issa
       Representative Tom Lantos
       Representative Barbara Lee
       Representative Jerry Lewis
       Representative Zoe Lofgren
       Representative Dan Lungren
       Representative Doris Matsui
       Representative Kevin McCarthy

Representative Howard "Buck" McKeon
Mary D. Nichols, California Air Resources Board

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 07-cv-02024-RCL |
| COMMONWEALTH OF MASSACHUSETTS, et al. | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al. | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| STATE OF DELAWARE | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| and | ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, ENVIRONMENTAL DEFENSE, and CONSERVATION LAW FOUNDATION | ) ) ) ) | |
| Proposed Intervenor Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the Environmental Protection Agency, | ) ) ) ) ) | |
| Defendants. | ) ) | |

AFFIDAVIT OF TIMOTHY HARWOOD IN SUPPORT OF
MOTION TO INTERVENE

1

## DECLARATION OF TIMOTHY HARWOOD

I, Timothy Harwood, hereby declare and state:

1.    I am the Vice President for Development for the Conservation Law Foundation ("CLF"), and have held this position since May, 2006. My responsibilities include all aspects of CLF's development activities, such as major gifts, special events, annual fund, foundation giving, donor stewardship, planned giving and membership development.  In my role, I supervise the preparation of materials that CLF distributes to its members concerning CLF's advocacy activities. I am very familiar with CLF's mission, and am responsible for communications with members that concern CLF's various advocacy efforts to achieve that mission.

2.    CLF is a membership organization incorporated under the laws of the Commonwealth of Massachusetts, with offices in Massachusetts, Maine, New Hampshire, Rhode Island, and Vermont. CLF is recognized as a non-profit corporation under § 501(c)(3) of the United States Internal Revenue Code.

3.    CLF works to solve the most significant environmental challenges facing New England. CLF's advocates use law, economics and science to create innovate strategies to conserve natural resources, protect public health and promote vital communities in our region. CLF's mission includes reducing greenhouse gas emissions that cause global warming, and preventing and mitigating harm caused by global warming to protect our members' health, welfare, and property, and to ensure their continuing ability to enjoy natural resources threatened by global warming.

2

4.    Through its Clean Energy and Climate Change Program, CLF pursues an array of state and federal policies to reduce greenhouse gas emissions, including U.S. motor vehicle emissions, which represent a large percentage of total U.S. greenhouse gas emissions.

5.    When an individual becomes a member of CLF, his or her current residential address is recorded in CLF's membership database. When a member renews his or her membership, or otherwise makes a contribution to CLF, the database entry reflecting the member's residential address is verified or updated.

6.    CLF currently has 3,761 members. This number includes a 1.5 multiplier to take into account other household numbers. CLF members live in 39 states. CLF has 3,001 members living in Massachusetts, Maine, Vermont, and Rhode Island, each of which has adopted California's greenhouse gas emissions standards.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 17, 2008.

Timothy Harwood

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD | ) ) ) ) | |
| Plaintiffs, | ) ) | 07-cv-02024-RCL |
| COMMONWEALTH OF MASSACHUSETTS, et al. | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al. | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| STATE OF DELAWARE | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| and | ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, ENVIRONMENTAL DEFENSE, and CONSERVATION LAW FOUNDATION | ) ) ) ) | |
| Proposed Intervenor Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the Environmental Protection Agency, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**AFFIDAVIT OF ROBERT H. GARDINER IN SUPPORT OF
<u>MOTION TO INTERVENE</u>**

1

I, Robert H. Gardiner, hereby state and declare:

1.      This affidavit is based on my personal knowledge. I am over the age of eighteen years and suffer from no legal incapacity. I submit this affidavit in support of Conservation Law Foundation's ("CLF") Motion to Intervene in the above-referenced matter.

2.      I have been a member of CLF, since at least 2000, and have served both as CLF Vice President Director and Director for the CLF Maine Advocacy Center and as a member of the CLF Maine Board of Advisors.

3.      I am very familiar with the environmental issues that face Maine and, more broadly, New England, including the current anticipated local and regional impacts of global warming.

4.      I am a resident of Maine and live at 110 Foreside Road, Cumberland Foreside.

5.      I own a camp at 4 Bayberry Lane, Georgetown, Maine, and jointly own an adjacent property with other family members.  Both properties front on the Atlantic Ocean.  These properties have been in my family for two generations.

6.      After several recent storms I have observed that storm debris is being thrown by wave action higher upland than during prior years, and that erosion is gradually but significantly starting to penetrate vegetative areas previously untouched by storm activity. I am concerned that the increasing erosion is edging closer and will soon begin to undermine a family-owned cabin which is closer to the water's edge than my own camp.

7.      I am also a member of the Indian Point Association in Georgetown, Maine, which holds several much beloved sand beaches and dune properties in common ownership for

member residents. I have observed unprecedented and increasing losses of sand from the beaches and dunes following recent storm events. This property is at an extreme risk due to sea level rise and erosion because the beach and dune systems are not large enough to withstand the erosive forces that would accompany further increases in sea levels and more extreme storm events.

8.      Aside from the threat of physical loss of property, the Indian Point Association beach and dunes, and nearby salt marshes, are well used recreational resources and provide significant habitat for native wildlife. My family and I often visit the beach and dunes to recreate and to enjoy the Atlantic beach and marsh ecosystems. We plan to continue this activity as much as possible in the future.

9.      I am aware that, among other impacts, global warming has caused a rise in sea levels, and that sea level rise is expected to continue to rise as a result of global warming. I am aware that rising sea levels have resulted, and will continue to result, in loss of coastal property, such as my coastal property in Maine, due to erosion and inundation and in damage to the region's natural ecosystems and the wildlife species that depend upon this habitat.

10.     I am also aware that global warming has been linked to increased storm frequency and intensity, which also presents a special threat to coastal property. Increased storm intensity and storm surges, particularly when coupled with sea level rise, has resulted, and will continue to result, in flooding, inundation and erosion of coastal property, such as my coastal property in Maine, and in damage to the region's natural ecosystems and the wildlife species that depend upon this habitat.

11.     In addition to direct loss of my properties, degradation of the region's beach and marsh ecosystems will harm our use and enjoyment of these properties, and will adversely affect my social well-being.

12.     As a former staff and board member of CLF, I am aware that Maine, Rhode Island, Massachusetts, and Vermont have adopted regulations first promulgated in California that will, when implemented, reduce greenhouse gas emissions from new motor vehicles. I am aware that California, and the states that have adopted California's regulations, including Maine, have done so in response to the threat of global warming and in recognition that we must reduce the large volumes of greenhouse gases emitted each year in the United States by cars and trucks. I am aware that, before the regulations may be implemented in California, and in the states that have adopted the California regulations, California must apply for a preemption waiver, and EPA must grant that waiver.

13.     I am informed and believe that, although California applied for a preemption waiver in December 2005, it was not until December 2007 that EPA denied California's waiver request. I am informed and believe that EPA disputes that its December 2007 denial is final. I am aware that the longer it takes to resolve the question whether California, and the other states that have adopted the California regulations, can implement those regulations, the longer it will be before citizens of those states can enjoy the benefits of the regulations.

14.     I am aware of the need to develop vehicles that emit fewer greenhouse gasses and I recently attempted to replace one of my family vehicles with a cleaner, lower-emitting vehicle. I am six feet six inches tall with a very long torso, and therefore cannot not

4

physically sit inside most vehicles without ducking my head, including, as I discovered during test drives, the Toyota Prius and Ford Escape hybrid. As a result of the limited number of low-emitting vehicles available on the market, I currently cannot purchase a vehicle with the reduced greenhouse gas emissions that I desire and which are lower than my current vehicle. I am aware that the California regulations would require industry to develop a far broader selection of cleaner, lower-emitting vehicles, including vehicles that would fit my body type. I desire that the standards be formally approved and enforced as soon as possible so that there will be a wider range of low-emitting vehicle choices available for me to purchase.

