IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, Governor of the State of California, and the CALIFORNIA AIR RESOURCES BOARD,<br><br>Plaintiffs,<br><br>COMMONWEALTH OF MASSACHUSETTS, et al.,<br><br>Intervenor Plaintiffs,<br><br>WASHINGTON ENVIRONMENTAL COUNCIL, et al.,<br><br>Intervenor Plaintiffs,<br><br>STATE OF DELAWARE,<br><br>Intervenor Plaintiff,<br><br>and<br><br>NATURAL RESOURCES DEFENSE COUNCIL, SIERRA CLUB, ENVIRONMENTAL DEFENSE, and CONSERVATION LAW FOUNDATION,<br><br>Proposed Intervenor Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator of the Environmental Protection Agency,<br><br>Defendants. | 07-cv-02024-RCL |

**COMPLAINT IN INTERVENTION FOR DECLARATORY
AND INJUNCTIVE RELIEF**

## INTRODUCTION

The Natural Resources Defense Council, Environmental Defense Fund, Sierra Club, and Conservation Law Foundation, national and regional conservation organizations, seek to intervene in this action on the side of plaintiff State of California and allege as follows for their complaint in intervention:

1. The State of California, by and through Arnold Schwarzenegger, Governor of the State of California, and the California Air Resources Board, brought an action to compel the United States Environmental Protection Agency and Stephen L. Johnson, Administrator for the United States Environmental Protection Agency (USEPA), to either grant or deny California's request for a waiver of preemption of its Regulation to Control Greenhouse Gas Emissions from Motor Vehicles (GHG Regulation), under section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b). The California Air Resources Board (CARB) requested the waiver from USEPA on December 21, 2005. The administrative docket is EPA-HQ-OAR-2006-0173.

2. California adopted the GHG Regulation to reduce the future harm to California's public health, welfare, safety, and economy resulting from increased global warming. The GHG Regulation requires a reduction in the emissions of greenhouse gases from most light-duty motor vehicles sold in California, on a fleet-wide basis, beginning with the 2009 model-year.

3. Applicants advocated for development of the vehicle GHG standards by California and for the adoption of those standards in a number of the other states which have adopted them.

4. On December 19, 2007, Administrator Johnson sent a letter to Governor Arnold Schwarzenegger, which states: "I have decided that EPA will be denying the waiver and have instructed my staff to draft appropriate documents setting forth the rationale for this denial in further detail and to have them ready for my signature as soon as possible."

5. Applicants contend that Administrator Johnson's December 19, 2007 letter constitutes final agency action denying California's waiver request.

6.  In its Answer to California's complaint, USEPA denies that Administrator Johnson's letter constitutes final agency action, contending that USEPA has not granted or denied California's request for the waiver. To the extent that USEPA is correct that it has not yet taken final agency action to grant or deny California's waiver request, USEPA has unreasonably delayed action on the requested waiver. The agency has had more than two years since CARB applied for the waiver to review the application and supporting materials and to make a decision.

7.  To the extent that EPA has not already taken final agency action, USEPA must act on the GHG Regulation without further delay because its delay threatens California's ability to effectively implement the vehicle standards for 2009 model-year vehicles. In addition, twelve states have adopted and six additional states are considering adopting California's GHG regulations for new vehicles sold in their states. Implementation of their regulations depends on USEPA first granting California's waiver application.

8.  The comments submitted to USEPA, including comments by Applicants, overwhelmingly support the GHG Regulation. Of the approximately 98,000 comments referenced in USEPA's docket, more than 99.9% support the GHG Regulation. Only one automaker subject to the GHG regulation submitted any opposition to USEPA. Two automaker trade groups submitted opposing comments.

9.  The effect of global warming on California's population, economy and environment has been extensively demonstrated both during CARB's and USEPA's administrative proceedings on the GHG Regulation and in other public forums and scientific proceedings.

10.  The accelerated rate at which GHG emissions are increasing in the absence of regulation also makes USEPA's delay unreasonable. The measured rate of change is exceeding earlier projections. Recent studies, of which USEPA is aware, indicate the Earth may be perilously close to an irreversible melting of ice sheets within this century.

