EDMUND G. BROWN JR.
Attorney General of the State of California
MARY E. HACKENBRACHT
Senior Assistant Attorney General
ELLEN M. PETER
Supervising Deputy Attorney General
JOSEPH BARBIERI
MARK POOLE
Deputy Attorneys General
JAN ZABRISKIE
Deputy Attorney General
 1300 I Street, Suite 125
P.O. Box 944255
Sacramento, CA 94244-2550
Telephone:  (916) 322-5181
Fax:  (916) 327-2319
Email:  jan.zabriskie@doj.ca.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, GOVERNOR OF THE STATE OF CALIFORNIA, and the CALIFORNIA AIR RESOURCES BOARD,**<br><br>Plaintiff,<br><br>**COMMONWEALTH OF MASSACHUSETTS, et al.,**<br><br>Intervenor Plaintiffs,<br><br>**WASHINGTON ENVIRONMENTAL COUNCIL, et al.,**<br><br>Intervenor Plaintiffs,<br><br>**STATE OF DELAWARE**<br><br>Intervenor Plaintiff,<br>and<br><br>**NATURAL RESOURCES DEFENSE COUNCIL, et al.,**<br><br>Intervenor Plaintiffs,<br><br>v.<br><br>**THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator,**<br><br>Defendant. | 1:07-CV-02024-RCL<br><br>**PLAINTIFF CALIFORNIA AND PLAINTIFF-INTERVENORS' OPPOSITION TO ENVIRONMENTAL PROTECTION AGENCY'S MOTION TO ABATE** |

# TABLE OF CONTENTS

PAGE(S)

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    California's Adoption of Greenhouse Gas Standards Under Its Clean Air Act
       Authority. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    California's Waiver Request and EPA's Response . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    Procedural Posture. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    EPA HAS FAILED TO CARRY ITS BURDEN OF ESTABLISHING THAT IT
    WILL SUFFER HARDSHIP FROM A STAY AND THAT THE BALANCE OF
    COMPETING INTERESTS WEIGHS IN ITS FAVOR. . . . . . . . . . . . . . . . . . . . . . . . 6

    A.    EPA Must Meet a Substantial Burden to Obtain a Stay of Ongoing
       Litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    EPA Has Failed to Demonstrate any Hardship or Inequity Justifying a Stay,
       and the Equitable Balance Weighs Entirely in California's Favor. . . . . . . . . . . . . 8

       1.    EPA's Motion Should Be Denied Because EPA Has Failed to
          Demonstrate Hardship or Inequity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

       2.    EPA's Motion Should Be Denied Because the Equities Weigh
          Entirely in California's Favor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.    EPA's Reasons for Seeking Abeyance Lack Merit. . . . . . . . . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

i

1

TABLE OF AUTHORITIES

2

PAGE(S)

3

CASES

4

5

*Asbestec Constr. Servs., Inc. v. EPA*,
    849 F.2d 765, 769 (2d Cir.1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

6

*Clinton v. Jones*
    520 U.S. 681 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7

*Commodity Futures Trading Com. v. Chilcott Portfolio Management, Inc.*
    713 F.2d 1477 (10th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8

*Craft v. Philip Morris Co.*
    2006 U.S. Dist. LEXIS 28081, at *29-30 (D. Mo. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 7

9

10

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*
    498 F.3d 1059 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11

*GFL Advantage Fund Ltd. v. Colkitt*
    216 F.R.D. 189 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

12

13

*Gold v. Johns-Manville Sales Corp.*
    723 F.2d 1068 (3d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

14

*Hisler v. Gallaudet Univ.*
    344 F. Supp. 2d 29 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9

15

16

*Inverworld, Ltd. v. United States*
    1993 WL 439831 (D.D.C. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

17

18

* *Landis v. North American Co.*
    299 U.S. 248 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 6-8, 10

19

*Leyva v. Certified Grocers of California, Ltd.*
    593 F.2d 857 (9th Cir.),
    cert. denied, 444 U.S. 827 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

20

21

*Lockyer v. Mirant Corp.*
    398 F.3d 1098 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

22

23

*Massachusetts v. EPA*,
    ___ U.S. ___ 27 S. Ct. 1438, 167 L.Ed.2d 248 (2007) . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

24

*National Family Planning and Reproductive Health Ass'n v. Sullivan*
    1992 WL 345629 (D.D.C. Oct. 5, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

25

26

*NRDC v. EPA*,
    673 F.2d 400, 405 n. 15 (D.C.Cir.1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

27

*Painters' Pension Trust Fund v. Manganaro Corp.*
    693 F. Supp. 1222 (D.D.C. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28

*Sierra Club v. Thomas*
  828 F.2d 783 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Williford v. Armstrong World Indus., Inc.*
  715 F.2d 124 (4th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

## STATUTES

California Health & Safety Code
  § 42823   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  § 43018.5   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
  2002 Cal. Stats., Chptr. 200 (AB1493) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

42 U.S.C.
  § 7543(b)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
  § 7604   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  § 7607(b)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## REGULATIONS

California Code of Regulations
  tit. 13, § 1961.1(a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## OTHER AUTHORITIES

Selmi, Jurisdiction to Review Agency Inaction Under Federal Environmental Law
  72 Ind. L.J. 65, 69-70 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*  Authority upon which we chiefly rely are marked with asterisks.

Plaintiff California respectfully submits the following opposition to the motion to abate filed by the United States Environmental Protection Agency ("EPA") on January 25, 2008. California is joined by the following plaintiff-intervenors in opposing the motion: States of Arizona, Connecticut, Delaware, Illinois, Maine, Maryland, New Jersey, New Mexico, New York, Oregon, Rhode Island, Vermont, and Washington, the Commonwealth of Massachusetts, the Commonwealth of Pennsylvania's Department of Environmental Protection, Washington Environmental Council, Climate Solutions, Environment Washington, Oregon Wild, Environment Oregon, 3E Strategies, Angus Duncan, Center For Biological Diversity and Friends of the Earth, and the Conservation Law Foundation.

## I.    INTRODUCTION

The EPA's motion for abeyance ("EPA Motion") does not want for irony. In short, EPA seeks to delay California's effort to end EPA's unreasonable delay in acting upon California's request for a waiver under Clean Air Act section 209(b). By refusing to commit to a definite deadline for issuing the formal documents that might explain its December 19, 2007, denial of California's request for a waiver, EPA forced California to maintain unreasonable delay litigation in both this Court and the Court of Appeals because it is uncertain which court has jurisdiction over such claims. California needs EPA to make its final decision and cannot afford to be caught in limbo between courts while EPA continues to stall. EPA ignores the fact that judicial economy is only one consideration under *Landis v. North American Co.*, 299 U.S. 248 (1936). The impact of a stay on the parties also must be considered, and every equitable consideration weighs in California's favor. EPA's motion should be denied.

In its effort to reduce the growing impacts of global warming, California adopted greenhouse gas emission standards for new motor vehicles sold in California starting in model year 2009. More than two years ago, in December 2005, California requested that EPA grant the waiver authorized by Clean Air Act section 209(b) that would allow California to enforce these standards. Since then, 17 other states have adopted, or set the wheels in motion to adopt, California's standards, as is their option under Section 177 of the Act. In May 2007, after the Supreme Court's favorable decision in *Massachusetts v. EPA*, ___ U.S. __, 127 S. Ct. 1438, 167

1  L.Ed.2d 248 (2007), California served notice that it would sue EPA for unreasonable delay if a

2  final decision was not issued within 180 more days.  Receiving no decision from EPA after that

3  180-day period, California filed this action to bring an end to EPA's delay.  California

4  simultaneously filed a similar action in the United States Court of Appeals for the District of

5  Columbia ("D.C. Circuit") because of legal uncertainty concerning which court had jurisdiction

6  over this action to end unreasonable administrative delay.

7       After California filed these actions, EPA Administrator Stephen Johnson announced his

8  decision to deny California's application in a December 19, 2007, letter to Governor

9  Schwarzenegger.  The Administrator stated that he had instructed his staff to write down his

10  "denial in more detail" and to have the "appropriate documents" ready for his signature "as soon

11  as possible."  Nearly two months have passed since the Administrator's letter, and California is

12  still waiting for these "details."  Without these "details", California may be stymied in its efforts

13  to obtain judicial review on the merits of EPA's denial of California's waiver application,

14  because EPA contends that there is no final reviewable decision until EPA issues those details.

15       In order to end the delay in providing these "details," California is filing a motion for

16  summary judgment on the unreasonable delay claim, and seeking a deadline for issuing the

17  "appropriate documents" to which the Administrator referred.  EPA has stated that it intends to

18  file a cross motion for summary judgment.

19       Rather than allow this action to proceed to a prompt resolution, however, EPA now seeks to

20  abate it, appealing to this Court's inherent scheduling discretion under *Landis*, 299 U.S. 248.

21  But *Landis* is not a freewheeling license to deny plaintiffs their day in court.  As a threshold

22  matter, *Landis* requires that the moving party demonstrate actual hardship or inequity.  EPA has

23  not even tried to make that showing, and for that reason alone its motion should be denied.

24       Moreover, a request for a stay requires that the Court "weigh competing interests,"

25  including harm to the opposing party, and EPA fails to meet its burden of demonstrating that

26  these competing interests weigh in its favor.  Any litigation delay prejudices California, because

27  the very point of California's action is to eliminate delay so that it can begin enforcing its

28  greenhouse gas regulations.  And it is questionable whether abating this action would promote

Plf CA and Plf-I  Opp. to EPA Motion to Abate

2

judicial efficiency.  If this motion is granted and the D.C. Circuit finds that it does not have

jurisdiction to decide California's unreasonable delay claim, California will be starting from

scratch in this Court many months from now, and EPA will have benefitted from more delay, at

California's expense.  In these circumstances, the balance of competing interests weighs strongly

against staying California's action.  Finally, EPA has the power to resolve its supposed concerns

about judicial efficiency simply by issuing the promised Federal Register documents needed to

"explain" its December 19th decision.  On January 24, 2008, the EPA Administrator told the

Senate Environment and Public Works Committee that EPA expects to issue those documents by

the end of February 2008.  Declaration of Jan Zabriskie filed herewith ("Zabriskie Decl."), ¶ 3.

That would moot both of these unreasonable delay actions and spare both courts further litigation

about EPA's conduct.

In view of, and in reliance on, EPA's latest representation as to the timing of its action,

California suggests that the Court defer consideration of this abeyance motion until March 3,

2008.  If EPA issues its final documents as promised by the end of February 2008, this action

will be moot.  If EPA fails to issue its final documents by the end of February, California

requests that the Court deny this abeyance motion and proceed to consider California's motion

for summary judgment on the merits as rapidly as possible.