15.    I am also an avid hunter and four-season outdoorsman. I particularly enjoy hunting for ruffed grouse, which thrives in Maine's forest landscape. Climate change due to global warming threatens this ecosystem, and consequently will reduce the population, habitat, and range of ruffed grouse. I plan to continue hunting ruffed grouse and believe that the climate impacts from global warming will harm my ability to enjoy this activity.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on January 16, 2008.

_____

Robert H. Gardiner

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF CALIFORNIA, by and through )
ARNOLD SCHWARZENEGGER, Governor of )
the State of California, and the CALIFORNIA )
AIR RESOURCES BOARD, )
                                                        )
                 Plaintiffs, )         07-cv-02024-RCL
                                                        )

COMMONWEALTH OF )
MASSACHUSETTS, et al., )
                                                        )
               Intervenor Plaintiffs, )

WASHINGTON ENVIRONMENTAL )
COUNCIL, et al., )
                                                          )
               Intervenor Plaintiffs, )

STATE OF DELAWARE, )
                                                         )
               Intervenor Plaintiff, )

and )

NATURAL RESOURCES DEFENSE COUNCIL, )
SIERRA CLUB, ENVIRONMENTAL DEFENSE, )
and CONSERVATION LAW FOUNDATION, )
                                                        )
               Proposed Intervenor )
               Plaintiffs, )

       v. )

UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY, and STEPHEN L. )
JOHNSON, Administrator of the Environmental )
Protection Agency, )
                                                         )
               Defendants. )
_____)

**DECLARATION OF BOB EPSTEIN**

Pursuant to 28 U.S.C. § 1746 and under penalty of perjury, BOB EPSTEIN states as follows:

1.      I am currently a member of Natural Resources Defense Council ("NRDC") and have been for over 20 years.  I have also served on NRDC's Board of Directors since 1999.  Because of my position, I am very familiar with NRDC's mission, organizational structure, and activities.

2.      I support NRDC for its long-time commitment to the protection of our environment.  NRDC is actively involved in efforts to stop global warming and lessen its impacts, an issue I believe to require immediate attention and mitigation.  I also support NRDC through my co-founding of Environmental Entrepreneurs (E2), a group of professionals and business people who believe in protecting the environment while building economic prosperity.

3.      I worked actively through E2 to support passage of California's vehicle greenhouse gas standards.  I testified before the California legislature on the vehicle greenhouse gas regulations and spoke at the rulemaking before the California Air Resources Board.  In addition, I spoke at an EPA hearing on the waiver request in May 2007.  I also observed NRDC staff  participate in all these proceedings.

4.      I have owned a home in the Sierra Nevada Mountain Range in Northern California, near Kirkwood Mountain Ski Resort, since 2001.  The ski season in northern California lasts from approximately mid-November through late April.  During this season, I spend at least one weekend per month at my house while enjoying skiing at Kirkwood.  Often, I invite my friends to stay and ski with me.

5.      To produce quality snow for skiing, it needs to be well below 32 degrees while it is snowing.  If not, it produces a wet covering we call "Sierra Cement."  Wet conditions make skiing less enjoyable and more dangerous.

6.      One of the impacts of global warming on the Pacific Coast, caused in significant part by automobile emissions, is rising temperatures and reduction of snow pack.  Because the temperature in the Sierra Nevada Mountain Range is just low enough to maintain snow coverage, even slight rises in temperature can significantly impact the length of the ski season at Kirkwood, as well as the quality of snow and thus the quality of skiing that takes place during the season.

7.      The California Water Board tracks the volume of snow pack and runoff from the mountains throughout California.  The present and future length of the ski season at Kirkwood can be determined and predicted, respectively, from this data.  Climate models confirm that spring snow pack will decline in the Sierra Nevada mountains due to climate change.

8.      Both the economic and personal values of my house are directly tied to the length and quality of the ski season at Kirkwood.  The rental rates during the summer are less than half of the rental rates during the ski season.

9.      The property value of my home is based, in large part, on its location in the mountains and proximity to skiing in the Sierra Nevada Mountain range throughout the season.  As the length of the ski season and the quality of the snow during the season decrease due to rising temperatures, the monetary value of my property also decreases.

10.      The personal value of my home is also based in significant part on my ability to ski and enjoy the mountains during the winter.  As the season gets shorter, I am

able to spend fewer weekends in the mountains skiing and recreating. As the quality of the snow declines, I am less inclined to make the trip to the mountains.

11.    The regulation of carbon dioxide emissions from automobiles will contribute to the stabilization of rising temperatures. This stabilization will ensure both that the economic value of my home is not considerably reduced and that I am able to continue using my home for the reason I purchased it, to enjoy skiing in the Sierra Nevada Mountain Range.

12.    Further, inadequate emission standards limit the number of vehicles that are both desirable to me and suitable for use near my home. I need a four-wheel drive vehicle to deal with heavy snows in the Sierras and cannot find the vehicle I want— something that features four-wheel drive in addition to low greenhouse gas emission levels. The regulation of carbon dioxide emissions from automobiles will help ameliorate this situation by increasing the number of low-emission vehicles in the market.

I declare under the penalty of perjury that the foregoing is true and correct. Executed in Berkeley, California on January 15, 2008.

_Bob Epstein_
Bob Epstein

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD, | ) ) ) ) | |
| Plaintiffs, | ) ) | 07-cv-02024-RCL |
| COMMONWEALTH OF MASSACHUSETTS, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| STATE OF DELAWARE, | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| and | ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, ENVIRONMENTAL DEFENSE, and CONSERVATION LAW FOUNDATION, | ) ) ) ) | |
| Proposed Intervenor Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the Environmental Protection Agency, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF JOHN STITH**

I, John Stith, declare as follows:

1.      I am a Data and Financial Analyst at Environmental Defense.  I have had this position for more than two years.

2.      My duties include maintaining an accurate list of members.  My colleagues and I provide information to members, acknowledge gifts and volunteer actions and manage the organization's member databases.

3.      Environmental Defense is a membership organization incorporated under the laws of the State of New York.  It is recognized as a not-for-profit corporation under section 501(c)(3) of the United States Internal Revenue Code.

4.      The purpose of Environmental Defense is to use science, economics and law to protect and restore the quality of our air, water and other natural resources.  Our logo is "Finding the Ways that Work".  Environmental Defense employs more than 150 scientists, economists, engineers, graduates of business schools and lawyers to help solve challenging environmental problems in a scientifically sound and cost-effective way.

5.      Through its Climate and Air Program, Environmental Defense is pursuing initiatives at the state, national and international levels designed to reduce emissions of greenhouse gases responsible for global warming from all major sources, including motor vehicles.

6.      When an individual becomes a member of Environmental Defense, his or her current residential address is recorded in our membership database.  The database entry reflecting the member's residential address is verified or updated as needed.

7.      Environmental Defense currently has 343,757 members in the United States.  61,174 of these members reside in the State of California.  Environmental

Defense has members in every state that has adopted the California motor vehicle greenhouse gas emission standards program.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Washington, D. C. on January _16_, 2008.

John Stith

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD, | ) ) ) ) | |
| Plaintiffs, | ) ) | 07-cv-02024-RCL |
| COMMONWEALTH OF MASSACHUSETTS, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| STATE OF DELAWARE, | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| and | ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, ENVIRONMENTAL DEFENSE, and CONSERVATION LAW FOUNDATION, | ) ) ) ) | |
| Proposed Intervenor Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the Environmental Protection Agency, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF GINA TRUJILLO**

I, Gina Trujillo, declare as follows:

      1.      I am the Director of Member Services and Member Development at the Natural Resources Defense Council, Inc. ("NRDC"). I have been at NRDC for more than sixteen years.

      2.      My duties include supervising the preparation of materials that NRDC distributes to members and prospective members. Those materials describe NRDC and identify its mission.

      3.      NRDC is a membership organization incorporated under the laws of the State of New York. It is recognized as a not-for-profit corporation under section 501(c)(3) of the United States Internal Revenue Code.