11.  Motor vehicles are a major source of greenhouse gases. Automotive emissions of greenhouse gases are increasing more rapidly than any other source. The longer the delay in reducing these emissions, the more costly and harmful will be the impact.

**PARTIES**

12.  USEPA and Stephen L. Johnson, the Administrator of USEPA, are responsible for granting or denying California's request for a waiver under 42 U.S.C. § 7543(b).

13.  The Natural Resources Defense Council (NRDC) is a national nonprofit environmental organization with approximately 421,550 members nationwide. NRDC uses law, science and the support of its members to ensure a safe and healthy environment for all living things. One of NRDC's top priorities is to reduce emissions of the air pollutants that are causing global warming. NRDC worked with the California legislature to support passage of the Pavley GHG legislation and with CARB on the GHG regulations. NRDC has also worked in other states to ensure adoption of California's GHG emissions standards.

14.  The Environmental Defense Fund (EDF) has 343,757 members nationally and specializes in the development of innovative, scientifically-sound, market-based solutions to environmental problems. Through its Climate and Air Program, EDF works extensively on the international, national, and state levels to address the causes and effects of global warming. EDF supported the adoption of California's automotive greenhouse gas legislation and the issuance of regulations by the California Air Resources Board as part of its State Climate Action Project.

15.  The Sierra Club is a national nonprofit environmental organization with approximately 800,000 members nationwide. One of Sierra Club's major programs is its national Global Warming and Energy Campaign to promote solutions to global warming using current and cutting-edge technologies, and securing promulgation of the GHG emission standards was among the top priorities of this Campaign.

16.  The Conservation Law Foundation (CLF) is a non-profit, member supported environmental advocacy organization dedicated to protecting the people, environment and communities of New England. CLF has a total of 3,761 current members; 3,001 CLF members live in Massachusetts, Vermont, Rhode Island, and Maine-- states that have adopted California's clean car emission standards. CLF has, as part of its long-standing sustainable transportation and

air quality campaigns, advocated for adoption of California's clean car emission standards in its home states of New England..

## JURISDICTION AND NOTICE

17. Jurisdiction is invoked pursuant to the citizen's suit provision of the Clean Air Act, 42 U.S.C. § 7604(a).

18. California notified the USEPA of its intent to file this action pursuant to 42 U.S.C. § 7604(a) on April 25 and 26, 2007. In addition, Applicants NRDC and EDF notified USEPA of their intent to file an action challenging USEPA for unreasonable delay in making the waiver decision in letters sent on May 22, 2007. Applicant Sierra Club sent a similar notice letter on June 15, 2007.

## REGULATORY HISTORY

19. In 2002, the California Legislature adopted Assembly Bill 1493 (Pavley), which amended California Health and Safety Code section 42823 and added section 43018.5. The legislation required CARB to develop and adopt a regulation for the control of greenhouse gas emissions by light-duty motor vehicles. Applicants actively worked with the California legislature to ensure passage of this legislation.

20. In 2002, CARB began holding public workshops and soliciting public comments on the development of a draft regulation. Applicants submitted comments and participated in the public workshops on the draft regulations.

21. After a series of workshops, comment analysis, and public hearings, CARB approved its GHG Regulation on September 23, 2004. Final language and adoption occurred on August 4, 2005. The regulation amended Title 13 of the California Code of Regulations, sections 1900 and 1961, and added section 1961.1.

22. On December 21, 2005, CARB applied to USEPA for waiver of federal preemption of the GHG Regulation under the Clean Air Act pursuant to 42 U.S.C. § 7543(b).

23.     USEPA did not notice a hearing or solicit additional comments on California's waiver application until April 30, 2007, sixteen months after CARB applied for the waiver. USEPA held hearings on May 22 and 30, 2007. The noticed comment period expired on June 15, 2007.