## II.   BACKGROUND

### A.   California's Adoption of Greenhouse Gas Standards Under Its Clean Air Act Authority.

In its effort to reduce the impacts of global warming, the California Legislature in 2002

required the California Air Resource Board (CARB) to develop and adopt a regulation for the

control of greenhouse gas emissions by light-duty motor vehicles.  2002 Cal. Stats., Chptr. 200,

(AB1493), amending Cal. Health & Safety Code § 42823 and adding § 43018.5.  The Legislature

found that global warming would create "compelling and extraordinary" impacts on California,

such as potential reductions in the state's water supply, increases in catastrophic wildfires; and

potential damage to the state's coastline and ocean ecosystems due to increased storms and sea

level rise.  *Id*.  Complying with this directive, CARB approved regulations limiting greenhouse

Plf CA and Plf-I  Opp. to EPA Motion to Abate

gas emissions from new automobiles sold in California beginning with model year 2009.  (Cal. Code Regs. tit. 13, § 1961.1(a).)

**B.    California's Waiver Request and EPA's Response.**

Following adoption of the greenhouse gas regulations, CARB requested, on December 21, 2005, that the EPA waive federal preemption of these regulations under section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b).  Request for Judicial Notice filed herewith, ("RJN") Ex.1, p. 21260.  Clean Air Act section 209(b) requires that EPA waive preemption of its motor vehicle emission standards unless the EPA administrator makes findings that California failed to meet one of the three criteria specified in the Act.  42 U.S.C. § 7543(b)(1)(A)-(C).  EPA, however, did not issue a notice of hearing or solicit additional comments on California's waiver application until April 30, 2007, 16 months after CARB submitted its application.  RJN, Ex. 1, p. 21260.

When EPA failed to inform California of any work being done on the application, Governor Schwarzenegger wrote to President Bush, and copied the EPA Administrator, to request prompt EPA action.  RJN, Ex. 2.  Receiving no response or indication of any movement on his request, Governor Schwarzenegger again wrote the President and the EPA and requested prompt action. RJN, Ex. 3.  A senior EPA official finally responded to California on February 21, 2007, stating that nothing would be done on the waiver until the Supreme Court issued its decision in *Massachusetts v. EPA*.  RJN, Ex 4.  On April 2, 2007, the Supreme Court rejected EPA's position and held that the Clean Air Act authorizes the regulation of greenhouse gases. *Massachusetts v. EPA*, 127 S.Ct. at 1450.

Shortly after the *Massachusetts* decision, Governor Schwarzenegger gave EPA Administrator Johnson formal notice of his intent to sue EPA to end the unreasonable delay in issuing the waiver decision.  RJN, Ex. 5.  Administrator Johnson promised Governor Schwarzenegger on June 21, 2007, that he would "make a final determination on the State's request by the end of this year."  RJN, Ex. 6.  The Administrator assured the Governor that a decision "by the end of this year is both responsible and expeditious."  *Id.*  Five days later, on July 26, 2007, the Administrator reiterated to Congress his commitment to issue a decision by year's end:

1
2

> In recent written correspondence with California's Governor
> Schwarzenegger, I have committed to issuing a decision on the waiver by the
> end of this year. We will continue to inform the Committee of our progress
> in this matter.

3
4

RJN, Ex. 7 at pp. 2-3.

5

California initiated this action in November 2007, to challenge EPA's unreasonable delay in

6

acting on California's waiver application.  In response to this filing, the Administrator's

7

spokesman reiterated EPA's commitment to issue the final waiver decision by the end of 2007.

8

RJN, Ex. 8.  On the same day that it filed this action, California filed a similar action in the D.C.

9

Circuit.  *California v. U.S. Environmental Protection Agency*, D.C. Cir. Ct. No. 07-1457.

10

EPA Administrator Johnson finally announced his decision in a December 19, 2007, letter

11

to Governor Schwarzenegger.  RJN, Ex. 9.  The Administrator stated that he was going to deny

12

the waiver because "California does not have a 'need to meet compelling and extraordinary

13

circumstances.'" *Id*.  The Administrator stated that he had instructed his staff to write down his

14

"denial in more detail" and to have the "appropriate documents" ready for his signature "as soon

15

as possible." *Id*.  Nearly two months have passed since the Administrator's letter.  EPA still has

16

not provided the additional documentation.[1]

17

**C.   Procedural Posture.**

18

California filed a motion to expedite in the D.C. Circuit case, and EPA filed a motion to

19

dismiss the D.C. Circuit case or, alternatively, a motion that it be held in abeyance pending the

20

outcome of this case.  On January 3, 2008, the D.C. Circuit denied California's motion to

21

expedite, denied EPA's abeyance motion, and referred EPA's motion to dismiss to the merits

22

---

23
24
25
26
27
28

1.    California also filed a petition for review of the Administrator's December 19, 2007 decision in the United States Court of Appeals for the Ninth Circuit.  Case No. 08 70011.  Final actions of regional or local applicability may be challenged in the "appropriate circuit" unless EPA publishes a finding of "national scope or effect," in which case venue lies in the D.C. Circuit.  42 U.S.C. § 7607(b)(1).  Because EPA did not publish a finding of "nationwide scope or effect" in its December decision, venue properly lies in the Ninth Circuit.  EPA contends, however, that its December 19th letter was not "final action" for the purposes of judicial review.  Although California contends that EPA took final action on December 19th, California continues to pursue this unreasonable delay action in the event that EPA's characterization of the December 19th letter prevails.

1  panel.  See Attachment 4 to EPA Motion (ECF Document 25).  The D.C. Circuit set a briefing

2  schedule under which California's brief on both jurisdiction and the merits was due January 15,

3  2008, EPA's brief on February 14, and California's reply brief on February 28.  The Circuit

4  Court directed that the case be scheduled for argument on the first appropriate date following the

5  completion of briefing.  *Id.*

6       EPA has now filed this motion to abate this action until completion of the D.C. Circuit

7  action.  California has offered to suspend litigation of both unreasonable delay cases if EPA

8  would agree to a date certain for issuing its detailed decision, but EPA has not agreed to this

9  proposal.  Zabriskie Decl., Ex. A.

10 **III.  EPA HAS FAILED TO CARRY ITS BURDEN OF ESTABLISHING THAT IT WILL
       SUFFER HARDSHIP FROM A STAY AND THAT THE BALANCE OF
11     COMPETING INTERESTS WEIGHS IN ITS FAVOR**.

12      EPA contends that the Court should stay this action until the D.C. Circuit action is decided

13 because "[t]o address the identical claims simultaneously in this Court would be an inappropriate

14 use of judicial resources and create the risk of inconsistent decisions."  EPA Motion (ECF

15 Document 25) at 6.  The federal courts are reluctant to issue stays, however, because they

16 deprive litigants of timely resolution to their claims.  As a result, the courts impose significant

17 requirements on those seeking this relief.  EPA here has failed to carry its burden of

18 demonstrating that this action should be held in abeyance.

19      **A.  EPA Must Meet a Substantial Burden to Obtain a Stay of Ongoing Litigation.**

20      The leading case is *Landis v. North American Co.*, 299 U.S. 248 (1936).  Under *Landis*, a

21 district court has broad discretion to stay pending litigation.  See *Landis*, 299 U.S. at 254-55; *see

22 also*, *e.g.*, *GFL Advantage Fund Ltd. v. Colkitt*, 216 F.R.D. 189, 193 (D.D.C. 2003).

23 Despite this discretion, a court's power to issue a stay is not "without limitation."  *Williford v.

24 Armstrong World Indus., Inc*., 715 F.2d 124, 127 (4th Cir. 1983).  First, the proponent of the stay

25 bears the burden of establishing its need for a stay.  *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

26 "The party seeking a stay must justify it by clear and convincing circumstances outweighing

27 ///

28 ///

Plf CA and Plf-I  Opp. to EPA Motion to Abate

potential harm to the party against whom it is operative." *Williford*, 715 F.2d at 127; *see, e.g.*, *Painters' Pension Trust Fund v. Manganaro Corp.*, 693 F. Supp. 1222, 1224, 1225 n 1 (D.D.C. 1988).

As a threshold requirement, the moving party "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255; *see Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007); *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1075-76 (3d Cir. 1983); *Hisler v. Gallaudet Univ.*, 344 F. Supp. 2d 29, 36 (D.D.C. 2004). It is only in "rare circumstances" that a court will require that a party stand aside while another proceeding moves forward. *Landis*, 299 U.S. at 255; *see Commodity Futures Trading Com. v. Chilcott Portfolio Management, Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983).

Assuming that the moving party can make a sufficient showing of hardship or inequity, the district court then has an obligation to "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55. In carrying out this obligation, the court must consider prejudice or harm which a stay may impose on others; it is "well-settled" that the court's management of its caseload is not necessarily a sufficient ground to stay proceedings. *Dependable Highway*, 498 F.3d at 1066.

Because a plaintiff may be prejudiced by delay, a stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable and definite time. *See Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 864 (9th Cir.), cert. denied, 444 U.S. 827 (1979); *Dependable Highway*, 498 F.3d at 1066-67; *Craft v. Philip Morris Co.*, 2006 U.S. Dist. LEXIS 28081, at *29-30 (D. Mo. 2006). EPA's motion fails to meet these criteria.

///

///

///

///

**B.    EPA Has Failed to Demonstrate any Hardship or Inequity Justifying a Stay, and the Equitable Balance Weighs Entirely in California's Favor.**

     **1.    EPA's Motion Should Be Denied Because EPA Has Failed to Demonstrate Hardship or Inequity.**

For more than two years, California has been waiting for EPA to complete its decision making process on California's waiver application, and it was forced to bring this action to eliminate any further delay in EPA's process. California brought a similar action in the D.C. Circuit because of genuine uncertainty about which court had jurisdiction over unreasonable delay claims. A stay of this litigation therefore inherently prejudices California because it would postpone resolution of California's unreasonable delay claim and contribute to the very delay that California is attempting to prevent. This is more than sufficient to establish a "fair possibility" of prejudice to California if EPA's abeyance motion is granted.

Consequently, *Landis* requires that the moving party demonstrate "hardship or inequity" if the stay is not granted. EPA does not attempt to demonstrate that it will suffer hardship or inequity if the stay is not granted. In fact, the words "hardship", "inequity" or "inequities" do not even appear in EPA's memorandum. Nor can hardship be implied from EPA's argument. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1111 (9th Cir. 2005) ("being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*"); *Hisler*, 344 F.Supp. 2d at 35 (possibility of inconsistent rulings on same issue does not establish by itself a "'clear case of hardship'").

Because EPA has failed to meet this threshold *Landis* requirement, its abeyance motion should be denied.

     **2.    EPA's Motion Should Be Denied Because the Equities Weigh Entirely in California's Favor.**

In addition, EPA has failed to meet its burden of demonstrating that the balance of competing interests - including the impact on the opposing party - weigh in its favor. California would be prejudiced if this action were stayed, because California cannot enforce its regulations until EPA approves them or a court overrules EPA's denial. And every day matters, because

Plf CA and Plf-I  Opp. to EPA Motion to Abate

1   California's regulations are designed to become effective for the 2009 automobile model year,

2   which begins in this calendar year.  Each subsequent model year has more stringent standards.