      4.      NRDC's mission statement declares that "The Natural Resources Defense Council's purpose is to safeguard the Earth: its people, its plants and animals, and the natural systems on which all life depends." The mission statement goes on to declare that NRDC works "to restore the integrity of the elements that sustain life – air, land, and water – and to defend endangered natural places." NRDC's mission includes the prevention and mitigation of global warming in order to protect the health, well-being, property, and livelihood of NRDC's members from harm due to global warming and in order to maintain their use and enjoyment of natural resources threatened by global warming.

      5.      Through its Climate Center, NRDC pursues federal and state policies to curb the pollution that is causing global warming, including emissions of carbon dioxide

and other greenhouse gases from U.S. motor vehicles, which are the second largest source of global warming pollution.

6.     When an individual becomes a member of NRDC, his or her current residential address is recorded in NRDC's membership database. When a member renews his or her membership or otherwise makes a contribution to NRDC, the database entry reflecting the member's residential address is verified or updated.

7.     NRDC currently has 421,550 members. There are NRDC members residing in each of the fifty United States and in the District of Columbia and Puerto Rico.

I declare under penalty of perjury that the foregoing is true and correct. Executed in New York, New York on January 14, 2008.

_Gina Trujillo_
Gina Trujillo

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD, ) ) ) ) | |
| Plaintiffs, ) | 07-cv-02024-RCL |
| ) | |
| COMMONWEALTH OF MASSACHUSETTS, et al., ) ) | |
| Intervenor Plaintiffs, ) | |
| ) | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al., ) ) | |
| Intervenor Plaintiffs, ) | |
| ) | |
| STATE OF DELAWARE, ) | |
| Intervenor Plaintiff, ) | |
| and ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, ENVIRONMENTAL DEFENSE, and CONSERVATION LAW FOUNDATION, ) ) ) | |
| Proposed Intervenor Plaintiffs, ) ) | |
| v. ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the Environmental Protection Agency, ) ) ) ) | |
| Defendants. ) | |

**DECLARATION OF ARTHUR P. COOLEY**

I, Arthur P. Cooley, under penalties of perjury, declare as follows:

1. I submit this declaration on behalf of Environmental Defense, one of the proposed Intervenor Plaintiffs in this case, in support of its standing. I am a member of Environmental Defense and have been a board member since its founding by myself and several other scientists on Long Island, New York, in 1967. I reside at 5970 Camino de la Costa, La Jolla, CA having moved here from Long Island, New York, a few years ago. I have a graduate degree in biology from Cornell University, am retired as a high school biology teacher and serve as a senior naturalist for Lindblad Expeditions.

2. The California Air Resources Board (CARB) adopted a program in 2005 that sets increasingly stringent motor vehicle greenhouse gas (GHG) emission standards for passenger cars and trucks for model years 2009-16. Several other states that make up some 40% of the US auto market have adopted this California program as the Clean Air Act allows. This program is significantly more stringent than any federal program designed to improve fuel economy or reduce vehicular carbon dioxide/GHG emissions.

3. There is broad scientist consensus that human-induced global warming is happening at an accelerating pace. Based on scientist reports and articles that I have read, I believe that, if GHG emissions in California and elsewhere continue to grow as anticipated without concerted action, the impacts of global warming on California will be dramatic in a way that will be increasingly injurious to me and other California members of Environmental Defense.

4. California's water system that serves its huge urban areas, including the one where I live, and its critically important agricultural economy, is highly dependent on

snow pack in the Sierra Nevadas as well as in the mountainous watersheds of the Colorado River. Global warming will inevitably decrease snow pack. It is also expected to alter precipitation patterns. As the current water system becomes less sustainable, we can expect pressure to build water projects design to capture water from northern California's remaining wild rivers. Environmental Defense has devoted huge resources since the early 1970's to protect these rivers. Given my personal and professional interest in biodiversity, any further degradation of these rivers would injury my as well as Environmental Defense's interest in protecting their ecological integrity.

5. The San Diego Natural History Museum is sponsoring a series of lectures on the impacts of global warming on California and other resources. The next lecture next week on January 23 that I plan to attend is on this very subject of the impact of global warming on California's biodiversity.

6. Global warming will have a range of other deleterious impacts on California – more wildfires, intensive and extreme weather events, heightened urban ozone and accelerating coastal erosion – all of which impact me personally and professionally.

7. As a society, we have to take initiatives to reduce GHG emissions incrementally in modest steps. The California motor vehicle GHG emission standards program is a major initiative since US passenger motor vehicle GHG emissions make up about 20% of total US GHG emissions, and this program will affect the GHG emissions of 40 % (or more, as more states adopt the program) of US new passenger autos.

8. Recent evidence also suggests that global warming may be reaching what some experts refer to as a tipping point where its impacts can reinforce each other producing more severe impacts than linear models predict. Many recent scientific papers and

newspaper articles have described evidence that the Greenland icesheet is deteriorating far faster than icesheet models have predicted. Some evidence points to similar phenomena with respect to the west Antarctic icesheet. These phenomena could not only accelerate rates of sea level rise but also warming imperiling even more water resources and intensifying impacts in California that would injury my particular interest as a member of Environmental Defense in protecting the State's biodiversity.

9. Two years ago California requested a waiver from the US EPA for this program that is designed to reduce GHG emissions from motor vehicles and thus retard global warming and its impacts. On December 19, 2007 the EPA Administrator sent a letter to California Governor Arnold Schwarzenegger denying the waiver. Environmental Defense along with other environmental organizations has petitioned the 9th Circuit Court of Appeals to overturn this unfortunate decision, but in this case I have been told that the Department of Justice is taking the position that the December 19 letter is not a final agency action. This position simply assures further delay in the rending of a final waiver decision and thus further delay in federal appellate court review.

10. While a delay of weeks or months in the implementation of the California program will have only very modest implications for global warming and GHG emissions, any delay at this time is unconscionable. I therefore strongly support the intervention of Environmental Defense in this case.

_____

**Arthur P. Cooley**

Dated: January 15, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD, | ) ) ) ) | |
| Plaintiffs, | ) ) | 07-cv-02024-RCL |
| COMMONWEALTH OF MASSACHUSETTS, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| STATE OF DELAWARE, | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| and | ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, ENVIRONMENTAL DEFENSE, and CONSERVATION LAW FOUNDATION, | ) ) ) ) | |
| Proposed Intervenor Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the Environmental Protection Agency, | ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF TIMOTHY GOMES**

I, Timothy Gomes, under penalties of perjury, declare as follows:

1. I submit this affidavit on behalf of Environmental Defense, one of the petitioners in this case, in support of its standing. I have been a member of Environmental Defense, a highly respected national environmental organization founded by PhD scientists on Long Island, New York, in 1967, for seven years. I reside at 225 Edwards Avenue in Sayville, Suffolk County, Long Island, New York. I am president of Topaz Lighting, a commercial supplier of lighting appliances, in Holtzville, Long Island.

2. I am a member of and support Environmental Defense in part because of its active state, national and international efforts to reduce carbon dioxide and other greenhouse gas (GHG) emissions from different kinds of sources.

3. The California Air Resources Board (CARB) adopted a regulatory program in 2005 that sets progressively lower carbon dioxide (CO2) and other GHG emission standards for passenger cars and trucks starting in model year (MY) 2009 and continuing through MY 2016. At least 14 states, including New York where I reside, have adopted that program. These states make up some 40% of the new passenger motor vehicle market in the US. In my view, reducing GHG emissions from new motor vehicles in these states in accordance with the California program would help to retard GHG emissions from those states and their impact on global warming.

4. One of the consequences of continued increases in emissions of GHGs from motor vehicles in the US, as well as from other sources in the US and the world, is rising sea level due to thermal expansion of ocean waters and melting of glaciers.

5.  Based on various reports and articles that I have read, my understanding is that sea level around Long Island, as well as other parts of the metropolitan region, is likely to rise in the range of 1 to 2 feet by 2050, with 1990 as a base year.  The rise by 2020, with 1990 as a base year, if current trends in emissions continue, could be 5 to 8 inches.  This could mean a local average loss of 50 to 80 feet of beachfront based on an average of 120 feet of erosion for each one foot rise in sea level.  In addition, articles in the NY Times about accelerating melting of the Greenland icesheet suggest an even more dramatic rise in sea level rise on a shorter time scale.