24.     Pursuant to their authority under CAA § 177, 42 U.S.C. § 7507, the following states have adopted the California vehicle GHG standard: Connecticut, Massachusetts, Maryland, Maine, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont and Washington. The following states are considering the adoption of California's GHG emission standards: Arizona, Colorado, Florida, Iowa, Utah, and Minnesota.

25.     On December 19, 2007, Administrator Johnson denied California's waiver request in a letter to Governor Schwarzenegger.

26.     USEPA contends that Administrator Johnson's December 19, 2007 letter is not a final decision denying California's waiver.

## GLOBAL WARMING ENDANGERS PUBLIC HEALTH, WELFARE, SAFETY AND THE ENVIRONMENT

27.     Increasing emissions of greenhouse gases into the atmosphere are causing global warming. The resultant climatic change includes increasing temperatures, reduced snowfall in the mountains, a northward shift in the prevailing winter storm track, deteriorating air quality, and more extreme weather events. In addition, increasing emissions of carbon dioxide are resulting in changes to the acidity of ocean waters, which poses a threat to numerous marine organisms.

28.     Scientists predict that unless we curb global warming emissions, average U.S. temperatures could be 3 to 9 degrees higher by the end of the century.

29.     Rising temperatures are causing less precipitation to fall as snow in Western States. Because much of the West depends on snowmelt to supply water during the summer, the reduction in mountain snowpack will lead to an increase in drought conditions. Hotter summertime conditions also increase the risk of forest fires.

30.     Global warming increases extreme heat waves and storm intensities.  Extreme weather events are creating numerous incidences of flooding and costal inundation due to the effects of global warming.

31.     Global warming is already causing damage in many parts of the United States. In 2002, Colorado, Arizona and Oregon endured their worst wildfire seasons ever.  The same year, drought created severe dust storms in Montana, Colorado and Kansas, and floods caused hundreds of millions of dollars in damage in Texas, Montana and North Dakota.  In 2007, southern California suffered more than a billion dollars in losses from wildfires.  Since the early 1950s, snow accumulation has declined 60 percent and winter seasons have shortened in some areas of the Cascade Range in Oregon and Washington.

32.     Global warming is expected to lead to significant increases in sea level if emissions of greenhouse gases are not reduced.  Substantial sea level rise will result in extraordinary harm as coastal lands are inundated and coastal erosion becomes more severe.

33.     Computer modeling of future climates indicates that a global increase of up to 3°C could cause the Greenland and West Antarctic ice sheets to melt in the next century.  More recent measurements and studies indicate that ice melting is happening more rapidly and may cause catastrophic sea level rise within this century.  Loss of the Greenland Ice Sheet would cause the sea level to rise twenty-one feet and loss of the West Antarctic Ice Sheet would cause a rise of twenty-six feet.  Many major cities in the United States are located on the coast and are therefore at tremendous risk from sea level rise.

34.     Global warming increases the formation of ground-level ozone, a component of smog that damages the respiratory tract and increases the symptoms of asthma.

35.     Global warming will also alter the natural biota.  Alpine and sub alpine forests will decline and coniferous forests will be partly replaced by mixed conifer and evergreen hardwoods.  Grasslands will expand, largely at the expense of woodlands and chaparral.  Increases in woody growth due to longer growing seasons and, under some climatic scenarios,

more precipitation will be counteracted by the increased wildfires. Warming temperatures will allow the expansion of agricultural weeds, pests and microbial diseases.

36. Global warming will cause extraordinary harm to public health and natural resources in California. California's municipal and agricultural water system is the largest in the country and is heavily dependent on water from snowpack. California's water supply is therefore at severe risk from the reduction in snowpack that global warming will cause. California, which has six of the ten most polluted cites in the United States, will suffer extraordinary harm as global warming exacerbates ozone levels in these cities. Recent research shows that for each increase of one degree Celsius, there will be approximately a thousand extra deaths nationwide from reduced air quality. California's extraordinary coastal and riverine resources will be also degraded by sea level rise, increased coastal erosion, and increased pressure to divert water from wild rivers.