3   Granting EPA's motion to hold this case in abeyance until the completion of the D.C. Circuit

4   case would effectively resolve this action in EPA's favor by allowing EPA to delay its final

5   decision making until at least the end of the D.C. Circuit case.  By eliminating any incentive for

6   EPA to complete its process until the end of the D.C. Circuit case, a stay of this litigation would

7   enable, if not encourage, EPA's conduct.

8       This litigation delay is not exaggerated, because the timing and outcome of the D.C. Circuit

9   case is uncertain.  The D.C. Circuit has already denied California's motion to expedite.  The

10  briefing in the D.C. Circuit case will not be completed until the end of February, and it is

11  unlikely that the D.C. Circuit will schedule oral argument any sooner than its April 2008,

12  calendar.  It is uncertain how long it would take the D.C. Circuit to issue its ruling after oral

13  argument, but the D.C. Circuit's median disposition time following oral argument is 1.9 months.

14  See 2002 Annual Report of the Director, Administrative Office of the United States Courts.

15  http://www.uscourts.gov/judbus2002/appendices/b04sep02.pdf.  After the D.C. Circuit issues its

16  decision, there remains the specter of rehearing or even rehearing en banc.  Therefore, it is

17  unlikely that the D.C. Circuit action would be completed until June 2008 at the earliest.

18      The D.C. Circuit, however, may well not reach the merits of California's unreasonable

19  delay claim.  It must first resolve whether the courts of appeals or the district courts have

20  jurisdiction over an unreasonable delay claim.  The issue is whether a 1990 amendment to 42

21  U.S.C. § 7604 effectively overruled *Sierra Club v. Thomas*, 828 F.2d 783 (D.C. Cir. 1987) and

22  shifted jurisdiction for all unreasonable delay cases to the district courts.  The outcome of this

23  jurisdictional issue is uncertain.  See generally Selmi, Jurisdiction to Review Agency Inaction

24  Under Federal Environmental Law, 72 Ind. L.J. 65, 69-70 (1996) (noting confusion over

25  jurisdictional boundaries in cases of agency inaction).

26      Notwithstanding the jurisdictional uncertainty that afflicts cases of unreasonable delay

27  under the Clean Air Act, there should be no mistake. California expressly asserts this Court's

28  jurisdiction under 42 U.S.C. § 7604.  Indeed, an important judicial policy makes review in the

Plf CA and Plf-I  Opp. to EPA Motion to Abate

9

district courts particularly appropriate if fact-finding is involved. *See Asbestec Constr. Servs., Inc. v. EPA*, 849 F.2d 765, 769 (2d Cir.1988) ("Since an administrative order reviewable under § 7607(b) may be filed only in the courts of appeals--which are not designed and are ill-equipped to serve as fact-finding forums--this factor strongly militates against finding the instant order a final one."); *cf. NRDC v. EPA*, 673 F.2d 400, 405 n. 15 (D.C.Cir.1982) ("[T]he great advantage the district courts have over the courts of appeals [is] their ability to use extensive fact finding mechanisms . . .")  Fact finding is an aspect of our case and it could become all the more important if the EPA has still not produced its decision document by the end of February. Therefore, there is a significant possibility that the D.C. Circuit will find that district courts have jurisdiction of unreasonable delay claims.  In that event, there will be even greater delay in resolving California's claim if this Court grants a stay, because this action would not resume until after the D.C. Circuit's decision many months from now.  This is the kind of indefinite litigation delay that has caused courts to reject similar requests for a stay.  *See Leyva*, 593 F.2d at 864; *Hisler*, 344 F. Supp. 2d at 35.

Because any litigation delay would undermine California's effort to obtain a decision from EPA and because it is very uncertain whether granting the stay would promote judicial efficiency, the balance of competing interests weighs heavily in California's favor.

**C.    EPA's Reasons for Seeking Abeyance Lack Merit.**

EPA provides a few reasons to support its motion, but none have merit.

First, EPA contends that abeyance would promote judicial efficiency because California has made "identical claims" in this Court and in the D.C. Circuit case.  EPA Motion (ECF Document 25) at 1, 5, 6.  EPA has carefully chosen its words.  Although the two cases present identical claims, they do not present identical issues.  As just noted, the jurisdictional issue over "unreasonable delay" claims is presented only in the D.C. Circuit.  As a result, the D.C. Circuit litigation will not necessarily resolve the claim presented in this litigation, because the D.C.

1    Circuit may find that it does not have jurisdiction over California's unreasonable delay claim.[2]

2        In addition, EPA contends that abatement is appropriate because it would avoid potentially

3    "inconsistent" decisions between this Court and the D.C. Circuit.  EPA Motion (ECF Document

4    at 25) at 2, 6.  There is no risk of inconsistent decisions.  District courts and the courts of appeals

5    are not coequal.  If the two courts were to reach different outcomes in this case, the court of

6    appeals decision controls.  The possibility that a court of appeals might reach a different decision

7    than a district court is not "judicial inefficiency" but a description of how the American judicial

8    system works.  It is not a waste of this Court's time to allow this action to proceed, even if it

9    turns out that the D.C. Circuit reaches a different conclusion.

10       EPA also cites two district court memorandum orders in which courts issued stays to avoid

11   duplicative litigation, *National Family Planning and Reproductive Health Ass'n v. Sullivan*,

12   1992 WL 345629 (D.D.C. Oct. 5, 1992)  *Inverworld, Ltd. v. United States*, 1993 WL 439831

13   (D.D.C. 1993).  These fact-specific cases are immediately distinguishable from this one because

14   neither court in those cases found that the opposing party would be prejudiced by a stay.  Nor did

15   either court hold that judicial economy is the exclusive concern in determining whether to issue a

16   *Landis* stay. Moreover, *Inverworld* concerned two alternative lower courts, neither of which

17   would be able to review the other.  In *National Family Planning and Reproduction Health Ass'n,*

18    there was no question that the circuit court had jurisdiction to decide the issues.  Thus, EPA's

19   authorities are distinguishable on multiple grounds.

20       Finally, EPA contends that, because California is actively pursuing its claims in the D.C.

21   Circuit, "California should not be heard to claim that it will be prejudiced by holding this case in

22   abeyance while it pursues its claim in its chosen forum."  EPA Motion (ECF Document 25) at 7.

23   As noted at the outset, EPA is seeking to exploit the jurisdictional predicament in which its

24

---

25       2.  EPA also states that California "suggested that it would be more appropriate to hold the
     action in this Court in abeyance."  EPA Motion (ECF Document 25) at 4.  EPA apparently is

26   referring to an ambiguous subheading in California's opposition to EPA's motion to abate in the
     D.C. Circuit.  Doc. 25-4 at 11.  As the text of California's opposition shows, California argued that

27   abatement in this Court would be appropriate if the Court of Appeal found that it had jurisdiction
     of California's unreasonable delay case. *Id*. That position is reasonable, and that remains

28   California's position.

Plf CA and Plf-I  Opp. to EPA Motion to Abate

inaction has placed California.  By failing to complete its decision making in a timely manner,

EPA compelled California to seek judicial relief in both courts because there is legitimate

uncertainty concerning which court has jurisdiction.  *Supra* at 8-9.  California needs both courts

to move ahead on these actions.  Until the litigation dust settles, it is unknown whether this

approach does or does not serve the needs of judicial economy.  But, as shown, judicial economy

is only one consideration in a *Landis* stay.  The impact of a stay on the parties must be

considered, and every equitable consideration weighs in California's favor.

### CONCLUSION

The Court should defer consideration of this motion until March 3, 2008.  If this action is not

moot by that date, the Court should consider EPA's motion and deny it.


Dated: February 8, 2008          Respectfully submitted,

                                 EDMUND G. BROWN JR.
                                 Attorney General of the State of California
                                 MARY E. HACKENBRACHT
                                 Senior Assistant Attorney General
                                 ELLEN M. PETER
                                 Supervising Deputy Attorney General
                                 JOSEPH BARBIERI
                                 MARK POOLE
                                 Deputy Attorneys General


                                 /s/    Jan Zabriskie
                                 JAN ZABRISKIE
                                 Deputy Attorney General

                                 Attorneys for Plaintiff State of California



                                  /s/  Yueh-ru Chu
                                 FOR THE STATE OF NEW YORK
                                 ANDREW M. CUOMO
                                 ATTORNEY GENERAL
                                 Katherine Kennedy
                                 Michael Myers
                                 Yueh-ru Chu
                                 Assistant Attorneys General
                                 120 Broadway, 26th Floor
                                 New York, NY 10271
                                 (212) 416-6588

*Lead Counsel for attorneys Representing Plaintiff*
*Intervenors the State of New York, Commonwealth*
*of Massachusetts, State of Arizona, State of Connecticut,*
*State of Illinois, State of Maine, State of Maryland,*
*State of New Jersey, State of New Mexico, State*
*of Oregon, Commonwealth of Pennsylvania Department*
*of Environmental Protection, State of Rhode Island, State of*
*Vermont, State of Washington*


 /s/  Frederick D. Augenstern
FOR THE COMMONWEALTH OF MASSACHUSETTS
MARTHA COAKLEY
ATTORNEY GENERAL
Frederick D. Augenstern
Assistant Attorneys General
Environmental Protection Division
1 Ashburton Place, 18th Floor
Boston, MA 02108
(617) 727-2200

*Co-Lead Counsel for attorneys Representing Plaintiff*
*Intervenors the State of New York, Commonwealth*
*of Massachusetts, State of Arizona, State of Connecticut,*
*State of Illinois, State of Maine, State of Maryland,*
*State of New Jersey, State of New Mexico, State*
*of Oregon, Commonwealth of Pennsylvania Department*
*of Environmental Protection, State of Rhode Island, State of*
*Vermont, State of Washington*


 /s/  Valerie Csizmadia
Valerie Csizmadia
Deputy Attorney General
Delaware Department of Justice
102 West Water Street, 3rd Floor
Dover, Delaware 19904
(302) 739-4636

*Representing Plaintiff Intervenor State of Delaware*


 /s/  Matt Kenna
Matt Kenna (CO Bar No. CO0028)
Western Environmental Law Center
679 E. 2nd Ave., Suite 11B
Durango, CO 81301
(970) 385-6941

*Representing Plaintiff Intervenors Washington Environmental*
*Council, Climate Solutions, Environment Washington, Oregon*
*Wild, Environment Oregon, 3E Strategies, Angus Duncan, Center*
*For Biological Diversity and Friends of the Earth*

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  MARY E. HACKENBRACHT
   Senior Assistant Attorney General
3  ELLEN M. PETER
   Supervising Deputy Attorney General
4  JOSEPH BARBIERI
   MARK POOLE
5  Deputy Attorneys General
   JAN ZABRISKIE
6  Deputy Attorney General
    1300 I Street, Suite 125
7  P.O. Box 944255
   Sacramento, CA 94244-2550
8  Telephone:  (916) 322-5181
   Fax:  (916) 327-2319
9  Email:  jan.zabriskie@doj.ca.gov