6.  My property in Sayville, Long Island, lies along the north shore of Great South Bay, the largest embayment on the south shore of Long Island.  To the south, this Bay is shaped by Fire Island, the longest expanse of barrier island along the south shore. Fire Island is about three miles distant.  The nearest inlet is Fire Island Inlet.

7.  My property, like much of the land along the south shore of Long Island, is flat.  The kind of increase in sea level by 2020, let alone by 2050, as described above, can affect my property and similarly situated tracts of land along the Long Island south shore in a number of ways.  A rise of 5 inches by 2020 or a rise of 1 foot or more as projected conservatively to occur by 2050 without major actions to limit GHG emissions, such as timely implementation of the California motor vehicle GHG emissions standards program in California and NY and other states that have adopted the program, would inundate and create erosion of a portion of my property right along the Bay.  Further, the impact of major storm events due to this increase in sea elevation and the decreased effectiveness of Fire Island as a storm buffer would expose my land and home to incrementally greater

damage than would be the case today as average elevations of sea level in Great South Bay and the ocean off of Fire Island increase.

8. I understand that, in this case in which Environmental Defense is seeking to intervene, California is asking this Court to find that EPA has unreasonably delayed making a decision on California's application for a waiver that is a pre-condition for implementation of the program. I further understand that the Department of Justice claims that the letter dated December 19, 2007 from EPA Administrator Stephen Johnson to Governor Arnold Schwarzenegger of California is not a final waiver decision. In my view, as a member of Environmental Defense, any further delay in EPA making a final decision delays eventual implementation of this vital GHG-reduction program that could over time affect GHG emission levels from some 40% of US motor vehicles and contribute to moderation in projected rates of sea level rise. Any such delay, therefore, directly and adversely affects me.

9. Further, under the California program as adopted in New York, auto makers would have to offer consumers a broader array of motor vehicle models with lower GHG emissions during the 2009-16 period than would be the case without the program. Since my family and I would want any vehicle that we purchase in the future to have the lowest possible GHG emissions, any delay in implementation of the program would restrict the model choices that I would expect to have.

10. I therefore support Environmental Defense's participation in this case.

Timothy Gomes

Dated: January 15, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 07-cv-02024-RCL |
| COMMONWEALTH OF MASSACHUSETTS, et al. | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al. | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| STATE OF DELAWARE | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| and | ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, ENVIRONMENTAL DEFENSE, and CONSERVATION LAW FOUNDATION | ) ) ) ) | |
| Proposed Intervenor Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the Environmental Protection Agency, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**AFFIDAVIT OF PEGGY B. SHARPE IN SUPPORT OF
<u>MOTION TO INTERVENE</u>**

I, Peggy B. Sharpe, hereby declare and state:

1.    This affidavit is based on my personal knowledge.  I am over the age of eighteen years and suffer from no legal incapacity.  I submit this affidavit in support of Conservation Law Foundation's ("CLF") Motion to Intervene in the above-referenced matter.

2.    I am a resident of North Kingstown, Rhode Island and own property in both Rhode Island and Maine.

3.    I have been a member of CLF since at least 1983, and am a founding member of CLF's Rhode Island Advocacy Center Advisory Board of Directors.

4.    I was the 2004, recipient of the Environmental Protection Agency's ("EPA") Environmental Merit Award for Lifetime Achievement, and am a former Chairman of the Rhode Island Resource Recovery Corporation's Citizen Advisory Board.  I was the first state board member of The Nature Conservancy's Rhode Island office, and am actively involved in the Providence Neighborhood Planting Program.  I am very familiar with the environmental issues that face Rhode Island and, more broadly, New England, including the current and anticipated regional impacts of global warming.

5.    In or around 1987, my husband and I purchased property located on the Maine coast in Sorrento, Maine.

6.    Since that time, I have enjoyed spending time at our Sorrento, Maine residence with family and friends on the shore and boating to nearby Stave Island in Gouldsboro, Maine (where my husband and I own property).  I am an avid hiker, and deeply appreciate the natural beauty of this unique coastal ecosystem.

7.    The current estimated value of our coastal property in Sorrento, Maine is in excess of one million dollars.

8.    I have noticed gradual yet significant erosion of the shoreline in recent years, and just last summer, a promontory overhanging a cave on the seashore completely collapsed. The sudden collapse of this large land mass was very alarming to me.

9.    I am aware that, among other impacts, global warming has caused a rise in sea level, and that sea level is expected to continue to rise as a result of global warming.  I am aware that rising sea levels have resulted, and will continue to result, in loss of coastal property, such as my coastal property in Maine, due to erosion and inundation.

10.    I am also aware that global warming has been linked to increasing storm intensity, which also presents a special threat to coastal property.  Increased storm intensity will cause damaging flooding and inundation of coastal property.

11.    As a member of CLF and a citizen concerned about global warming and air quality, I am aware that motor vehicles constitute a large source of greenhouse gas emissions in the United States.

12.    As a member of CLF, I am aware that Rhode Island, Massachusetts, Vermont, and Maine have adopted regulations, first promulgated in California that will, when implemented, reduce greenhouse gas emissions from new motor vehicles.  I am aware that California, and the states that have adopted California's regulations, including Rhode Island, have done so in response to the increasing threat of global warming, and in recognition of the fact that we must reduce the large volume of greenhouse gasses emitted each year in the United States by cars and trucks.  I am aware that, before the regulations may be implemented in California, and in the states that have adopted the

California regulations, California must apply to EPA for a preemption waiver, and EPA must grant that waiver.

13.    I am informed and believe that, although California applied for a preemption waiver in December 2005, it was not until December 2007, that EPA denied California's waiver request. I am informed and believe that EPA disputes that its December 2007, denial is final. I am aware that the longer it takes to resolve the question whether California, and the other states that adopted the California regulations, can implement those regulations, the longer it will be before citizens of those states can enjoy the benefits of the regulations.

14.    I have long been aware of the need to develop vehicles that emit fewer greenhouse gasses. In or around 2003, my husband and I purchased our first hybrid technology vehicle, a Toyota Prius. We were among the first families in Rhode Island to purchase a Prius, and were so satisfied with it that we soon purchased a second Prius.

15.    I am committed to supporting, as an early adopter, vehicle technology that limits greenhouse gas emissions to the greatest extent possible. As someone who was an early supporter of the Prius, my family and I would benefit from increased availability of advanced hybrid technology vehicles.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on January 15, 2008.

Peggy B. Sharpe

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 07-cv-02024-RCL |
| COMMONWEALTH OF MASSACHUSETTS, et al., | ) ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| STATE OF DELAWARE, | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| and | ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, ENVIRONMENTAL DEFENSE, and CONSERVATION LAW FOUNDATION, | ) ) ) ) | |
| Proposed Intervenor Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the Environmental Protection Agency, | ) ) ) ) ) | |
| Defendants. | ) ) | |

DECLARATION OF JOSEPHINE MERCK

1

Pursuant to 28 U.S.C. § 1746 and under penalty of perjury, JOSEPHINE MERCK states as follows:

1.     I am currently a member of Natural Resources Defense Council ("NRDC") and have been for more than nineteen years. I also serve on NRDC's Board of Directors. Because of my position, I am very familiar with NRDC's mission, organizational structure, and activities.

2.     I support NRDC for its commitment to the protection of the human and natural environment. Global warming is one of the most significant environmental threats facing our nation and requires immediate action. NRDC is actively involved in efforts to stop global warming and reduce its impacts.

3.     I understand that climate change will result in widespread and varied harms to our environment, health and economy. These harms are expected to include rising sea levels. Rising sea levels would hinder my ability to use my personal property and adversely impact the Ocean View Foundation, which I founded and from which I derive considerable personal satisfaction.