## AUTOMOTIVE EMISSIONS ARE A MAJOR SOURCE OF GREENHOUSE GASES

37. Vehicle emissions contribute a substantial portion of the GHG pollution emitted in California and the other states which have adopted California's GHG Regulation. Light-duty motor vehicles account for about 30% of the greenhouse gases emitted in the United States.

38. USEPA approval of the GHG regulation would reduce California's greenhouse gas emissions by about 30 million metric tons in 2020. Because USEPA approval would allow regulations based on California's standards to take effect in at least 12 other states, the total 2020 reductions would be about 74 million metric tons.

39. A reduction in greenhouse gas emissions will reduce the rate of global warming and the associated risks and magnitude of the adverse impacts of global warming.

## THE GHG REGULATION REQUIRES REDUCTIONS IN VEHICULAR EMISSIONS OF GREENHOUSE GASES

40. The GHG Regulation requires that the major manufacturers of light-duty vehicles sold in California begin to reduce the vehicular emissions of greenhouse gases on a fleet-wide basis beginning with the 2009 model-year.

41. The regulation divides the light-duty vehicles of each affected manufacturer into two fleets. One fleet (PC/LDT1) comprises passenger cars, pick-up trucks and small sports utility vehicles. The other fleet (LDT2/MDPV) comprises larger light-duty trucks, up to 8500 pounds (gross vehicle weight), large sports utility vehicles, and medium-duty passenger vehicles of less than 10,000 pounds.

42. Greenhouse gas emissions, measured in terms of CO2-equivalents, are limited to a fleet-average 323 grams per mile for PC/LDT1s in the 2009 model-year and decline over the years to 205 grams per mile in the 2016 model-year. Emission limits for LTD2/MDPVs are 439 grams per mile in the 2009 model-year and decline to 332 grams per mile in the 2016 model-year.

43. Automakers can achieve compliance with the GHG Regulation through a combination of improved technologies and other actions. Compliance can be achieved by reductions in tailpipe emissions of greenhouse gases, the use of alternative fuels, credits for air conditioner improvements, credits carried over from another year or fleet, and credit-trading among manufacturers.

44. The California GHG regulations will reduce vehicle greenhouse gas emissions more quickly than the national vehicle mileage standards passed in the recently passed Energy Independence and Security Act.

## CONGRESS INTENDED PROMPT USEPA ACTION ON WAIVER APPLICATIONS FOR CALIFORNIA AUTOMOBILE EMISSIONS REGULATIONS

45. Congress intended that California (1) serve as a laboratory for the nation in the control of automotive emissions, (2) be able to adopt more stringent regulations for automotive emissions

9

than the federal government, and (3) be able to act more quickly than USEPA in adopting air pollution control measures.

46. California has traditionally led USEPA in establishing emission standards for light-duty vehicles.

47. 42 U.S.C. § 7543(a) requires, subject to specified exceptions, that USEPA's Administrator grant a waiver of federal preemption under the Clean Air Act if California has determined that its "standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards."

48. The specified exceptions are set out in 42 U.S.C. § 7543(b)(1). The USEPA Administrator must make at least one of the following three findings in order to deny the waiver application:

> (a) California's determination of protectiveness is arbitrary and capricious,
>
> (b) California does not need the standards to meet compelling and extraordinary conditions, or
>
> (c) the standards and accompanying enforcement procedures are not consistent with 42 U.S.C. § 7521(a).

49. Congress generally intended that USEPA make determinations of this type in a matter of weeks or months, not years.

## REASONABLE TIME FOR THE USEPA TO ACT HAS EXPIRED

50. CARB submitted a comprehensive analysis of the GHG regulation when it applied for the waiver in December 2005. SEPA requested no additional information.

51. On April 10, 2006, after USEPA had taken no action on California's waiver application, California Governor Arnold Schwarzenegger wrote the President of the United States and requested urgent action on California's waiver application. A copy was sent to the USEPA Administrator.

52. USEPA did not respond. It did not indicate what action, if any, it was taking on CARB's application. Nevertheless, USEPA had been studying the GHG regulation since at least September of 2004.