10 Attorneys for Plaintiff

11          IN THE UNITED STATES DISTRICT COURT

12            FOR THE DISTRICT OF COLUMBIA

13

14 **STATE OF CALIFORNIA, by and through**          1:07-CV-02024-RCL
   **ARNOLD SCHWARZENEGGER,**
15 **GOVERNOR OF THE STATE OF**                     **DECLARATION OF JAN**
   **CALIFORNIA, and the CALIFORNIA AIR**          **ZABRISKIE IN SUPPORT OF**
16 **RESOURCES BOARD,**                             **CALIFORNIA AND PLAINTIFF-**
                                        Plaintiff,  **INTERVENORS' OPPOSITION TO**
17 **COMMONWEALTH OF MASSACHUSETTS,**               **ENVIRONMENTAL**
   **et al.,**                                      **PROTECTION AGENCY'S**
18                            Intervenor Plaintiffs, **MOTION TO ABATE**
                                                    **(FRE, Rule 201)**
19 **WASHINGTON ENVIRONMENTAL**
   **COUNCIL, et al.,**
20
                              Intervenor Plaintiffs,
21 **STATE OF DELAWARE**

22                             Intervenor Plaintiff,
   and
23
   **NATURAL RESOURCES DEFENSE**
24 **COUNCIL, et al.,**

25                            Intervenor Plaintiffs,
   v.
26
   **THE UNITED STATES ENVIRONMENTAL**
27 **PROTECTION AGENCY, and STEPHEN L.**
   **JOHNSON, Administrator,**
                                        Defendant.
28

1    1.    I am a Deputy Attorney General for the State of California and licensed to practice

2    before all courts of this State.  I am certified to appear in the United States District Court for

3    the District of Columbia by virtue of Local Civil Rule 83.2(f).  I have personal knowledge

4    of the facts set forth herein, and if called as a witness, I could and would competently testify

5    thereto.

6    2.    Attached hereto as Exhibit A is a true and correct copy of my January 29, 2008,

7    letter to Norman L. Rave, Jr., counsel for EPA in this action.

8    3.    On January 24, 2008, I listened to and watched, via webcast, Stephen L.  Johnson,

9    Administrator for the United States Environmental Protection Agency, testify before the

10    United States Senate Committee on the Environment and Public Works.  During the course

11    of that hearing, Mr.  Johnson testified that the EPA expected to issue the remaining decision

12    documents for California's waiver request by the end of February 2008.

13    I declare under penalty of perjury that the foregoing is true and correct.

14    Executed on February 8, 2007,

15

16    _____ /s/ Jan Zabriskie_____

17    at Sacramento, California

18

19

20

21

22

23

24

25

26

27

28

U.S. DISTRICT COURT, DISTRICT OF COLUMBIA
Case No. 1:07-cv-02024-RCL

Declaration of Jan Zabriskie in Support of
Plaintiff California and Plaintiff-Intervenors'
Motion for Summary Judgment

# EXHIBIT A



*EDMUND G. BROWN JR.*
*Attorney General*

*State of California*
*DEPARTMENT OF JUSTICE*

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Telephone: (916) 322-5181
Facsimile:(916) 327-2319
E-Mail: Jan.Zabriskie@doj.ca.gov

*via email and regular mail*

January 29, 2008

Norman L. Rave, Jr., Esq.
U.S. Department of Justice
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986

RE:    *State of California v. United States Environmental Protection Agency, et al.*,
U. S. Court of Appeals for the District of Columbia Circuit, Case No. 07-1457
U. S. District Court for the District of Columbia, Case No. 1:07-CV-020240-RCL

Dear Norman:

As we discussed yesterday on the telephone, the Administrator for the Environmental Protection Agency, Stephen L. Johnson, testified on January 24 before the United States Senate Committee on the Environment and Public Works regarding California's request for waiver of federal preemption of its Regulation to Control Greenhouse Gas Emissions from Motor Vehicles under 42 U.S.C. § 7543(b). In the course of his testimony, Mr. Johnson said that he expects to issue the detailed decision documents on EPA's denial of California's request by the end of February.

In light of the Administrator's statement on Thursday, our office proposed yesterday that the parties to the two unreasonable delay cases enter into a stipulation that EPA would publish its decision in the Federal Register by a date certain. You indicated the proposal would require the stipulation to be immediately lodged with both courts and then the settlement published for comment. We originally made a similar proposal for an enforceable decision date to EPA in October before California filed suit. This offer was reiterated to you in my letters of November 15 and November 29, 2007, after California filed suit.

As you know, the Administrator made his decision on December 19, 2007, but the legal effect of that decision remains in dispute. With his testimony on Thursday to the Senate Committee, the Administrator appears ready to make that dispute moot. Consistent with these events, California is willing to suspend the litigation on the two unreasonable delay cases during this interim period if EPA will enter into a stipulation for a date certain and initiate the process to obtain a court order. We are also willing to stipulate to a compliance date that allows EPA extra

Norman L. Rave, Jr.
January 29, 2008
Page 2

time, for example, until March 17, 2008, to allow the time for publication in the Federal Register. You indicated yesterday that you would let EPA know about our proposal, and this letter confirms the details. Please let me know if the EPA is interested in such a stipulation or if it wishes to propose and alternate publication date. Although this proposal is subject to the intervenors' agreement, I expect they will agree.

                                    Sincerely,


                                    JAN ZABRISKIE
                                    Deputy Attorney General

                          For     EDMUND G. BROWN JR.
                                    Attorney General


JZ:

30382785_2.wpd

EDMUND G. BROWN JR.
Attorney General of the State of California
MARY E. HACKENBRACHT
Senior Assistant Attorney General
ELLEN M. PETER
Supervising Deputy Attorney General
JOSEPH BARBIERI
MARK POOLE
Deputy Attorneys General
JAN ZABRISKIE
Deputy Attorney General
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone:  (916) 322-5181
  Fax:  (916) 327-2319
  Email:  jan.zabriskie@doj.ca.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

1:07-CV-02024-RCL

| | |
|---|---|
| **STATE OF CALIFORNIA, by and through ARNOLD SCHWARZENEGGER, GOVERNOR OF THE STATE OF CALIFORNIA, and the CALIFORNIA AIR RESOURCES BOARD,**<br><br>Plaintiff,<br><br>**COMMONWEALTH OF MASSACHUSETTS, et al.,**<br><br>Intervenor Plaintiffs,<br><br>**WASHINGTON ENVIRONMENTAL COUNCIL, et al.,**<br><br>Intervenor Plaintiffs,<br><br>**STATE OF DELAWARE**<br><br>Intervenor Plaintiff, and<br><br>**NATURAL RESOURCES DEFENSE COUNCIL, et al.,**<br><br>Intervenor Plaintiffs,<br><br>v.<br><br>**THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and STEPHEN L. JOHNSON, Administrator,**<br><br>Defendant. | **PLAINTIFF CALIFORNIA AND PLAINTIFF-INTERVENORS' REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO ENVIRONMENTAL PROTECTION AGENCY'S MOTION TO ABATE (FRE, Rule 201)** |

1    Plaintiff State of California and Plaintiff-Intervenors identified below request that this Court

2  take judicial notice of the following documents, copies of which are attached hereto, pursuant to

3  Federal Rules of Evidence, Rule 201.

4    Exhibit 1.    *California State Motor Vehicle Pollution Control Standards; Request for Waiver*

5  *of Federal Preemption; Opportunity for Public Hearing*, 72 Fed. Reg. 21260 (April 30, 2007.)

6    Exhibit 2.    April 11, 2006, news release of April 10, 2006, letter from Arnold

7  Schwarzenegger, Governor of California, to George Bush, President of the United States of

8  America.    Exhibit 3.    October 24, 2006, letter from Arnold Schwarzenegger, Governor of

9  California, to George Bush, President of the United States of America.

10    Exhibit 4.    February 21, 2007, letter from William Wehrum, US EPA Acting Assistant

11  Administrator,  to Catherine Witherspoon, CARB Executive Officer.

12    Exhibit 5.    April 25, 2007, letter from Arnold Schwarzenegger, Governor of California, to

13  Stephen L. Johnson, US EPA Administrator.

14    Exhibit 6.    June 21, 2007, letter from Stephen L.  Johnson, US EPA Administrator, to

15  Arnold Schwarzenegger, Governor of California.

16    Exhibit 7.    Testimony of Stephen L. Johnson, EPA Administrator, Before the Committee

17  on Environment & Public Works, United States Senate, July 26, 2007.

18    Exhibit 8.    Samantha Young, Associated Press, "California Sues EPA Over Auto

19  Emissions"; November 8, 2007.

20    Exhibit 9.    December 19, 2007, letter from Stephen L.  Johnson, US EPA Administrator,

21  to Arnold Schwarzenegger, Governor of California.

1  Dated: February 8, 2008        Respectfully submitted,

2                                 EDMUND G. BROWN JR.
                                   Attorney General of the State of California
3                                  MARY E. HACKENBRACHT
                                   Senior Assistant Attorney General
4                                  ELLEN M. PETER
                                   Supervising Deputy Attorney General
5                                  JOSEPH BARBIERI
                                   MARK POOLE
6                                  Deputy Attorneys General

7                                  /s/    Jan Zabriskie
                                   JAN ZABRISKIE
8                                  Deputy Attorney General

9                                  Attorneys for Plaintiff State of California

10                                  /s/  Yueh-ru Chu
                                   FOR THE STATE OF NEW YORK
11                                 ANDREW M. CUOMO
                                   ATTORNEY GENERAL
12                                 Katherine Kennedy
                                   Michael Myers
                                   Yueh-ru Chu
13                                 Assistant Attorneys General
                                   120 Broadway, 26th Floor
14                                 New York, NY 10271
                                   (212) 416-6588

15
                                   *Lead Counsel for attorneys Representing Plaintiff*
16                                 *Intervenors the State of New York, Commonwealth*
                                   *of Massachusetts, State of Arizona, State of Connecticut,*
17                                 *State of Illinois, State of Maine, State of Maryland,*
                                   *State of New Jersey, State of New Mexico, State*
18                                 *of Oregon, Commonwealth of Pennsylvania Department*
                                   *of Environmental Protection, State of Rhode Island, State of*
19                                 *Vermont, State of Washington*

20
                                    /s/  Frederick D. Augenstern
21                                 FOR THE COMMONWEALTH OF MASSACHUSETTS
                                   MARTHA COAKLEY
22                                 ATTORNEY GENERAL
                                   Frederick D. Augenstern
23                                 Assistant Attorneys General
                                   Environmental Protection Division
24                                 1 Ashburton Place, 18th Floor
                                   Boston, MA 02108
25                                 (617) 727-2200

26                                 *Co-Lead Counsel for attorneys Representing Plaintiff*
                                   *Intervenors the State of New York, Commonwealth*
27                                 *of Massachusetts, State of Arizona, State of Connecticut,*
                                   *State of Illinois, State of Maine, State of Maryland,*
28

1

*State of New Jersey, State of New Mexico, State*
*of Oregon, Commonwealth of Pennsylvania Department*

2

*of Environmental Protection, State of Rhode Island, State of*
*Vermont, State of Washington*

3

4

 /s/  Valerie Csizmadia
Valerie Csizmadia

5

Deputy Attorney General
Delaware Department of Justice

6

102 West Water Street, 3rd Floor
Dover, Delaware 19904

7

(302) 739-4636

8

*Representing Plaintiff Intervenor State of Delaware*

9

10

 /s/  Matt Kenna
Matt Kenna (CO Bar No. CO0028)

11

Western Environmental Law Center
679 E. 2nd Ave., Suite 11B

12

Durango, CO 81301
(970) 385-6941

13

14

*Representing Plaintiff Intervenors Washington Environmental*
*Council, Climate Solutions, Environment Washington, Oregon*

15

*Wild, Environment Oregon, 3E Strategies, Angus Duncan, Center*
*For Biological Diversity and Friends of the Earth*

16

17

18

19

20

21

22

23

24

25

26

27

28

maintaining information, and disclosing and providing information; adjust the existing ways to comply with any previously applicable instructions and requirements which have subsequently changed; train personnel to be able to respond to a collection of information; search data sources; complete and review the collection of information; and transmit or otherwise disclose the information.