4.     I own a house on Block Island, which is located off the coast of Rhode Island in Narragansett Sound. Block Island comprises two masses of land joined by a narrow, low-lying barrier beach. My house is located to the north of the isthmus, while the island's town center is located to the south. If climate change causes the sea level to rise, the barrier beach will be inundated, dividing Block Island and eliminating the only route between my house and the point at which ferries are currently available. This would also prevent me from accessing the island's grocery store, its post office, and the headquarters of the Ocean View Foundation.

2

5.      In past years, I have observed storm damage to the road by which I access the southern part of the island.  More frequent severe weather, which I understand to be an expected consequence of climate change, would increase the risk that the road could be damaged or destroyed.

6.      My ability to enjoy my house would be reduced if I could no longer travel to it by ferry or access the town center.  Indeed, absent a change in the island's transportation facilities, I would not be able to reach my house from the mainland.

7.      In addition to maintaining a house on Block Island, I am the founding president of the Ocean View Foundation, which provides environmental education to the island's year-round community and visitors.  Block Island is home to environmentally significant habitat for songbirds; it sits on songbird migration routes, lacks light pollution, and has historically been a base for recording data about songbirds.  Because of these attributes, I eventually hope to see fifty percent of the open space on Block Island dedicated to species protection.

8.      The Ocean View Foundation holds two properties on Block Island, one of which is directly adjacent to the water.  The Ocean View Foundation purchased these properties because they contain environmentally sensitive habitat and have substantial conservation value.  The ocean-front parcel is vulnerable to rising sea levels, due to its low elevation and proximity to the water.  If sea levels rise, the Ocean View Foundation will suffer harm as its property is submerged and eroded.

9.      The regulation of carbon dioxide emissions from automobiles will contribute to the stabilization of rising temperatures and, in turn, of sea levels.  This

3

stabilization would protect the personal value of my home, as well as the property and mission of the Ocean View Foundation.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed in Cos Cob, Connecticut on January /6, 2008.

Josephine Merck

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD, | ) ) ) ) | |
| Plaintiffs, | ) ) | 07-cv-02024-RCL |
| COMMONWEALTH OF MASSACHUSETTS, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| STATE OF DELAWARE, | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| and | ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, ENVIRONMENTAL DEFENSE, and CONSERVATION LAW FOUNDATION, | ) ) ) ) | |
| Proposed Intervenor Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the Environmental Protection Agency, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF JOY COVEY**

Pursuant to 28 U.S.C. § 1746 and under penalty of perjury, JOY COVEY states as follows:

1.     I am currently a member of Natural Resources Defense Council ("NRDC") and have been for seven years.  I also serve on NRDC's Board of Directors. Because of my position, I am very familiar with NRDC's mission, organizational structure, and activities.

2.     I support NRDC for its commitment to the protection of the human and natural environment.  Global warming is one of the most significant environmental threats facing our nation and requires immediate action.  NRDC is actively involved in efforts to stop global warming and reduce its impacts.

3.     I live in Park City, Utah, where climate change is expected to increase the frequency and severity of droughts.  Summer water supplies in Utah and other parts of the West depend on the slow melting of mountain snowpacks, and climate change is expected to decrease the size of those snowpacks and lead to earlier melting.  In Park City, which experienced a water shortage last summer, drought is already a serious concern.

4.     My  ability to enjoy my home is reduced during periods of drought. Furthermore, I believe that an increase in the severity and frequency of droughts will reduce the value of homes in Park City.

5.     The personal and economic value of my home will also be affected by the impacts of climate change on the ski season.  Climate change will result in widespread and varied harms to our environment, health and economy.  Climate models show that

one of these harms will be a decrease in the period during which snow is available. Specifically, climate models show that that if greenhouse gases continue to be emitted at the current rate, there will be a shorter ski season in Utah and the quality of the snow will decline.

6.      I have chosen to live in Park City partly because of the excellent skiing available in the surrounding mountains. At present, there is generally enough snow to ski from November through April. I typically ski three or four times per week throughout the winter. A decrease in the length and quality of the ski season would reduce my ability to enjoy skiing near my home in Park City.

7.      The property value of my home is based significantly on the quality and duration of the ski season in Park City. If climate change results in a shortened ski season and less favorable conditions for skiing, the value of my house will decline.

8.      The regulation of carbon dioxide emissions from automobiles will contribute to the stabilization of rising temperatures. This stabilization is critical to mitigate the impacts of drought and to protect the personal and economic value of my home. This stabilization will also ensure my ability to continue skiing in Park City.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed in Park City, Utah on January / 6 , 2008.

Joy Covey

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 07-cv-02024-RCL |
| COMMONWEALTH OF MASSACHUSETTS, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| WASHINGTON ENVIRONMENTAL COUNCIL, et al., | ) ) ) | |
| Intervenor Plaintiffs, | ) ) | |
| STATE OF DELAWARE, | ) ) | |
| Intervenor Plaintiff, | ) ) | |
| and | ) ) | |
| NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, ENVIRONMENTAL DEFENSE, and CONSERVATION LAW FOUNDATION, | ) ) ) ) | |
| Proposed Intervenor Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the Environmental Protection Agency, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT IN INTERVENTION FOR DECLARATORY
AND INJUNCTIVE RELIEF**

**INTRODUCTION**

The Natural Resources Defense Council, Environmental Defense Fund, Sierra Club, and Conservation Law Foundation, national and regional conservation organizations, seek to intervene in this action on the side of plaintiff State of California and allege as follows for their complaint in intervention:

1.    The State of California, by and through Arnold Schwarzenegger, Governor of the State of California, and the California Air Resources Board, brought an action to compel the United States Environmental Protection Agency and Stephen L. Johnson, Administrator for the United States Environmental Protection Agency (USEPA), to either grant or deny California's request for a waiver of preemption of its Regulation to Control Greenhouse Gas Emissions from Motor Vehicles (GHG Regulation), under section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b). The California Air Resources Board (CARB) requested the waiver from USEPA on December 21, 2005.  The administrative docket is EPA-HQ-OAR-2006-0173.

2.    California adopted the GHG Regulation to reduce the future harm to California's public health, welfare, safety, and economy resulting from increased global warming.  The GHG Regulation requires a reduction in the emissions of greenhouse gases from most light-duty motor vehicles sold in California, on a fleet-wide basis, beginning with the 2009 model-year.

3.    Applicants advocated for development of the vehicle GHG standards by California and for the adoption of those standards in a number of the other states which have adopted them.

4.    On December 19, 2007, Administrator Johnson sent a letter to Governor Arnold Schwarzenegger, which states: "I have decided that EPA will be denying the waiver and have instructed my staff to draft appropriate documents setting forth the rationale for this denial in further detail and to have them ready for my signature as soon as possible."

5.    Applicants contend that Administrator Johnson's December 19, 2007 letter constitutes final agency action denying California's waiver request.

6.    In its Answer to California's complaint, USEPA denies that Administrator Johnson's letter constitutes final agency action, contending that USEPA has not granted or denied California's request for the waiver.  To the extent that USEPA is correct that it has not yet taken final agency action to grant or deny California's waiver request, USEPA has unreasonably delayed action on the requested waiver.  The agency has had more than two years since CARB applied for the waiver to review the application and supporting materials and to make a decision.

7.    To the extent that EPA has not already taken final agency action, USEPA must act on the GHG Regulation without further delay because its delay threatens California's ability to effectively implement the vehicle standards for 2009 model-year vehicles.  In addition, twelve states have adopted and six additional states are considering adopting California's GHG regulations for new vehicles sold in their states.  Implementation of their regulations depends on USEPA first granting California's waiver application.

8.    The comments submitted to USEPA, including comments by Applicants, overwhelmingly support the GHG Regulation.  Of the approximately 98,000 comments referenced in USEPA's docket, more than 99.9% support the GHG Regulation.  Only one automaker subject to the GHG regulation submitted any opposition to USEPA.  Two automaker trade groups submitted opposing comments.

9.    The effect of global warming on California's population, economy and environment has been extensively demonstrated both during CARB's and USEPA's administrative proceedings on the GHG Regulation and in other public forums and scientific proceedings.