53. California's Governor again wrote the President and copied USEPA on October 24, 2006. The Governor repeated his request for urgent action.

54. On February 21, 2007, USEPA informed CARB that USEPA did not intend to act on California's waiver application, other than opening an electronic docket, until the United States Supreme Court decided whether USEPA was obligated to address greenhouse gases as air pollutants under the Clean Air Act. The Supreme Court ruled on April 2, 2007, that the greenhouse gases are subject to regulation under the Clean Air Act.

55. USEPA requires no additional time to review California's determination that its standards are "at least as protective of public health and welfare as applicable Federal standards" under 42 U.S.C. § 7543(b)(1) and (2). California explicitly documented its determination in its December 2005 submission to USEPA.

56. The protectiveness comparison of state and federal standards also requires no additional time, since USEPA has no federal standards limiting greenhouse gas emissions from motor vehicles.

57. USEPA requires no additional time to determine whether California's rule making was arbitrary and capricious under 42 U.S.C. § 7543(b)(1)(A). USEPA was provided with a comprehensive exposition of CARB's two-year rule-making when CARB first requested the waiver in December 2005. CARB's December 2005 submission to USEPA included an outline of its rule-making process, a detailed 251-page Initial Statement of Reasons for the rule, as well as a 446-page Final Statement of Reasons containing CARB's further analysis and response to additional comments and statements presented on the rule. The public policy objective of reducing atmospheric greenhouse gases is directly achieved by the GHG regulation since it set standards for reducing emissions of these very gases.

58. USEPA requires no additional time to determine whether California needs the GHG regulation to meet compelling and extraordinary conditions under 42 U.S.C. § 7543(b)(1)(B). USEPA is already aware, through its administration of other provisions of the Clean Air Act, that criteria air pollutants in California's South Coast and San Joaquin air basins continue to exceed national air quality standards. In addition, global warming threatens extraordinary harm to California's water resources, biodiversity, forests, rivers and coastline. USEPA is also aware of the perils of global warming, as it has been separately studying global warming effects since at least 1984.

59. In addition, the policy and practice of USEPA is to evaluate California's need to meet compelling and extraordinary conditions in terms of California's motor vehicle emissions program as a whole. In this respect, the USEPA was already aware of California's continuing need for this program.

60. USEPA requires no additional time to determine whether California standards are consistent with 42 U.S.C. § 7521(a), as the substantive comments based on lead time and technological feasibility were limited, and CARB submitted comprehensive documentation in its original December 2005 submission.

61. USEPA requires no additional time to consider comments submitted in the course of its review of the GHG regulation. The deadline for comment submission expired on June 15, 2007. Of the approximately 98,000 comments referenced by USEPA's docket, more than 99.9% support the GHG Regulation. General Motors Corporation is the only automaker subject to the regulation that submitted any comments. Opposition is largely restricted to two automaker advocacy groups, the Alliance of Automobile Manufacturers and the Association of International Automobile Manufacturers. Only 15 entities who opposed the regulation included any analysis in their comments, so the review time cannot be lengthy.

62. The automakers' ability to timely and reasonably comply with the GHG Regulation was independently confirmed in a civil action, tried over the course of five weeks, before the United States District Court for the State of Vermont. The action for federal preemption was brought by

12

General Motors Corporation, DaimlerChrysler Corporation, and domestic and foreign automaker trade associations, as well as car dealers, in an attempt to invalidate Vermont's identical version of California's GHG Regulation. The same adverse claims contained in the comments submitted in this USEPA proceeding were litigated in that civil action. The District Court rejected those claims in a 240-page opinion issued on September 12, 2007.

## MULTIPLE AND SUBSTANTIAL INTERESTS ARE PREJUDICED BY DELAY

63.     Since the GHG Regulation's graduated emission standards begin to apply with the 2009 model-year, further delay by USEPA – to the extent Administrator Johnson's December 19, 2007 letter is not final agency action – will interfere with implementation of the certification procedure required under the GHG Regulation. An order of the United States District Court for the Eastern District of California prohibits implementation of the GHG regulation until USEPA grants the waiver.