Respondents/Affected Entities: Secondary brass and bronze production facilities, primary copper/zinc/lead smelters, primary aluminum reduction plants and ferroalloy production facilities.

*Estimated Number of Respondents:* 18.

*Frequency of Response:* Initially and semi-annually.

*Estimated Total Annual Hour Burden:* 4,914.

*Estimated Total Annual Cost:* $442.450 which includes $0 annualized capital startup costs, $131,600 in annualized Operation and Maintenance costs (O&M), and $310,850 annualized labor costs.

*Changes in the Estimates:* There is no change in the total estimated burden currently identified in the OMB Inventory of Approved ICR Burdens.

Dated: April 12, 2007.

**Robert Gunter,**
*Acting Director, Collection Strategies Division.*

[FR Doc. E7–8181 Filed 4–27–07; 8:45 am]

**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

[AMS–FRL–8307–6]

### California State Motor Vehicle Pollution Control Standards; Request for Waiver of Federal Preemption; Opportunity for Public Hearing

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice of opportunity for public hearing and comment.

**SUMMARY:** The California Air Resources Board (CARB) has notified EPA that it has adopted Greenhouse Gas Emission (GHG) regulations for passenger cars, light-duty trucks and medium-duty passenger vehicles beginning with the 2009 model year (MY). By letter dated December 21, 2005, CARB submitted a request that EPA grant a waiver of preemption under section 209(b) of the Clean Air Act (CAA), 42 U.S.C. 7543(b) for these regulations. This notice announces that EPA has scheduled a

public hearing concerning California's request and that EPA is accepting written comment on the request.

**DATES:** EPA has scheduled a public hearing concerning CARB's request on May 22, 2007, beginning at 9 a.m. Any party planning to present oral testimony should notify EPA by May 15, 2007, expressing its interest. Any party may submit written comments by June 15, 2007.

**ADDRESSES:** EPA will make available for in person inspection, at the Air and Radiation Docket and Information Center, written comments received from interested parties, in addition to any testimony given at the public hearing. The official public docket is the collection of materials that is available for public viewing at the Air and Radiation Docket in the EPA Docket Center, (EPA/DC) EPA West, Room B102, 1301 Constitution Ave., NW., Washington, DC. The EPA Docket Center Public Reading Room is open from 8:30 to 4:30 p.m., Monday through Friday, excluding legal holidays. The telephone number for the Public Reading Room is (202) 566–1744, and the telephone number for the Air and Radiation Docket is (202) 566–1743. The reference number for this docket is EPA–HQ–OAR–2006–0173. Parties wishing to present oral testimony at the public hearing should provide notice to David Dickinson at the address noted below. We plan to hold the public hearing at EPA Headquarters in Washington, DC.

**FOR FURTHER INFORMATION CONTACT:** David Dickinson, Compliance and Innovative Strategies Division (6405J), U.S. Environmental Protection Agency, 1200 Pennsylvania Ave, NW., Washington, DC 20460. Telephone: (202) 343–9256, Fax; (202) 343–2804, e-mail address: *Dickinson.David@EPA.GOV.* EPA will make available an electronic copy of this Notice on the Office of Transportation and Air Quality's (OTAQ's) homepage (*http://www.epa.gov/otaq/*). Users can find this document by accessing the OTAQ homepage and looking at the path entitled "Regulations." This service is free of charge, except any cost you already incur for Internet connectivity. Users can also get the official **Federal Register** version of the Notice on the day of publication on the primary website: (*http://www.epa.gov/docs/fedrgstr/EPA-AIR/*).

Please note that due to differences between the software used to develop the documents and the software into which the documents may be

downloaded, changes in format, page length, etc., may occur.

*For Obtaining and Submitting Electronic Copies of Comments:* Submit your comments, identified by Docket ID No. EPA–HQ–OAR–2006–0173, by one of the following methods:

• *http://www.regulations.gov:* Follow the on-line instructions for submitting comments.

• *E-mail: dickinson.david@epa.gov.*

• *Fax:* (202)343–2804.

• *Mail:* U.S. Environmental Protection Agency, EPA West (Air Docket), 1200 Pennsylvania Ave., NW., Room B108, Mail Code 6102T, Washington, DC 20460. Attention Docket ID No. EPA–HQ–OAR–2006–0173. Please include a total of two copies.

• *Hand Delivery:* EPA Docket Center, EPA/DC, EPA West, Room B102, 1301 Constitution Ave., NW., Washington, DC Such deliveries are only accepted during the Docket's normal hours of operation, and special arrangements should be made for deliveries of boxed information. Instructions: Direct your comments to Docket ID No EPA–HQ–OAR–2006–0173.

EPA's policy is that all comments received will be included in the public docket without change and may be made available online at *http://www.regulations.gov*, including any personal information provided, unless the comment includes information claimed to be Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Do not submit information that you consider to be CBI or otherwise protected through *http://www.regulations.gov* or e-mail.

The *http://www.regulations.gov* web site is an "anonymous access" system, which means EPA will not know your identity or contact information unless you provide it in the body of your comment. If you send an e-mail comment directly to EPA without going through *http://www.regulations.gov* your e-mail address will be automatically captured and included as part of the comment that is placed in the public docket and made available on the Internet. If you submit an electronic comment, EPA recommends that you include your name and other contact information in the body of your comment and with any disk or CD–ROM you submit. If EPA cannot read your comment due to technical difficulties and cannot contact you for clarification, EPA may not be able to consider your comment. Electronic files should avoid the use of special characters, any form of encryption, and be free of any defects or viruses. *Docket:* All documents in the

docket are listed in the *http://www.regulations.gov* index. Although listed in the index, some information is not publicly available, e.g., CBI or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, will be publicly available only in hard copy.

**SUPPLEMENTARY INFORMATION:**

**(A) Background and Discussion**

Section 209(a) of the Clean Air Act, as amended ("Act"), 42 U.S.C. 7543(a), provides:

No State or any political subdivision thereof shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines subject to this part. No state shall require certification, inspection or any other approval relating to the control of emissions from any new motor vehicle or new motor vehicle engine as condition precedent to the initial retail sale, titling (if any), or registration of such motor vehicle, motor vehicle engine, or equipment.

Section 209(b) of the Act requires the Administrator, after notice and opportunity for public hearing, to waive application of the prohibitions of section 209(a) for any state that has adopted standards (other than crankcase emission standards) for the control of emissions from new motor vehicles or new motor vehicle engines prior to March 30, 1966, if the state determines that the state standards will be, in the aggregate, at least as protective of public health and welfare as applicable Federal standards. California is the only state that is qualified to seek and receive a waiver under section 209(b). The Administrator must grant a waiver unless he finds that (A) the determination of the state is arbitrary and capricious, (B) the state does not need the state standards to meet compelling and extraordinary conditions, or (C) the state standards and accompanying enforcement procedures are not consistent with section 202(a) of the Act. Previous decisions granting waivers of Federal preemption for motor vehicles have stated that State standards are inconsistent with section 202(a) if, for example, there is inadequate lead time to permit the development of the necessary technology giving appropriate consideration to the cost of compliance within that time period or if the Federal and State test procedures impose inconsistent certification procedures.[1]

CARB's December 21, 2005, letter to the Administrator notified EPA that the CARB Board had adopted its GHG regulations at a public hearing on September 23–24, 2004 and subsequently California's Office of Administrative Law approved the regulatory action on September 15, 2005. The amendment and adoption of regulations can be found at title 13, California Code of Regulations (CCR), sections 1900, 1961 and 1961.1.

Please provide comment as to whether (a) California's determination that its motor vehicle emission standards are, in the aggregate, at least as protective of public health and welfare as applicable Federal standards is arbitrary and capricious, (b) California needs such standards to meet compelling and extraordinary conditions, and (c) California's standards and accompanying enforcement procedures are consistent with section 202(a) of the Clean Air Act. Within the context of these statutory criteria we also request comment on the following: (1) Given that the regulations referenced in the December 21, 2005, request letter relate to global climate change, should that have any effect on EPA's evaluation of the criteria, and if so, in what manner; (2) whether the United States Supreme Court's decision, issued on April 2, 2007 (549 U.S. _____ (2007)), regarding the regulation of emissions of greenhouse gases from new motor vehicles under Title II of the Clean Air Act, is relevant to EPA's evaluation of the three criteria, and if so, in what manner; and (3) whether the Energy Policy and Conservation Act (EPCA) fuel economy provisions are relevant to EPA's consideration of this petition or to CARB's authority to implement its vehicle GHG regulations.

*Procedures for Public Participation*

In recognition that public hearings are designed to give interested parties an opportunity to participate in this proceeding, there are no adverse parties as such. Statements by participants will not be subject to cross-examination by other participants without special approval by the presiding officer. The presiding officer is authorized to strike from the record statements that he or she deems irrelevant or repetitious and to impose reasonable time limits on the duration of the statement of any participant.

The Agency will make a verbatim record of the proceedings. Interested

parties may arrange with the reporter at the hearing(s) to obtain a copy of the transcript at their own expense. EPA will keep the record open until June 15, 2007. Upon expiration of the comment period, the Administrator will render a decision on CARB's request based on the record of the public hearing, relevant written submissions, and other information that he deems pertinent.