10.    The accelerated rate at which GHG emissions are increasing in the absence of regulation also makes USEPA's delay unreasonable.  The measured rate of change is exceeding earlier projections.  Recent studies, of which USEPA is aware, indicate the Earth may be perilously close to an irreversible melting of ice sheets within this century.

11.    Motor vehicles are a major source of greenhouse gases.  Automotive emissions of greenhouse gases are increasing more rapidly than any other source.  The longer the delay in reducing these emissions, the more costly and harmful will be the impact.

3

**PARTIES**

12.     USEPA and Stephen L. Johnson, the Administrator of USEPA, are responsible for granting or denying California's request for a waiver under 42 U.S.C. § 7543(b).

13.     The Natural Resources Defense Council (NRDC) is a national nonprofit environmental organization with approximately 421,550 members nationwide.  NRDC uses law, science and the support of its members to ensure a safe and healthy environment for all living things.  One of NRDC's top priorities is to reduce emissions of the air pollutants that are causing global warming.  NRDC worked with the California legislature to support passage of the Pavley GHG legislation and with CARB on the GHG regulations.   NRDC has also worked in other states to ensure adoption of California's GHG emissions standards.

14.     The Environmental Defense Fund (EDF) has 343,757 members nationally and specializes in the development of innovative, scientifically-sound, market-based solutions to environmental problems.  Through its Climate and Air Program, EDF works extensively on the international, national, and state levels to address the causes and effects of global warming.  EDF supported the adoption of California's automotive greenhouse gas legislation and the issuance of regulations by the California Air Resources Board as part of its State Climate Action Project.

15.     The Sierra Club is a national nonprofit environmental organization with approximately 800,000 members nationwide.  One of Sierra Club's major programs is its national Global Warming and Energy Campaign to promote solutions to global warming using current and cutting-edge technologies, and securing promulgation of the GHG emission standards was among the top priorities of this Campaign.

16.     The Conservation Law Foundation (CLF) is a non-profit, member supported environmental advocacy organization dedicated to protecting the people, environment and communities of New England.  CLF has a total of 3,761 current members; 3,001 CLF members live in Massachusetts, Vermont, Rhode Island, and Maine-- states that have adopted California's clean car emission standards.  CLF has, as part of its long-standing sustainable transportation and

air quality campaigns, advocated for adoption of California's clean car emission standards in its home states of New England..

## JURISDICTION AND NOTICE

17.     Jurisdiction is invoked pursuant to the citizen's suit provision of the Clean Air Act, 42 U.S.C. § 7604(a).

18.     California notified the USEPA of its intent to file this action pursuant to 42 U.S.C. § 7604(a) on April 25 and 26, 2007.  In addition, Applicants NRDC and EDF notified USEPA of their intent to file an action challenging USEPA for unreasonable delay in making the waiver decision in letters sent on May 22, 2007.  Applicant Sierra Club sent a similar notice letter on June 15, 2007.

## REGULATORY HISTORY

19.     In 2002, the California Legislature adopted Assembly Bill 1493 (Pavley), which amended California Health and Safety Code section 42823 and added section 43018.5.  The legislation required CARB to develop and adopt a regulation for the control of greenhouse gas emissions by light-duty motor vehicles.  Applicants actively worked with the California legislature to ensure passage of this legislation.

20.     In 2002, CARB began holding public workshops and soliciting public comments on the development of a draft regulation.  Applicants submitted comments and participated in the public workshops on the draft regulations.

21.     After a series of workshops, comment analysis, and public hearings, CARB approved its GHG Regulation on September 23, 2004.  Final language and adoption occurred on August 4, 2005.  The regulation amended Title 13 of the California Code of Regulations, sections 1900 and 1961, and added section 1961.1.

22.     On December 21, 2005, CARB applied to USEPA for waiver of federal preemption of the GHG Regulation under the Clean Air Act pursuant to 42 U.S.C. § 7543(b).

23.    USEPA did not notice a hearing or solicit additional comments on California's waiver application until April 30, 2007, sixteen months after CARB applied for the waiver.  USEPA held hearings on May 22 and 30, 2007.  The noticed comment period expired on June 15, 2007.

24.    Pursuant to their authority under CAA § 177, 42 U.S.C. § 7507, the following states have adopted the California vehicle GHG standard: Connecticut, Massachusetts, Maryland, Maine, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont and Washington.  The following states are considering the adoption of California's GHG emission standards:  Arizona, Colorado, Florida, Iowa, Utah, and Minnesota.

25.    On December 19, 2007, Administrator Johnson denied California's waiver request in a letter to Governor Schwarzenegger.

26.    USEPA contends that Administrator Johnson's December 19, 2007 letter is not a final decision denying California's waiver.

## GLOBAL WARMING ENDANGERS PUBLIC HEALTH, WELFARE, SAFETY AND THE ENVIRONMENT

27.    Increasing emissions of greenhouse gases into the atmosphere are causing global warming.  The resultant climatic change includes increasing temperatures, reduced snowfall in the mountains, a northward shift in the prevailing winter storm track, deteriorating air quality, and more extreme weather events.  In addition, increasing emissions of carbon dioxide are resulting in changes to the acidity of ocean waters, which poses a threat to numerous marine organisms.

28.    Scientists predict that unless we curb global warming emissions, average U.S. temperatures could be 3 to 9 degrees higher by the end of the century.

29.    Rising temperatures are causing less precipitation to fall as snow in Western States.  Because much of the West depends on snowmelt to supply water during the summer, the reduction in mountain snowpack will lead to an increase in drought conditions.  Hotter summertime conditions also increase the risk of forest fires.

30.     Global warming increases extreme heat waves and storm intensities.  Extreme weather events are creating numerous incidences of flooding and costal inundation due to the effects of global warming.

31.     Global warming is already causing damage in many parts of the United States. In 2002, Colorado, Arizona and Oregon endured their worst wildfire seasons ever.  The same year, drought created severe dust storms in Montana, Colorado and Kansas, and floods caused hundreds of millions of dollars in damage in Texas, Montana and North Dakota.  In 2007, southern California suffered more than a billion dollars in losses from wildfires.  Since the early 1950s, snow accumulation has declined 60 percent and winter seasons have shortened in some areas of the Cascade Range in Oregon and Washington.

32.     Global warming is expected to lead to significant increases in sea level if emissions of greenhouse gases are not reduced.  Substantial sea level rise will result in extraordinary harm as coastal lands are inundated and coastal erosion becomes more severe.

33.     Computer modeling of future climates indicates that a global increase of up to 3°C could cause the Greenland and West Antarctic ice sheets to melt in the next century.  More recent measurements and studies indicate that ice melting is happening more rapidly and may cause catastrophic sea level rise within this century.  Loss of the Greenland Ice Sheet would cause the sea level to rise twenty-one feet and loss of the West Antarctic Ice Sheet would cause a rise of twenty-six feet.  Many major cities in the United States are located on the coast and are therefore at tremendous risk from sea level rise.

34.     Global warming increases the formation of ground-level ozone, a component of smog that damages the respiratory tract and increases the symptoms of asthma.

35.     Global warming will also alter the natural biota.  Alpine and sub alpine forests will decline and coniferous forests will be partly replaced by mixed conifer and evergreen hardwoods.  Grasslands will expand, largely at the expense of woodlands and chaparral.  Increases in woody growth due to longer growing seasons and, under some climatic scenarios,

more precipitation will be counteracted by the increased wildfires.  Warming temperatures will allow the expansion of agricultural weeds, pests and microbial diseases.

36.    Global warming will cause extraordinary harm to public health and natural resources in California.  California's municipal and agricultural water system is the largest in the country and is heavily dependent on water from snowpack.  California's water supply is therefore at severe risk from the reduction in snowpack that global warming will cause.  California, which has six of the ten most polluted cites in the United States, will suffer extraordinary harm as global warming exacerbates ozone levels in these cities.  Recent research shows that for each increase of one degree Celsius, there will be approximately a thousand extra deaths nationwide from reduced air quality.  California's extraordinary coastal and riverine resources will be also degraded by sea level rise, increased coastal erosion, and increased pressure to divert water from wild rivers.