64.     Automakers that will be subject to the GHG regulation have alleged in court pleadings, either directly or through their trade associations, that "it is essential for manufacturers subject to the rules like the AB 1493 regulations to obtain approval of their vehicle models well before the relevant model-year begins." As the automakers correctly observe, the 2009 model-year can begin as early as January 2008.

65.     Twelve states have adopted the GHG Regulation under Section 177 of the Clean Air Act and six additional states are in the process of adopting it. In at least ten of these states, the regulations apply beginning with the 2009 model-year. These states account for more than 50% of the nation's population and 45% of the nation's new vehicle sales. USEPA's delay prejudices these states as it does California, since implementation of their regulations requires that USEPA first waive federal preemption for the GHG regulation.

66.     Further delay also means that the postponed restoration of a relatively stable and more equable climate would be less likely. Such a delay would also require more drastic and rapid greenhouse gas reductions in the future at a greater cost.

67. Longer delay also increases the risk of an abrupt climate change within this century that would include greater losses to California's water resources, biodiversity and risk of wildfires, as well as a larger and more rapid rise of sea level along California's coasts, inland bays and deltas. Disintegration of the Greenland Ice Sheet would raise sea level by twenty-one feet and disintegration of the West Antarctic Ice Sheet would raise sea level by twenty-six feet. A later loss of the East Antarctic Ice Sheet would add more than 210 additional feet to the sea level.

68. USEPA is obligated to either grant or deny California's request for a waiver of federal preemption of its GHG Regulation under 42 U.S.C. § 7543(b)(1).

69. To the extent Administrator Johnson's December 19, 2007 letter is not final agency action, USEPA's current failure to make a determination under 42 U.S.C. § 7543(b)(1) constitutes an unreasonable delay under 42 U.S.C. § 7604(a).

WHEREFORE, Applicants demand:

1. That this court issue an order declaring that defendants United States Environmental Protection Agency and Stephen L. Johnson, Administrator, have unreasonably delayed in deciding California's application for waiver of federal preemption of California's GHG Regulation under 42 U.S.C. § 7543(b) and that their failure constitutes agency action unlawfully withheld.

2. That this court issue an order declaring that defendants United States Environmental Protection Agency and Stephen L. Johnson, Administrator, have, through their unreasonable delay in deciding California's application for waiver of federal preemption under 42 U.S.C. § 7543(b), risk causing a delay in implementation of California's GHG Regulation and thereby increase the risk of harm to California's water system, coastal resources, biodiversity and health, and to the resources of the states that have adopted the CA program and their citizens (including our members).

3. That this court issue an order compelling defendants United States Environmental Protection Agency and Stephen L. Johnson, Administrator, to decide California's application

for waiver of federal preemption of California's GHG Regulation under 42 U.S.C. § 7543(b) forthwith.

4. That this court retain jurisdiction over this action at least until the United States Environmental Protection Agency and Administrator decide California's application.

5. That the court grant such other and further relief as may be proper.


Dated: January 17, 2008

                                        Respectfully submitted,

*/s/ Benjamin Longstreth*
Benjamin Longstreth (D.C. Bar No. 974015)
David Doniger (D.C. Bar No. 305383)
Natural Resources Defense Council
1200 New York Avenue, NW, Suite 400
Washington, DC 20005
(202) 289-6868 (ph)
(202) 289-1060 (fax)

*Counsel for Natural Resources Defense Council*


David Bookbinder (DC Bar No. 455525)
Sierra Club
408 C Street, NE
Washington, DC 20002
(202) 548-4598

*Counsel for Sierra Club*

15

        Vickie Patton
Environmental Defense
2334 North Broadway
Boulder, CO 80304
(303) 447-7215

James T.B. Tripp
Environmental Defense
257 Park Avenue South
New York, NY 10010
(212) 505-2100

*Counsel for Environmental Defense*


Melissa A. Hoffer
Conservation Law Foundation
27 North Main Street
Concord, New Hampshire 03301
(603) 225-3060

*Counsel for Conservation Law Foundation*