Persons with comments containing proprietary information must distinguish such information from other comments to the greatest possible extent and label it as "Confidential Business Information" (CBI). If a person making comments wants EPA to base its decision in part on a submission labeled CBI, then a non-confidential version of the document that summarizes the key data or information should be submitted for the public docket. To ensure that proprietary information is not inadvertently placed in the docket, submissions containing such information should be sent directly to the contact person listed above and not to the public docket. Information covered by a claim of confidentiality will be disclosed by EPA only to the extent allowed and by the procedures set forth in 40 CFR part 2. If no claim of confidentiality accompanies the submission when EPA receives it, EPA will make it available to the public without further notice to the person making comments.

Dated: April 24, 2007.

**William L. Wehrum,**

*Acting Assistant Administrator, Office of Air and Radiation.*

[FR Doc. E7–8168 Filed 4–27–07; 2:09 pm]

**BILLING CODE 6560–50–P**

---

**ENVIRONMENTAL PROTECTION AGENCY**

**[EPA-HQ-OPP-2006-0936; FRL-8124-5]**

**Notice of Filing of Pesticide Petitions for Residues of Pesticide Chemicals in or on Various Commodities**

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Notice.

---

**SUMMARY:** This notice announces the initial filing of pesticide petitions proposing the establishment or modification of regulations for residues of pesticide chemicals in or on various commodities.

**DATES:** Comments must be received on or before May 30, 2007.

**ADDRESSES:** Submit your comments, identified by docket identification (ID) number and the pesticide petition

---

[1] To be consistent, the California certification procedures need not be identical to the Federal certification procedures. California procedures would be inconsistent, however, if manufacturers would be unable to meet the state and the Federal

requirements with the same test vehicle in the course of the same test. See, e.g., 43 FR 32182 (July 25, 1978).



# Office of the Governor

ARNOLD SCHWARZENEGGER
THE PEOPLE'S GOVERNOR

## PRESS RELEASE

04/11/2006  GAAS:224:06  FOR IMMEDIATE RELEASE

### Letter from Gov. Schwarzenegger to President Bush Regarding Greenhouse Gas Emissions Waiver

The following letter was sent by Governor Arnold Schwarzenegger to President George W. Bush regarding a requested waiver of federal preemption of California's Greenhouse Gas Emissions Standards.

April 10, 2006

The President
The White House
1600 Pennsylvania Avenue NW
Washington, DC 20500

Dear Mr. President,

California has a thirty-five year tradition of leadership in minimizing the amount of automobile pollution and striving for cleaner air for our citizens. The hallmarks of California's leadership have been progressively cleaner passenger vehicle technologies and well-crafted regulations that jointly reduce greenhouse gas emissions from automobiles. Presently, these regulations have been adopted by ten other states representing one-third of the country's motor vehicle market.

On December 21, 2005, the California Air Resources Board sent your Administration the attached letter and associated documents requesting a waiver of federal preemption of California's Greenhouse Gas Emissions Standards. I am writing to reiterate the urgency of approving California's request to address global warming.

Beginning in model year 2009, the new standards will phase in and ramp up over eight years to cut global warming emissions nearly 30 percent by model year 2016. The standards can be met with technology already in the market and will save vehicle owners in lower maintenance and fuel costs over the lifetimes of the vehicle.

The Clean Air Act expressly recognizes California's right to set its own vehicle emission standards, and the right of other states to adopt those standards. The Environmental Protection Agency has granted California's waiver request more than 40 times in the last three decades. I urge you to continue this practice.

Global warming is a grave threat to California's water supply, our coastline, our environment, our economy and the public health of our citizens. And global warming is likely worsening the severe weather that has caused so much damage of late in the States. This imminent danger has led my Administration to actively pursue strategies to reduce greenhouse gas emissions in order to protect our environment while also strengthening our economy.

I ask for your assistance in directing the Environmental Protection Agency to grant California's waiver without further delay. California and those other states that want to be free to protect the environment deserve nothing less.

Sincerely,

Governor Arnold Schwarzenegger

cc: Stephen L. Johnson, Administrator,
United States Environmental Agency

Link to California Air Resources Board Letter Requesting Waiver



GOVERNOR ARNOLD SCHWARZENEGGER

October 24, 2006


The President
The White House
Washington, DC  20500

Dear Mr. President,

I am writing to again urge you to take action on a long-standing request for a waiver of federal preemption of California's greenhouse gas emissions standards for vehicles.

On December 21, 2005, the California Air Resources Board requested that the Environmental Protection Agency (EPA) grant a waiver to allow California to exercise its authority under the Clean Air Act to set vehicle emissions standards in the state.  The EPA has granted this request more than 40 times over the past three decades.  Yet this latest request has been ignored with no explanation.  I wrote to you on April 10, 2006, to ask for your assistance in directing the EPA to grant this waiver request without further delay.  There is still no decision or even an indication of movement on my request.

Now, nearly one year after California's initial request, I am asking again for your help with the immediate approval of this waiver.  Further delay will result in California losing its right as a state to develop forward-thinking environmental policies.  I urge you to take this action so that California can continue to be a global leader in the regulation of vehicle emissions and help stimulate American economic growth with the development of new industries and technologies in this area.

In the absence of a coherent federal policy to limit harmful greenhouse gas emissions, I worked with the California Legislature to sign into law AB 32, the California Global Warming Solutions Act.  AB 32 balances market mechanisms and the needs of our economy, while establishing historic greenhouse gas emissions goals and creating the world's most comprehensive emissions reduction program.  This effort will allow us to reduce emissions and costs to industry, and stimulate innovation so that more reductions can be realized over time.  However, in order to continue our progress, we need the federal government to recognize California's right to set its own vehicle emissions standards as we have previously requested.

The President
October 24, 2006
Page two

Ignoring the challenge of climate change will not only threaten our collective future, but will be a significant drag on the economic vitality of our state and nation within the world economy. The economic arguments for market-based solutions to global warming are overwhelming. Cutting-edge technologies in this area are creating entire new industries, and properly designed emissions trading programs can reduce compliance costs significantly compared to alternatives.

I know that we can craft policies that help business and enhance, not compromise, environmental goals. I urge you to do your part in helping us take this historic step forward.

Sincerely,

Arnold Schwarzenegger

cc: Stephen L. Johnson, Administrator
    United States Environmental Protection Agency



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

FEB 2 1 2007

OFFICE OF
AIR AND RADIATION

Ms. Catherine Witherspoon
Executive Officer
California Air Resources Board
1001 I Street
Sacramento, California 95812

Dear Ms. Witherspoon:

  I am writing in response to, and to provide an update regarding, the December 21, 2005, request from the California Air Resources Board (CARB) that the Environmental Protection Agency (EPA) grant the State of California a waiver of preemption, under Section 209(b) of the Clean Air Act, for CARB's greenhouse gas emission regulations for certain new motor vehicles beginning with the 2009 model year.

  The timing of EPA's consideration of CARB's waiver request is related to the Massachusetts v. EPA case, No. 05-1120, currently pending before the United States Supreme Court. That case involves EPA's determination that it does not have authority under the Clean Air Act to regulate greenhouse gas emissions from new motor vehicles in order to address global climate change, as well as EPA's assertion that, even if it did have such authority, it properly exercised its discretion at that time in deciding not to so regulate. EPA believes that the decision and opinion from the Supreme Court in the Massachusetts case, anticipated by the close of the Court's current term in June 2007, could be directly relevant to issues EPA must address in the context of CARB's waiver request. Because of this, EPA intends to proceed with the waiver request after the Supreme Court has issued its decision in Massachusetts v. EPA.

  We note that related issues are currently pending in other proceedings. For example, the U.S. District Court for the Eastern District of California, in Central Valley Chrysler-Jeep v. Witherspoon, recently stayed its proceedings pending the announcement of the Supreme Court's decision in Massachusetts v. EPA because of the relationship of the enforcement of California's greenhouse gas regulations to the issues pending before the Supreme Court.[1] In addition, the Department of Transportation, National Highway Traffic Safety Administration's proposed regulation that, among other things, adopts a CAFE standard for light trucks manufactured in model years 2008-2011 is currently before the U.S. Court of Appeals for the Ninth Circuit. See

---

[1] Central Valley Chrysler-Jeep v. Witherspoon, No. 04-6663, Memorandum Opinion and Order on Defendants' Motion for Summary Judgment on the Issue of Ripeness and/or Mootness and Order for Stay of Further Proceedings, slip op. at 5, 19, 22 (Jan. 16, 2007 E.D. Cal.).

Center for Biological Diversity v. National Hwy. Traffic Safety Admin., Nos. 06-71891, et al. (addressing challenge to Average Fuel Economy Standards for Light Trucks Model Years 2008-2011, 71 Fed. Reg. 17566, 17679 (April 6, 2006)).[2]

EPA has placed California's request and related materials into its official electronic docket, which can be accessed at regulations.gov with the reference number EPA-HQ-OAR-2006-0173.

If you have any questions, please feel free to contact me, or your staff can contact David Dickinson, in EPA's Office of Transportation and Air Quality, at (202) 343-9256.

Sincerely,

William L. Wehrum
Acting Assistant Administrator

---

[2] See also Green Mountain Chrysler-Plymouth-Dodge, et al. v. Torti, et al., No. 2:05-CV-302 (D. Vt.) (challenging, as being in conflict with and preempted by federal law, the Vermont Low Emissions Vehicle Program that proposes to regulate, among other things, carbon dioxide emissions from automobiles); Association of Internat'l Auto. Mfrs., et al. v. Sullivan, et al., No. 06-69T (D. R.I.) (similar case, but challenging Rhode Island regulations proposing to control emissions of carbon dioxide, methane, nitrous oxide and hydrofluorocarbons).



GOVERNOR ARNOLD SCHWARZENEGGER

April 25, 2007

The Honorable Stephen L. Johnson
Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue
Washington, DC 20460

RE:   Regulations to Control Greenhouse Gas Emissions from Motor Vehicles; Request for
       Waiver of Preemption Under Clean Air Act Section 209(b),
       DOCKET ID EPA-HQ-OAR-2006-0173

Dear Mr. Administrator,

Thank you for speaking with me today regarding our request for a federal preemption waiver for
California's motor vehicle greenhouse gas emissions standards.

While I support the timing of the hearing and comment deadline you have announced, your
agency's schedule for action must take into account that our waiver request was submitted more
than 16 months ago. Failure to take action by the end of October would mean that more than 22
months have passed with no decision. This is clearly an unreasonable delay under the Clean Air
Act, and I ask that the EPA issue its decision on California's request within the next 180 days in
order to avoid legal action by CARB.

This letter also provides you with notice of our intent to commence an action, if necessary, under
Clean Air Act Sections 304(a) and 307(b) (42 U.S.C. §§ 7604(a), 7607(b), and Administrative
Procedure Act Section 706 (5 U.S.C. § 706), to compel this unreasonably delayed agency action.
If this action by CARB is required, we will seek declaratory and injunctive relief, and other relief
as the court may deem appropriate.