## AUTOMOTIVE EMISSIONS ARE A MAJOR SOURCE OF GREENHOUSE GASES

37.    Vehicle emissions contribute a substantial portion of the GHG pollution emitted in California and the other states which have adopted California's GHG Regulation.  Light-duty motor vehicles account for about 30% of the greenhouse gases emitted in the United States.

38.    USEPA approval of the GHG regulation would reduce California's greenhouse gas emissions by about 30 million metric tons in 2020.  Because USEPA approval would allow regulations based on California's standards to take effect in at least 12 other states, the total 2020 reductions would be about 74 million metric tons.

39.    A reduction in greenhouse gas emissions will reduce the rate of global warming and the associated risks and magnitude of the adverse impacts of global warming.

## THE GHG REGULATION REQUIRES REDUCTIONS IN VEHICULAR EMISSIONS OF GREENHOUSE GASES

40.     The GHG Regulation requires that the major manufacturers of light-duty vehicles sold in California begin to reduce the vehicular emissions of greenhouse gases on a fleet-wide basis beginning with the 2009 model-year.

41.     The regulation divides the light-duty vehicles of each affected manufacturer into two fleets.  One fleet (PC/LDT1) comprises passenger cars, pick-up trucks and small sports utility vehicles.  The other fleet (LDT2/MDPV) comprises larger light-duty trucks, up to 8500 pounds (gross vehicle weight), large sports utility vehicles, and medium-duty passenger vehicles of less than 10,000 pounds.

42.     Greenhouse gas emissions, measured in terms of $CO_2$-equivalents, are limited to a fleet-average 323 grams per mile for PC/LDT1s in the 2009 model-year and decline over the years to 205 grams per mile in the 2016 model-year.  Emission limits for LTD2/MDPVs are 439 grams per mile in the 2009 model-year and decline to 332 grams per mile in the 2016 model-year.

43.     Automakers can achieve compliance with the GHG Regulation through a combination of improved technologies and other actions.  Compliance can be achieved by reductions in tailpipe emissions of greenhouse gases, the use of alternative fuels, credits for air conditioner improvements, credits carried over from another year or fleet, and credit-trading among manufacturers.

44.     The California GHG regulations will reduce vehicle greenhouse gas emissions more quickly than the national vehicle mileage standards passed in the recently passed Energy Independence and Security Act.

## CONGRESS INTENDED PROMPT USEPA ACTION ON WAIVER APPLICATIONS FOR CALIFORNIA AUTOMOBILE EMISSIONS REGULATIONS

45.     Congress intended that California (1) serve as a laboratory for the nation in the control of automotive emissions, (2) be able to adopt more stringent regulations for automotive emissions

than the federal government, and (3) be able to act more quickly than USEPA in adopting air pollution control measures.

46.    California has traditionally led USEPA in establishing emission standards for light-duty vehicles.

47.    42 U.S.C. § 7543(a) requires, subject to specified exceptions, that USEPA's Administrator grant a waiver of federal preemption under the Clean Air Act if California has determined that its "standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards."

48.    The specified exceptions are set out in 42 U.S.C. § 7543(b)(1).  The USEPA Administrator must make at least one of the following three findings in order to deny the waiver application:

> (a) California's determination of protectiveness is arbitrary and capricious,
>
> (b) California does not need the standards to meet compelling and extraordinary conditions, or
>
> (c) the standards and accompanying enforcement procedures are not consistent with 42 U.S.C. § 7521(a).

49.    Congress generally intended that USEPA make determinations of this type in a matter of weeks or months, not years.

## REASONABLE TIME FOR THE USEPA TO ACT HAS EXPIRED

50.    CARB submitted a comprehensive analysis of the GHG regulation when it applied for the waiver in December 2005.  SEPA requested no additional information.

51.    On April 10, 2006, after USEPA had taken no action on California's waiver application, California Governor Arnold Schwarzenegger wrote the President of the United States and requested urgent action on California's waiver application.  A copy was sent to the USEPA Administrator.

52.     USEPA did not respond.  It did not indicate what action, if any, it was taking on CARB's application.  Nevertheless, USEPA had been studying the GHG regulation since at least September of 2004.

53.     California's Governor again wrote the President and copied USEPA on October 24, 2006.  The Governor repeated his request for urgent action.

54.     On February 21, 2007, USEPA informed CARB that USEPA did not intend to act on California's waiver application, other than opening an electronic docket, until the United States Supreme Court decided whether USEPA was obligated to address greenhouse gases as air pollutants under the Clean Air Act.   The Supreme Court ruled on April 2, 2007, that the greenhouse gases are subject to regulation under the Clean Air Act.

55.     USEPA requires no additional time to review California's determination that its standards are "at least as protective of public health and welfare as applicable Federal standards" under 42 U.S.C. § 7543(b)(1) and (2).  California explicitly documented its determination in its December 2005 submission to USEPA.

56.     The protectiveness comparison of state and federal standards also requires no additional time, since USEPA has no federal standards limiting greenhouse gas emissions from motor vehicles.

57.     USEPA requires no additional time to determine whether California's rule making was arbitrary and capricious under 42 U.S.C. § 7543(b)(1)(A).  USEPA was provided with a comprehensive exposition of CARB's two-year rule-making when CARB first requested the waiver in December 2005.  CARB's December 2005 submission to USEPA included an outline of its rule-making process, a detailed 251-page Initial Statement of Reasons for the rule, as well as a 446-page Final Statement of Reasons containing CARB's further analysis and response to additional comments and statements presented on the rule.   The public policy objective of reducing atmospheric greenhouse gases is directly achieved by the GHG regulation since it set standards for reducing emissions of these very gases.

58.     USEPA requires no additional time to determine whether California needs the GHG regulation to meet compelling and extraordinary conditions under 42 U.S.C. § 7543(b)(1)(B). USEPA is already aware, through its administration of other provisions of the Clean Air Act, that criteria air pollutants in California's South Coast and San Joaquin air basins continue to exceed national air quality standards.  In addition, global warming threatens extraordinary harm to California's water resources, biodiversity, forests, rivers and coastline.  USEPA is also aware of the perils of  global warming, as it has been separately studying global warming effects since at least 1984.

59.     In addition, the policy and practice of USEPA is to evaluate California's need to meet compelling and extraordinary conditions in terms of California's motor vehicle emissions program as a whole.  In this respect, the USEPA was already aware of California's continuing need for this program.

60.     USEPA requires no additional time to determine whether California standards are consistent with 42 U.S.C. § 7521(a), as the substantive comments based on lead time and technological feasibility were limited, and CARB submitted comprehensive documentation in its original December 2005 submission.

61.     USEPA requires no additional time to consider comments submitted in the course of its review of the GHG regulation. The deadline for comment submission expired on June 15, 2007. Of the approximately 98,000 comments referenced by USEPA's docket, more than 99.9% support the GHG Regulation.  General Motors Corporation is the only automaker subject to the regulation that submitted any comments.  Opposition is largely restricted to two automaker advocacy groups, the Alliance of Automobile Manufacturers and the Association of International Automobile Manufacturers.  Only 15 entities who opposed the regulation included any analysis in their comments, so the review time cannot be lengthy.

62.     The automakers' ability to timely and reasonably comply with the GHG Regulation was independently confirmed in a civil action, tried over the course of five weeks, before the United States District Court for the State of Vermont.  The action for federal preemption was brought by

General Motors Corporation, DaimlerChrysler Corporation, and domestic and foreign automaker trade associations, as well as car dealers, in an attempt to invalidate Vermont's identical version of California's GHG Regulation.  The same adverse claims contained in the comments submitted in this USEPA proceeding were litigated in that civil action. The District Court rejected those claims in a 240-page opinion issued on September 12, 2007.

## MULTIPLE AND SUBSTANTIAL INTERESTS ARE
## PREJUDICED BY DELAY

63.    Since the GHG Regulation's graduated emission standards begin to apply with the 2009 model-year, further delay by USEPA – to the extent Administrator Johnson's December 19, 2007 letter is not final agency action – will interfere with implementation of the certification procedure required under the GHG Regulation.  An order of the United States District Court for the Eastern District of California prohibits implementation of the GHG regulation until USEPA grants the waiver.