The Honorable Stephen L. Johnson
April 25, 2007
Page two


I applaud you for taking this long overdue and important step toward addressing California's
waiver request. We hope that your announcement reflects not only a response to the Supreme
Court's decision in *Massachusetts et al. v. EPA* ((2007) ___ U.S. ___ [127 S.Ct. 1438, 75
U.S.L.W. 4149]), but also a recognition of the importance of acting expeditiously to address the
critical climate change issues that we are facing.

Please enter this letter in the subject docket. Thank you for your prompt attention to this
important issue.

Sincerely,

Arnold Schwarzenegger

cc:    Linda S. Adams, Secretary for Environmental Protection

       Via U.S. Mail addressed to:

       William L. Wehrum
       Acting Assistant Administrator
       U.S. EPA Headquarters
       Ariel Rios Building
       1200 Pennsylvania Avenue, Northwest
       Washington, DC  20460

       David Dickinson
       EPA Office of Transportation and Air Quality
       U.S. EPA Headquarters
       Ariel Rios Building
       1200 Pennsylvania Avenue, Northwest
       Washington, DC  20460



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

June 21, 2007

The Honorable Arnold Schwarzenegger                    THE ADMINISTRATOR
Governor of California
State Capitol
Sacramento, California 95814

Dear Governor Schwarzenegger:

As I committed to you in my letter of June 13, 2007, I am writing to inform you of our intended time frame for making a decision on California's request for a waiver of Federal preemption for its motor vehicle greenhouse gas emission standards.

As you know, the California Air Resources Board (CARB) submitted its waiver request to the Agency on December 21, 2005. EPA communicated to CARB that it was withholding consideration of the waiver request pending a decision by the United States Supreme Court in the *Massachusetts v. EPA* lawsuit. Our reason for withholding consideration was that the decision and opinion from the Supreme Court could be directly relevant to issues EPA must address in the context of CARB's waiver request. The Agency subsequently asked for comment on whether the *Massachusetts v. EPA* decision is relevant to EPA's consideration of the waiver criteria under the Clean Air Act.

When the Supreme Court issued its decision on April 2, 2007, finding, among other things, that carbon dioxide and other greenhouse gases are covered by the definition of a "pollutant" under Section 202 of the Clean Air Act, I committed to move expeditiously to evaluate the petition. On April 11, 2007, I met with you and we discussed the plan for moving forward. At that time, I informed you that the Agency would conduct the necessary public hearing on the petition in late May. In addition, the Agency offered to conduct an additional hearing in California.

On April 30, 2007, the Agency published a Federal Register notice announcing a public hearing in Washington, DC and a written public comment period. We held public hearings in Washington, D.C., on May 22, 2007, and in Sacramento, California, on May 30, 2007. EPA received several requests to extend the June 15, 2007 comment deadline but the Agency declined to do so. We heard from over 80 individuals at these hearings and have received over 34,000 written comments from parties representing a broad scope of interests, including state and local governments, public health and environmental organizations, academia, industry and citizens. EPA has received thousands of pages of substantive comments and hundreds of attachments of a technical and scientific nature.

Having evaluated the volume and nature of the comments received during the public comment period, I will make a final determination on the State's request by the end of this year. This time frame is consistent with that of earlier California requests involving fact-based technical assessments and legal analysis. For example, the State's petition for a waiver of Federal LEV I standards was decided by the Agency in January 1993, approximately nine months after the public hearing. Similarly, California's petition for a waiver of LEV II standards was decided in April 2003, again approximately nine months following the public hearing. The pending petition presents issues of similar, if not greater, complexity. I believe a schedule that provides for a decision on the pending petition by the end of this year is both responsible and expeditious.

Thank you for your continued interest. I look forward to working with you on this and other important issues.

Sincerely,

Stephen L. Johnson

TESTIMONY OF
STEPHEN L. JOHNSON
ADMINISTRATOR
U.S. ENVIRONMENTAL PROTECTION AGENCY
BEFORE THE
COMMITTEE ON ENVIRONMENT & PUBLIC WORKS
UNITED STATES SENATE

**July 26, 2007**

Good morning, Chairman Boxer and members of the Senate Committee on Environment and Public Works.  I appreciate the opportunity to come before this Committee again to update you on the status of EPA's response to California's request for a waiver of preemption for its greenhouse gas motor vehicle emission standards.  I also will address other recent developments regarding the Administration's efforts to address the long term challenge of global climate change.

## I.  The California Waiver Request

First, I want to clarify that EPA is following two separate tracks for the consideration of greenhouse gas regulations for motor vehicles.  As I have previously indicated in Congressional testimony, EPA is working with its interagency partners to develop a proposed rule for the federal regulation of emissions of greenhouse gases from new motor vehicles.  After considering public input through a notice and comment process, it is our intention to issue a final rule by the end of 2008.  Separately, EPA is considering California's waiver request for its motor vehicle greenhouse gas regulation, under the statutory waiver authority provided in section 209 of the Clean Air Act.

With respect to the California waiver request, we have completed the public comment process required by the Clean Air Act.  In addition to our normal practice of offering a public hearing in Washington, DC, which was held on May 22nd, at the request of the state, we held an additional hearing in Sacramento, California, on May 30th.   We heard from over 80 individuals representing a broad scope of interests including States and local governments, public health and environmental organizations, academia, industry and citizens.

In our Notice announcing the public comment process we stated that the written comment period would close on June 15, 2007.  We received requests to extend the deadline but did not do so.  We received well over 60,000 comments.  This is an unprecedented number of comments on a California waiver request.  Parties commented on the three statutory waiver criteria as well as the additional three questions we raised in our April notice.

We are now examining the full range of technical and legal issues raised by the comments.   Given the complexity of the issues presented in the California waiver request, EPA is devoting the necessary resources in order to expeditiously review the extensive comments we have received, and respond to the waiver request. The Agency is performing a rigorous analysis in order to properly consider the legal and technical issues that we must address in making a decision under the Clean Air Act waiver criteria.   In recent written correspondence with California's Governor Schwarzenegger, I have

committed to issuing a decision on the waiver by the end of this year.  We will continue to inform the Committee of our progress in this matter.

## II.    The "Twenty in Ten" Rulemaking Process

Earlier this year, the Administration sent Congress legislative proposals to achieve the "Twenty in Ten" plan.  The plan would increase the supply of renewable and other alternative fuels by setting a mandatory fuels standard to require the equivalent of 35 billion gallons of renewable and other alternative fuels in 2017, nearly five times the 2012 Renewable Fuels Standard (RFS) mandate established by the Energy Policy Act of 2005.  In 2017, this will displace 15 percent of projected annual gasoline use.  This plan would replace the RFS in the year 2010, while retaining the flexible credit, banking, and trading mechanisms contained in the RFS.  It would provide an accelerated schedule for alternative fuel requirements in the years 2010 to 2017.

The plan also would reform and modernize Corporate Average Fuel Economy (CAFE) standards for cars, and further increase the CAFE standards for light trucks.  Fuel efficiency standards for cars would be increased substantially beginning in 2010, and for light trucks beginning in 2012.  In 2017, we aim to reduce projected annual gasoline use by up to 8.5 billion gallons, a further 5 percent reduction that, in combination with increasing the supply of renewable and other alternative fuels, will bring the total reduction in projected annual gasoline use to 20 percent.

While the President continues to believe that effective legislation is the best approach to implementing his "Twenty In Ten" plan, he has directed EPA and our federal partners to work toward these goals now by developing regulations based on the framework of "Twenty in Ten". The President has directed us to complete this regulatory process by the end of 2008. This is a very aggressive timeframe, but one that I am confident that my staff, working with our federal partners, can achieve.

EPA meets regularly with the Departments of Transportation, Energy, and Agriculture to ensure coordination of our work efforts. In addition, we are holding more than a dozen meetings with major stakeholder groups to ensure that they are involved in the process from the very beginning. We also have begun the analytical work necessary to establish standards that carefully consider science, available technologies, lead time, and vehicle safety while evaluating benefits and costs. As part of this process, we are working to identify the appropriate analytical resources that exist across the federal government to help EPA and other Departments and Agencies in their efforts to develop a rulemaking based on sound data and thorough technical analysis.

Any regulation of greenhouse gas emissions from new motor vehicles under Clean Air Act section 202(a) requires that EPA make a determination that emissions of greenhouse gases from new motor vehicles, primarily carbon dioxide emissions, cause or contribute to air pollution that may reasonably be anticipated to endanger public health or welfare. Section 211(c) of the Clean Air Act contains a similar standard with respect to motor vehicle fuels. We are therefore reviewing the most recent and robust scientific evidence

from the climate change research community, including EPA's own Global Change Research Program.

A substantial amount of work remains to determine the scope of our assessment. For example, EPA may need to consider a range of science and impact issues, such as the accumulation of greenhouse gas concentrations in the atmosphere; the observed trends in average global warming, projected sea level rise, and precipitation patterns; the attribution of these and other observed changes to emissions of carbon dioxide and other greenhouse gases from human activities; the impact of US greenhouse gas emissions on global CO2 concentrations; the vulnerability of the natural environment, human health, and society to climate change; and the future projected effects within the U.S. under various projected rates of climate change over the course of this century. As directed by Executive Order 13432, EPA will coordinate with, and seek input from, climate change experts in other government agencies as well as the public.

When approaching the issue of greenhouse gas emissions estimates from the transportation sector, it should be recognized that 95 percent of such emissions consist of carbon dioxide, with the remaining 5 percent of emissions consisting of nitrous oxide and methane exhaust emissions and hydrofluorocarbons from air conditioners. In addressing greenhouse gas emissions from the transportation sector, one must recognize that on-board technology to control carbon dioxide emissions from vehicles does not currently exist, however carbon dioxide emissions from vehicles can be reduced by increasing their fuel economy. In addition, using a Department of Energy model, EPA analysis

conducted as part of the Renewable Fuel Standard shows that fuels such as cellulosic ethanol have the potential to offset lifecycle greenhouse gas emissions by over 90 percent when compared with gasoline derived from crude oil.  Biodiesel can result in the displacement of nearly 68 percent of lifecycle greenhouse gas emissions relative to diesel made from petroleum.  Increasing the use of such fuels in the transportation sector has the potential to make substantial reductions in greenhouse gas emissions.  Increasing the fuel economy of a vehicle can also decrease greenhouse gas emissions.

### III.     A New International Framework on Energy Security and Climate Change

On May 31st, the President called upon the world's major economies to work together to develop a long term global goal to reduce greenhouse gas emissions.  The President's plan recognizes that a new climate framework must be developed in a way that enhances energy security and promotes economic growth and includes both major developed and developing economies.   This fall, the United States will convene the first of a series of meetings for the world's largest economies and energy consumers to advance and contribute to a new global agreement under the United Nations Framework Convention on Climate Change (UNFCCC).  The participants in the framework will work together to develop a global emissions reduction goal, underpinned by national strategies and sectoral approaches that will set a practical, but flexible, path forward.  The effort will build on the Asia Pacific Partnership on Clean Development and Climate and other partnerships to develop and implement clean energy technologies.   We were pleased that

the major elements of the President's proposal were favorably received and incorporated into the leaders' statement at the recent meetings of the G8+5 in Germany a short time ago.