64.    Automakers that will be subject to the GHG regulation have alleged in court pleadings, either directly or through their trade associations, that "it is essential for manufacturers subject to the rules like the AB 1493 regulations to obtain approval of their vehicle models well before the relevant model-year begins."  As the automakers correctly observe, the 2009 model-year can begin as early as January 2008.

65.    Twelve states have adopted the GHG Regulation under Section 177 of the Clean Air Act and six additional states are in the process of adopting it.  In at least ten of these states, the regulations apply beginning with the 2009 model-year.  These states account for more than 50% of the nation's population and 45% of the nation's new vehicle sales.  USEPA's delay prejudices these states as it does California, since implementation of their regulations requires that USEPA first waive federal preemption for the GHG regulation.

66.    Further delay also means that the postponed restoration of a relatively stable and more equable climate would be less likely.  Such a delay would also require more drastic and rapid greenhouse gas reductions in the future at a greater cost.

67.    Longer delay also increases the risk of an abrupt climate change within this century that would include greater losses to California's water resources, biodiversity and risk of wildfires, as well as a larger and more rapid rise of sea level along California's coasts, inland bays and deltas. Disintegration of the Greenland Ice Sheet would raise sea level by twenty-one feet and disintegration of the West Antarctic Ice Sheet would raise sea level by twenty-six feet. A later loss of the East Antarctic Ice Sheet would add more than 210 additional feet to the sea level.

68.    USEPA is obligated to either grant or deny California's request for a waiver of federal preemption of its GHG Regulation under 42 U.S.C. § 7543(b)(1).

69.    To the extent Administrator Johnson's December 19, 2007 letter is not final agency action, USEPA's current failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes an unreasonable delay under 42 U.S.C. § 7604(a).

WHEREFORE, Applicants demand:

1.    That this court issue an order declaring that defendants United States Environmental Protection Agency and Stephen L. Johnson, Administrator, have unreasonably delayed in deciding California's application for waiver of federal preemption of California's GHG Regulation under 42 U.S.C. § 7543(b) and that their failure constitutes agency action unlawfully withheld.

2.    That this court issue an order declaring that defendants United States Environmental Protection Agency and Stephen L. Johnson, Administrator, have, through their unreasonable delay in deciding California's application for waiver of federal preemption under 42 U.S.C. § 7543(b), risk causing a delay in implementation of California's GHG Regulation and thereby increase the risk of harm to California's water system, coastal resources, biodiversity and health, and to the resources of the states that have adopted the CA program and their citizens (including our members).

3.    That this court issue an order compelling defendants United States Environmental Protection Agency and Stephen L. Johnson, Administrator, to decide California's application

for waiver of federal preemption of California's GHG Regulation under 42 U.S.C. § 7543(b)

forthwith.

4.  That this court retain jurisdiction over this action at least until the United States

Environmental Protection Agency and Administrator decide California's application.

5.  That the court grant such other and further relief as may be proper.


Dated: January 17, 2008

Respectfully submitted,

*/s/ Benjamin Longstreth*
Benjamin Longstreth (D.C. Bar No. 974015)
David Doniger (D.C. Bar No. 305383)
Natural Resources Defense Council
1200 New York Avenue, NW, Suite 400
Washington, DC 20005
(202) 289-6868 (ph)
(202) 289-1060 (fax)

*Counsel for Natural Resources Defense Council*


David Bookbinder (DC Bar No. 455525)
Sierra Club
408 C Street, NE
Washington, DC 20002
(202) 548-4598

*Counsel for Sierra Club*

Vickie Patton
Environmental Defense
2334 North Broadway
Boulder, CO 80304
(303) 447-7215

James T.B. Tripp
Environmental Defense
257 Park Avenue South
New York, NY 10010
(212) 505-2100

*Counsel for Environmental Defense*


Melissa A. Hoffer
Conservation Law Foundation
27 North Main Street
Concord, New Hampshire 03301
(603) 225-3060

*Counsel for Conservation Law Foundation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF CALIFORNIA, by and through )
ARNOLD SCHWARZENEGGER, Governor of )
the State of California, and the CALIFORNIA )
AIR RESOURCES BOARD, )
                                )
            Plaintiffs, )    07-cv-02024-RCL
                                )
COMMONWEALTH OF )
MASSACHUSETTS, et al., )
                                )
        Intervenor Plaintiffs, )
                                )
WASHINGTON ENVIRONMENTAL )
COUNCIL, et al., )
                                )
        Intervenor Plaintiffs, )
                                )
STATE OF DELAWARE, )
                                )
        Intervenor Plaintiff, )
                                )
and )
                                )
NATURAL RESOURCES DEFENSE COUNCIL, )
SIERRA CLUB, ENVIRONMENTAL DEFENSE, )
and CONSERVATION LAW FOUNDATION, )
                                )
        Proposed Intervenor )
        Plaintiffs, )
                                )
    v. )
                                )
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY, and STEPHEN L. )
JOHNSON, Administrator of the Environmental )
Protection Agency, )
                                )
        Defendants. )
_____)

**CORPORATE DISCLOSURE STATEMENT**

The undersigned, counsel of record for Natural Resources Defense Council, Environmental Defense, Sierra Club, and Conservation Law Foundation certify that to the best of our knowledge and belief:

The Natural Resources Defense Council, Environmental Defense, Sierra Club, and Conservation Law Foundation are non-profit corporations. There are no parent companies or publicly held companies that have any ownership interest in these non-profit corporations.

Dated: January 17, 2008

Respectfully submitted,

*/s/ Benjamin Longstreth*
Benjamin Longstreth (D.C. Bar No. 974015)
David Doniger (D.C. Bar No. 305383)
Natural Resources Defense Council
1200 New York Avenue, NW, Suite 400
Washington, DC 20005
(202) 289-6868 (ph)
(202) 289-1060 (fax)

*Counsel for Natural Resources Defense Council*

David Bookbinder (DC Bar No. 455525)
Sierra Club
408 C Street, NE
Washington, DC 20002
(202) 548-4598

*Counsel for Sierra Club*

Vickie Patton
Environmental Defense
2334 North Broadway
Boulder, CO 80304
(303) 447-7215

James T.B. Tripp
Environmental Defense
257 Park Avenue South
New York, NY 10010
(212) 505-2100

*Counsel for Environmental Defense*

Melissa A. Hoffer
Conservation Law Foundation
27 North Main Street
Concord, New Hampshire 03301
(603) 225-3060

*Counsel for Conservation Law Foundation*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STATE OF CALIFORNIA, by and through )
ARNOLD SCHWARZENEGGER, Governor of )
the State of California, and the CALIFORNIA )
AIR RESOURCES BOARD, )
      )
         Plaintiffs, )    07-cv-02024-RCL
      )
COMMONWEALTH OF )
MASSACHUSETTS, et al., )
      )
         Intervenor Plaintiffs, )
      )
WASHINGTON ENVIRONMENTAL )
COUNCIL, et al., )
      )
         Intervenor Plaintiffs, )
      )
STATE OF DELAWARE, )
      )
         Intervenor Plaintiff, )
      )
and )
      )
NATURAL RESOURCES DEFENSE COUNCIL, )
SIERRA CLUB, ENVIRONMENTAL DEFENSE, )
and CONSERVATION LAW FOUNDATION, )
      )
         Proposed Intervenor )
         Plaintiffs, )
      )
      v. )
      )
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY, and STEPHEN L. )
JOHNSON, Administrator of the Environmental )
Protection Agency, )
      )
         Defendants. )
_____)

**[PROPOSED] ORDER ON UNOPPOSED MOTION TO
INTERVENE AS A PLAINTIFF**

This Court, having reviewed Applicants' Unopposed Motion to Intervene as a Plaintiff and accompanying papers, hereby GRANTS Applicants' Motion for Intervention.

IT IS SO ORDERED.

Dated this _____ day of _____ 2008.

_____
UNITED STATES DISTRICT JUDGE