## IV.    Conclusion

Ms. Chairman, today I have outlined EPA's consideration of California's request for a waiver of preemption for its greenhouse gas motor vehicle emission standards, our "Twenty in Ten" legislative proposals, as well as recent developments regarding the Administration's efforts to address the important issue of global climate change.  I look forward to working with you and other Members of the Committee on these challenging issues, and would be pleased to answer any questions that you might have.  Thank you for the opportunity to testify.



◄ ► **Photo 1 of 5**



Gov. Arnold Schwarzenegger, left, talks with Attorney General Jerry Brown, as they walk to a Capitol news conference to announce the state has filed sued against the federal government to force a decision on whether the state can impose the nation's first greenhouse gas emission standards for cars and light trucks, at the Capitol in Sacramento, Calif., , Sacramento, Calif., Thursday, November 8, 2007. The lawsuit against the Environmental Protection Agency, filed in U.S. District Court in Washington D.C., is over California's nearly two-year-old request for a waiver under the federal Clean Air Act allowing it to implement a 2002 state anti-pollution law regulating greenhouse gases.(AP Photo/Rich Pedroncelli)

# California Sues EPA Over Auto Emissions

**By SAMANTHA YOUNG – Nov 8, 2007**

SACRAMENTO (AP) — California sued the federal government on Thursday to force a decision about whether the state can impose the nation's first greenhouse gas emission standards for cars and light trucks.

More than a dozen other states are poised to follow California's lead if it is granted the waiver from federal law, presenting a challenge to automakers who would have to adapt to a patchwork of regulations.

The state's lawsuit against the Environmental Protection Agency, filed in U.S. District Court in Washington, D.C., was expected after Gov. Arnold Schwarzenegger vowed last spring to take legal action.

"Our future depends on us taking action on global warming right now," Schwarzenegger said during a Capitol news conference. "There's no legal basis for Washington to stand in our way."

At issue is California's nearly two-year-old request for a waiver under the federal Clean Air Act allowing it to implement a 2002 state anti-pollution law regulating greenhouse gases.

Eleven other states have adopted California's standard as a way to combat global warming and five others are considering it.

"The longer the delay in reducing these emissions, the more costly and harmful will be the impact on California," the state attorney general's office said in its 16-page complaint.

Schwarzenegger and other state officials say implementing the law is crucial for California's ability to meet the provisions of a separate global warming law that passed last year and generated worldwide attention. That law seeks to reduce greenhouse gas emissions statewide 25 percent by 2020.

Arizona, Connecticut, Illinois, Maine, Maryland, Massachusetts, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Vermont and Washington joined California's lawsuit against the federal government Thursday, said Peter Aseltine, a spokesman for New Jersey Attorney General Anne Milgram.

"It is time for EPA to either act or get out of the way," Milgram said in a statement.

California asked the EPA to grant its waiver in December 2005. EPA administrator Stephen Johnson said last summer that he would make a decision by the end of this year.

Brown said the EPA simply was not doing its job and should have granted California's waiver request long ago.

"It's sitting on its hands," he said of the agency.

Schwarzenegger sought quicker action and vowed to sue. The state's lawsuit was expected to be filed in late October but was delayed after state officials became preoccupied with the Southern California wildfires.

"The administrator has stated numerous times that he plans to make a decision by the end of the year," EPA spokeswoman Jennifer Wood said in reaction to the lawsuit. "It's unfortunate that California is more interested in getting a good headline than allowing us to make a good decision."

One of the EPA's options is to deny California's request. If it does, state officials said







they will continue to press ahead.

"We'll sue again, sue again and sue again until we get it," Schwarzenegger said.

State officials say they need the matter resolved soon because the auto-emissions law applies to vehicles in the 2009 model year, which can be marketed by companies as early as this coming January.

Cars, pickups and sport utility vehicles sold in California account for about 30 percent of the state's total greenhouse gas emissions, according to the lawsuit. They would be required to produce fewer greenhouse gases, with the goal of reducing auto emissions 25 percent by 2030.

Further delay by the EPA would interfere with the state's ability to enforce the law on time, according to the complaint.

"Congress generally intended that the U.S. EPA make determinations of this type in a matter of weeks or months, not years," the complaint says.

Automakers oppose California's effort and are trying to head off a scenario in which emission regulations vary from state to state, complicating their manufacturing. They also argue that it creates a de facto fuel-economy standard, which only the federal government can set.

"The timing of a decision is not what's important," said Michael Stanton, president of The Association of International Automobile Manufacturers. "What's important is getting a national standard."

While the federal government sets national air pollution rules, California has unique status under the Clean Air Act to enact its own regulations if it gets approval to do so by the EPA.

Other states can follow the federal rules or California's standards if they are tougher. The EPA has granted about 50 such waivers over the past 40 years for the use of catalytic converters, leaded gasoline regulations and other measures.

The complaint filed Thursday claims the EPA failed to act in a reasonable length of time on California's latest request for a waiver.

In addition to the states that plan to join California's lawsuit, the governors of Colorado, Florida and Utah also have said their states plan to adopt the standard.

The EPA initially refused to act on California's application, saying the agency did not have the authority to regulate greenhouse gases as a pollutant. That changed when the U.S. Supreme Court ruled in April that the EPA did indeed have that right.

As a result, the EPA is now developing greenhouse gas regulations that are scheduled to be released by the end of the year. Environmental groups say those regulations are not likely to be stronger than the California standards.

Meanwhile, automakers continue to challenge the California standards in court.

They are appealing a ruling last month by a federal judge in Vermont who upheld the California rules in that state. They also are trying to persuade a federal judge in Fresno to toss out the emission standards mandated under California's 2002 law.

Associations for both domestic and foreign car companies say California's standards would raise the cost of vehicles and could force manufacturers to pull some sport utility vehicles and pickup truck models from showrooms.

The California lawsuit says automakers can meet the tougher emission standards by improving technology, using alternative fuels, improving vehicle air conditioners and trading clean-air credits among manufacturers.

*Associated Press Writer Tom Hester in Trenton, N.J., contributed to this report.*

Hosted by           Copyright © 2007 The Associated Press. All rights reserved.



**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY**
WASHINGTON, D.C. 20460

DEC 1 9 2007

OFFICE OF THE
ADMINISTRATOR

The Honorable Arnold Schwarzenegger
Governor of the State of California
State Capitol
Sacramento, California 95814

Dear Governor Schwarzenegger,

As I have committed to you in previous correspondence, I am writing to inform you of my decision with respect to the request for a waiver of Federal preemption for motor vehicle greenhouse gas emission standards submitted by the California Air Resources Board (CARB).

As you know, EPA undertook an extensive public notice and comment process with regard to the waiver request. The Agency held two public hearings: one on May 22, 2007 in Washington, D.C. and one in Sacramento, California on May 30, 2007. We heard from over 80 individuals at these hearings and received thousands of written comments during the ensuing public comment process from parties representing a broad set of interests, including state and local governments, public health and environmental organizations, academia, industry and citizens. The Agency also received and considered a substantial amount of technical and scientific material submitted after the close of the comment deadline on June 15, 2007.

EPA has considered and granted previous waivers to California for standards covering pollutants that predominantly affect local and regional air quality. In contrast, the current waiver request for greenhouse gases is far different; it presents numerous issues that are distinguishable from all prior waiver requests. Unlike other air pollutants covered by previous waivers, greenhouse gases are fundamentally global in nature. Greenhouse gases contribute to the problem of global climate change, a problem that poses challenges for the entire nation and indeed the world. Unlike pollutants covered by the other waivers, greenhouse gas emissions harm the environment in California and elsewhere regardless of where the emissions occur. In other words, this challenge is not exclusive or unique to California and differs in a basic way from the previous local and regional air pollution problems addressed in prior waivers.

Also, I firmly believe that, just as the problem extends far beyond the borders of California, so too must be the solution. Congress has recognized the need for very aggressive yet technically feasible national standards to address greenhouse gases and energy security by passing the Energy Independence and Security Act. Just today the President signed these national standards into law, providing environmental benefits and economic certainty for Californians and all Americans. I strongly support this national approach to this national challenge which establishes an aggressive standard of 35 miles per gallon for all 50 states, as opposed to 33.8 miles per gallon in California and a patchwork of other states. This legislation

will deliver energy security benefits and bring a much needed national approach to addressing global climate change, improving the environment for all Americans.

In light of the global nature of the problem of climate change, I have found that California does not have a "need to meet compelling and extraordinary conditions." Accordingly, I have decided that EPA will be denying the waiver and have instructed my staff to draft appropriate documents setting forth the rationale for this denial in further detail and to have them ready for my signature as soon as possible.

Please be assured that my decision in this matter is made specific to the facts and circumstances of this request, which, as explained above, are distinctly different from prior waiver requests. I do not intend for this decision to affect any future requests by the State of California for waiver determinations for non-greenhouse gas emissions from vehicles.

Finally, I want to acknowledge the leadership that you and your state have shown to increase vehicle fuel economy, to address energy security, and to reduce greenhouse gases. I agree that increased vehicle standards can be a win-win for the environment and the economy. I have no doubt that the national standards Congress adopted and the President signed into law this week were enacted, in part, because of your efforts.

Sincerely,

Stephen L. Johnson

cc:    Governor Janet Napolitano
       Governor Bill Ritter
       Governor Charlie Crist
       Governor Deval Patrick
       Governor Martin O' Malley
       Governor John Baldacci
       Governor Jon S. Corzine
       Governor Eliot Spitzer
       Governor Ted Kulongoski
       Governor Don Carcieri
       Governor Jon Huntsman, Jr.
       Governor Jim Douglas
       Governor Christine Gregoire
       Governor M. Jodi Rell
       Governor Edward Rendell
       Governor Bill Richardson
       Senator Barbara Boxer
       Senator Dianne Feinstein
       Representative Xavier Becerra
       Representative Howard Berman
       Representative Brian Bilbray
       Representative Mary Bono
       Representative Ken Calvert
       Representative John Campbell
       Representative Lois Capps
       Representative Dennis Cardoza
       Representative Jim Costa
       Representative Susan Davis
       Representative John Doolittle
       Representative David Dreier
       Representative Anna Eshoo
       Representative Sam Farr
       Representative Bob Filner
       Representative Elton Gallegly
       Representative Jane Harman
       Representative Wally Herger
       Representative Mike Honda
       Representative Duncan Hunter
       Representative Darrell Issa
       Representative Tom Lantos
       Representative Barbara Lee
       Representative Jerry Lewis
       Representative Zoe Lofgren
       Representative Dan Lungren
       Representative Doris Matsui
       Representative Kevin McCarthy

Representative Howard "Buck" McKeon
Mary D. Nichols, California Air Resources Board