## UNITED STATES DISTRICT COURT
## DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF CALIFORNIA,  )  | |
| )  | |
| Plaintiff,  )  | Civ. No. 1:07-CV-02024-RCL |
| )  | |
| v.  )  | |
| )  | |
| UNITED STATES ENVIRONMENTAL  )  | |
| PROTECTION AGENCY, et al,  )  | |
| )  | |
| Defendants.  )  | |
| )  | |

## REPLY IN SUPPORT OF
## DEFENDANTS' MOTION TO HOLD CASE IN ABEYANCE
## PENDING RESOLUTION OF PLAINTIFFS'
## IDENTICAL CLAIMS IN THE COURT OF APPEALS

Defendants United States Environmental Protection Agency and Stephen L. Johnson, Administrator, (collectively "EPA") submit this reply in support of its motion to hold this case in abeyance pending a final decision in California v. EPA, No. 07-1457 (D.C. Cir.), an action brought by plaintiff State of California in the United States Court of Appeals for the District of Columbia Circuit raising the identical claim that plaintiff is raising in this action.

In this case, plaintiff State of California seeks an order compelling EPA to make a determination on its request for a waiver of preemption of new motor vehicle emission standards pursuant to section 209(b) of the Clean Air Act, 42

U.S.C. § 7543(b). Because the State (1) has brought an identical claim in the Court of Appeals; (2) has chosen to pursue that claim before and in preference to its claim in this Court; (3) has represented to the Court of Appeals that this case, rather than the one in the Court of Appeals, should be held in abeyance;[1] and (4) has represented to the Court of Appeals that that Court, rather this one, has jurisdiction over its claim; EPA moved to hold this case in abeyance.

In our motion we demonstrated that this action should be stayed both in the interest of "economy of time and effort for [the Court], for counsel, and for litigants," Landis v. North American Co., 299 U.S. 248, 254 (1936), and in accordance with the principle that federal courts have an obligation to avoid duplicative litigation. Colorado River Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976). Motion at 3-4.

California opposes this motion on the ground that it will be prejudiced if not allowed to proceed with both actions at the same time. However, it cites no case in

---

[1] In its opposition, California contests whether it represented to the Court of Appeals that this case should be held in abeyance. Opp. at 11 n.2. However, in its Opposition to our Motion to Dismiss the Court of Appeals case, California asserted that this case should be held in abeyance if the Court of Appeals found it had jurisdiction. D.C. Cir. No. 07-1457, Dec. 21, 2007, at 11 (Att. 3 to Mot. to Hold in Abeyance). By referring our Motion to Dismiss to the merits panel, the Court of Appeals has asserted jurisdiction over California's claim, at least for the purpose of determining whether it has jurisdiction. Because the Court of Appeals has taken jurisdiction over the claim, this case should be held in abeyance.

which a court determined that such duplicative litigation was appropriate.  Nor

does it cite any principle of law that confers on it the right to pursue its claims

simultaneously in multiple courts.  EPA does not dispute that California has the

right to have its claim heard.  However, the State does not have the right to have its

claim heard simultaneously in two fora, one of which lacks jurisdiction.

Telecommunications Research and Action Ctr. v. FCC, 750 F.2d 70, 77 (D.C. Cir.

1984) ("TRAC") ("It is well settled that even where Congress has not expressly

stated that statutory jurisdiction is 'exclusive' . . . a statute which vests jurisdiction

in a particular court cuts off original jurisdiction in other courts in all cases covered

by that statute.")  California chose to pursue its claim in the Court of Appeals first

and that case is well-advanced.  It is both an undue burden on the parties, as well as

inimical to fundamental principles of judicial administration, to proceed with this

case at the same time.

    California's first argument in opposition, that EPA has failed to make a

required showing of hardship or inequity, Opp. at 6-8, is wrong both as a matter of

law and fact.  The Supreme Court in Landis stated, "True, the supplicant for a stay

must make out a clear case of hardship or inequity, if there is even a fair possibility

that the stay for which he prays will work damage to someone else."  299 U.S. at

255 (emphasis added).  As demonstrated in our motion and below, California will

suffer no "damage" from a stay because its claims are proceeding in the Court of

Appeals.  Thus, this provision is inapplicable.  Furthermore, in our motion we did

cite to "economy of time and effort" of the parties and counsel as a basis for

granting a stay.  It is self-evident that the burden of having to defend the same

litigation in two courts is a hardship to EPA that, along with the unnecessary

burden on the Court, justifies a stay, particularly in light of the fact that it will not

prejudice California.

Although California attempts to demonstrate that it will be harmed by a stay,

Opp. at 8-10, its claim is meritless.  First, California's claim that the two cases do

not raise identical issues because the Court of Appeals must consider the question

of jurisdiction, Opp. at 10-11, is baseless.  Federal courts are always required to

consider the question of jurisdiction, Steel Co. v. Citizens for a Better

Environment, 523 U.S. 83, 94-96 (1998), and this Court must squarely address that

issue in this case.  This case is brought pursuant to the citizen suit provision of the

Clean Air Act, 42 U.S.C. § 7604(a).  It is the law in this Circuit that if a statute

grants jurisdiction to one court, it cuts off jurisdiction to all others.  TRAC, 750

F.2d at 77.  Thus, for this Court to take jurisdiction over this case, it must

determine that the Court of Appeals does not have jurisdiction.  That is exactly the

issue that the Court of Appeals explicitly deferred to the merits panel in

California's pending case.  D.C. Cir. No. 07-1457, Order of Jan. 3, 2008 (Att. 4 to Motion to Hold in Abeyance).  Thus, the issues in two cases are exactly the same.

Second, California's claim that it may be prejudiced by a potential delay in having its claim heard is also meritless because its claim is being heard, by the Court of Appeals.  Briefing in that case will be completed by February 28 and the court further directed that the case be scheduled for argument on the first appropriate date following the completion of briefing.  Thus, California is not "in limbo" between courts, Opp. at 1, its claim is actively proceeding in the Court of Appeals.

Furthermore, California has created the current procedural situation.  While California now states opposing EPA's motion that the State believes this Court has jurisdiction, it has represented to the Court of Appeals that that Court has jurisdiction.  D.C. Cir. No. 07-1457, Jan. 15, 2008, at 16-22 (Attachment 1 hereto).  Additionally, in its pleading to the Court of Appeals, California opposed EPA's motion to hold in abeyance the Court of Appeals case in order to allow this case to proceed, and in fact argued that this case should be held in abeyance while that case proceeds.  D.C. Cir. No. 07-1457, Dec. 21, 2007, at 11 (Att. 3 to Mot. to Hold in Abeyance).  Thus, California chose to actively oppose an EPA motion that would have allowed this case to go forward while the case in the Court of Appeals

5

was held in abeyance.  The State cannot claim prejudice from a situation for which it advocated.

As demonstrated in our motion, this case should also be held in abeyance because of the risk of inconsistent decisions.  Mot. at 5-6.  California's response, i.e., that any contrary opinion of the Court of Appeals will control, Opp. at 11, demonstrates the absurdity of California's position.  There is no reason for the parties and the Court to expend the resources to litigate this case when the result may be immediately superceded by a decision of the Court of Appeals.

Finally, California's attempt to distinguish National Family Planning and Reproductive Health Ass'n v. Sullivan, Civ. A. No. 92-2177 (CRR), 1992 WL 345629 (D.D.C. Oct. 5, 1992), and Inverworld, Ltd. v. United States, Civ. A. No. 93-0544-LFO, 1993 WL 439831 (D.D.C. Oct. 21, 1993), Opp. at 11, does not address the principle for which those cases were cited, which is that courts should avoid allowing the same claim to proceed in multiple courts at the same time.  Moreover, California has cited no case in which a court has condoned such duplicative litigation.

In summary, California's claims are being heard in the Court of Appeals, the forum chosen by the State, and this case should be held in abeyance pending the resolution of that case.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources
     Division


/S/ Norman L. Rave, Jr.
NORMAN L. RAVE, JR.
United States Department of Justice
Environment and Natural Resources
     Division
P.O. Box 23986
Washington, DC  20026-3986
Tel:   (202) 616-7568
Fax:   (202) 514-8865
Email:norman.rave@usdoj.gov

Of Counsel:

MICHAEL HOROWITZ
Office of General Counsel
U. S. Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, DC 20460

February 19, 2008

ORAL ARGUMENT NOT SET

Case No. 07-1457

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

STATE OF CALIFORNIA, by and through ARNOLD
SCHWARZENEGGER, GOVERNOR OF THE STATE
OF CALIFORNIA and CALIFORNIA AIR RESOURCES
BOARD,

                                    Petitioner,

        v.

UNITED STATES ENVIRONMENTAL PROTECTION
AGENCY, et al.,

                                    Respondents.

COMMONWEALTH OF MASSACHUSETTS, et al.,
                              Intervenors

Consolidated With Case No. 07-1462

**PETITION FOR REVIEW OF
ENVIRONMENTAL PROTECTION AGENCY**

**STATE OF CALIFORNIA'S
OPENING BRIEF ON MERITS**

EDMUND G. BROWN JR.
Attorney General of the State of California
MARY E. HACKENBRACHT
Senior Assistant Attorney General
ELLEN M. PETER
Supervising Deputy Attorney General
JOSEPH B. BARBIERI
JAN ZABRISKIE
Deputy Attorneys General
 1300 I Street, Suite 125
 P.O. Box 944255
 Sacramento, CA 94244-2550
 Telephone: (916) 322-5181
Attorneys for Petitioner

# TABLE OF CONTENTS

                                                                    **Page**

INTRODUCTION                                                          1

JURISDICTIONAL STATEMENT                                             3

ISSUES FOR REVIEW                                                    4

STATUTES AND REGULATIONS                                            4

STATEMENT OF FACTS AND PROCEDURAL BACKGROUND                        4

SUMMARY OF ARGUMENT                                                 14

      A.   Jurisdictional Argument Summary          14

      B.   Merits Argument Summary                   15

STANDING                                                            15

ARGUMENT                                                            16

  **I.   THIS COURT HAS JURISDICTION OVER CALIFORNIA'S PETITION FOR UNREASONABLE DELAY UNDER 42 U.S.C. § 7607(b)(1)**    16

      A.   Under This Court's Decision In *Thomas*, EPA's Consideration Of A Waiver Petition Is A Discretionary Act And Therefore Review For Unreasonable Delay Lies In The Court Of Appeals    16

      B.   The 1990 Amendments Confine District Court Jurisdiction Over Unreasonable Delay Cases To Those Involving Non-discretionary Acts.    18

      C.   The House Rejected The Senate's Proposal To Shift Jurisdiction To The District Court.    19

i

# TABLE OF CONTENTS  (continued)

                                                                                    **Page**

II.   THE COURT SHOULD GRANT CALIFORNIA'S
      PETITION BECAUSE EPA HAS EXCEEDED ITS OWN
      DEADLINE FOR PROVIDING A FINAL ACTION AND
      THERE IS NO GOOD REASON WHY IT HAS NOT
      ISSUED ITS "APPROPRIATE DOCUMENTS" BY NOW
                                                                                      22

      A.   The Court Uses A Rule Of Reason To Evaluate The
           Reasonableness Of EPA's Delay.                                             22

      B.   EPA Broke Its Promise To Provide California A "Final
           Determination" On California's Waiver Application
           Before the End of 2007.                                                    23

      C.   EPA's Remaining Task Of Drafting The Details Of
           Its Decision Is Not Complex.                                               24

      D.   EPA Acknowledges That Agency Resources Are
           Available To Draft The Final Documentation
           And That California's Application Has High Priority.                        25

      E.   There Would Be Significant Adverse Impacts To
           California And The Public Interest If EPA Continues
           Its Delay.                                                                 26

CONCLUSION                                                                            28

# TABLE OF AUTHORITIES

**Page**

**Cases**

*INS v. Cardoza-Fonseca*
  480 U.S. 421, 107 S.Ct. 1207 (1987)                          21

\*\* Mashpee Wampanoag Tribal Council, Inc., v. Norton
  336 F.3d 1094 (D.C. Cir. 2003)                           15, 23

*Massachusetts v. EPA*
  __ U.S. ___, 127 S. Ct. 1438 (2007)               2, 5, 8, 11, 15

*Russello v United States*
  464 U.S. 16, 104 S.Ct. 296 (1983                             21

*See Sierra Club v Leavitt*
  355 F.Supp.2d 544 (D.C. Dist. 2005)                         19

\*\* *Sierra Club v. Thomas*
  828 F.2d 783 (D.C. Cir. 1987)                  4, 14, 16, 17, 23

*State of Maine v Thomas*
  874 F.2d 883 (1st Cir. 1989)                                17

*Telecommunications Research & Action Center v. FCC*
  750 F.2d 70 (D.C. Cir. 1984)                          16, 19, 22

\*\* Authorities upon which we chiefly rely are marked with asterisks.

iii

# TABLE OF AUTHORITIES  (continued)

Page

**Federal Statutes**

Clean Air Act section 177, 42 U.S.C § 7507                                    13

Clean Air Act section 209(b) 42 U.S.C. § 7543(b)                   1, 3, 4, 7, 17

Clean Air Act section 304(a),  42 U.S.C. § 7604(a)               14, 18, 19, 20

Clean Air Act section 307, 42 U.S.C. § 7607(b)             4, 9, 10, 14, 16, 17


**Federal Legislative History**

1990 Amendments to the Clean Air Act, Pub. L. No. 101-549,
        (November 15, 1990) § 707(f); 104 Stat 2574, 2683 (1990).          18, 21

S.  Rep. No. 101-228, at 398 (1989) reprinted in 1990 U.S.C.C.A.N. 3385, 3757     19

Clean Air Act Amendments of 1990, S. 1630,
        101st Cong., 1st Sess. §609, p. 648 (Dec. 20, 1989)                     20

104 Stat. 2399, PL 101-549, House Debate (May 23, 1990)
        (Legislative History of the Clean Air Act Amendments at p. 3019        20

Calendar No. 113, H.R. Rep. No. 494, 101st Cong., 2nd Sess. 1990
        (Legislative History of Clean Air Act Amendments of 1990 at p.2349-50   20

H.R. Rep. No. 952, 101st Cong., 2nd Sess. 1990 (October 26, 1990)              21

**Federal Administrative Decisions**

49 Fed.  Reg. 18887, May 3, 1984                                              25

71 Fed. Reg. 78190, December 28, 2006.                                        25

# TABLE OF AUTHORITIES  (continued)

**Page**

**State Statutes, Regulations, and Executive Orders**

Arizona Executive Order 2006-13 (September 8, 2006)                                    13

Cal. Health & Safety Code
        § 42823                                                                                        6
        § 43018.5                                                                                    6

2002 Cal. Stats., Chptr.  200, (AB1493) § 1                                        5, 6

California Cal. Code Regs. § 1961.1                                                    13

Conn. Agencies Regs. § 22a-174-36b (2007)                                        13

Florida Executive Order 07-127                                                            13

06-096-127 Me. Code R. §§ 3-4 (2007)                                              13

Md. Reg. 1609 (August 31, 2007)                                                        13

310 Mass. Code Regs. 7.40 (2007)                                                      13

N.M. Code R. §§ 20.2.88.101, 20.11.104.101 (2007)                            13

N.Y. Comp. Codes R. & Regs. tit. 6, § 218-8.3 (2007)                          13

Or. Admin. R. 340-257-0100 (2007)                                                    13

25 Pa. Code § 126.411 (2007)                                                            13

12-031-037 R.I. Code R. § 37.2 (2007)                                                13

158 Vt. Gov't Reg. 2 (March 2004)                                                      13

Wash. Admin. Code 173-423-050 (2007).                                            13

**INTRODUCTION**

In its effort to reduce the growing impacts of global warming, the State of California adopted greenhouse gas emission standards in 2005 for new motor vehicles sold in California starting in model-year 2009. More than two years ago, in December 2005, California applied to the United States Environmental Protection Agency (EPA) for the waiver authorized by Clean Air Act section 209(b) that would allow California to enforce these standards. Receiving no decision from EPA—while every passing day brought some new report of global warming impacts—California was compelled to file this petition to bring an end to EPA's indefensible delay. EPA responded by both denying California's waiver application and asserting that its decision is not yet subject to judicial review. The Court should grant California's petition to compel EPA to issue what it claims to be a reviewable decision. California recommends that the EPA be given no more than thirty days to comply.

The facts demonstrate the lack of justification for EPA's inaction and its failure to live up to its commitments. *See infra* at 4-14. EPA's initial failure to inform California of its progress on California's waiver application prompted Governor Arnold Schwarzenegger to write President Bush in April 2006 and request that EPA act on the waiver. The inaction and lack of a response prompted Governor Schwarzenegger to write EPA in October 2006 to again request EPA action. A senior EPA official finally responded on February 21, 2007, stating that nothing would be done on the waiver until the Supreme Court issued its decision in *Massachusetts v. EPA*. EPA's excuse for

1

inaction vanished on April 2, 2007, when the Supreme Court rejected EPA's position and held that the Clean Air Act authorizes the regulation of greenhouse gases. *Massachusetts v. EPA*, __ U.S. __, 127 S.Ct. 1438 (2007).

Later that month, Governor Schwarzenegger gave EPA Administrator Stephen Johnson formal notice of his intent to sue EPA to end the unreasonable delay in issuing the waiver decision. In apparent response to growing public criticism of EPA's continuing delay, EPA Administrator Stephen Johnson committed to both Governor Schwarzenegger and to the United States Senate Environment and Public Works Committee in June 2007 that he would make a "final determination" on the California waiver by the end of 2007.

In early November 2007, California filed a petition in this Court to challenge EPA's continuing inaction. The Administrator's spokesperson responded to California's legal action by reiterating EPA's commitment to issue the final waiver decision by the end of 2007.

EPA Administrator Johnson finally announced his decision to deny California's application in a December 19, 2007 letter to Governor Schwarzenegger. The Administrator stated that he had instructed his staff to write down his "denial in more detail" and to have the "appropriate documents" ready for his signature "as soon as possible." Two days later, EPA filed papers in this Court in which it contended that the December 19th letter was not "final action" for the purposes of judicial review. This contention, which EPA continues to maintain, puts the Administrator in breach of his

2

promises to Governor Schwarzenegger and Congress that he would issue a "final determination" before the end of the year.

While the EPA denies it has taken final action, it has predicted that final action will take place in the "near future." EPA refuses to say exactly when that will occur. Nearly a month has now passed since the Administrator's letter, with no further indication of when the detailed document constituting "final action" will appear.

California filed a petition for review of the Administrator's December 19 decision in the United States Court of Appeals for the Ninth Circuit, *State of California et al v. EPA*, Case No. 08-70011. While California contends that the final action was indeed taken on December 19th, it maintains this action for unreasonable delay because the EPA continues to characterize its December 19th letter as not constituting a decision reviewable by the courts.

California respectfully requests that this Court grant its petition and suggests that the Court require EPA and Administrator Johnson to publish the written explanation, that the Administrator already instructed his staff to write, within 30 days of the Court's decision. This would minimize any more delay in securing judicial review on the merits of EPA's refusal to allow the implementation of California's greenhouse gas regulations.

## JURISDICTIONAL STATEMENT

EPA has jurisdiction to decide California's application for waiver under section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b). This Court has jurisdiction to review EPA's unreasonable delay in making a final decision on California's waiver application.

3

42 U.S.C. § 7607(b); *Sierra Club v. Thomas* (hereafter "*Thomas*"), 828 F.2d 783 (D.C.

Cir. 1987). California's petition was timely filed on November 8, 2007.

## ISSUES FOR REVIEW

A.      Whether the 1990 Amendments to Clean Air Act section 304, 42 U.S.C.

§ 7604, reversed the *Thomas* decision and shifted subject matter

jurisdiction from the United States Courts of Appeals exclusively to the

district courts.

B.      Whether EPA has unreasonably delayed in taking final action on

California's application for waiver under Clean Air Act section 209(b), 42

U.S.C. § 7543(b).

## STATUTES AND REGULATIONS

The pertinent statutes and regulations are set forth in an addendum attached to this

brief.

## STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

This action concerns the efforts of California (and other states) to reduce

greenhouse gas emissions from automobiles and to force EPA to take action under the

Clean Air Act.

*Massachusetts v. EPA.*   Near the beginning of this decade, California joined other

States and environmental groups in a petition requesting that EPA assert its jurisdiction

over carbon dioxide and other greenhouse gases. EPA refused to take action, claiming

(1) the Clean Air Act did not authorize it to issue mandatory regulations to address global

4

climate change, and (2) even if it had the authority to set greenhouse gas emission standards, it would have been unwise to do so because a causal link between greenhouse gases and the increase in global warming was not unequivocally established. See *Massachusetts v EPA, supra,* 127 S. Ct. at 1450.

California and the others sought review in the Supreme Court. The Supreme Court rejected EPA's position. *Id.*, 127 S.Ct. 1438. The Court determined that carbon dioxide and other greenhouse gases easily met the Clean Air Act's definition of "air pollutants." *Id*. at 1459-60. The Court then rejected EPA's "laundry list" of reasons for not exercising its discretion to regulate greenhouse gases. *Id.* at 1462. The Court found that EPA could avoid promulgating regulations only if it determined that greenhouse gases do not contribute to climate change or if it provided some reasonable explanation as to why it cannot or will not exercise its discretion to determine whether they do. *Id.*

California's Adoption of Greenhouse Gas Standards. As the *Massachusetts v. EPA* litigation wound its way through the courts, California took independent action to combat greenhouse gas emissions. In 2002, the California Legislature required the California Air Resource Board (CARB) to develop and adopt a regulation for the control of greenhouse gas emissions by light-duty motor vehicles. 2002 Cal. Stats., Chptr. 200, (AB1493), amending Cal. Health & Safety Code § 42823 and adding § 43018.5. In enacting this legislation, the California Legislature made the following findings:

> Global warming would impose on California, in particular, compelling and extraordinary impacts including:

(1) Potential reductions in the state's water supply due to changes in the snowpack levels in the Sierra Nevada Mountains and the timing of spring runoff.

(2) Adverse health impacts from increases in air pollution that would be caused by higher temperatures.

(3) Adverse impacts upon agriculture and food production caused by projected changes in the amount and consistency of water supplies and significant increases in pestilence outbreaks.

(4) Projected doubling of catastrophic wildfires due to faster and more intense burning associated with drying vegetation.

(5) Potential damage to the state's extensive coastline and ocean ecosystems due to the increase in storms and significant rise in sea level.

(6) Significant impacts to consumers, businesses, and the economy of the state due to increased costs of food and water, energy, insurance, and additional environmental losses and demands upon the public health infrastructure.

Stats.2002, c. 200 (A.B.1493) § 1.

Following scientific and engineering studies and public comment, CARB approved the greenhouse gas regulations and filed them with the California Secretary of State on September 15, 2005. Joint Appendix (JA) filed herewith, JA000624. The regulations require that the major manufacturers of light-duty vehicles sold in California reduce the vehicular emissions of greenhouse gases on a fleet-wide basis beginning with the 2009 model-year. Cal. Code Regs., tit.13, § 1961.1(a). The emission standards gradually ramp down greenhouse gas emissions each model-year beginning with 2009 model-year and ending with the 2016 model-year. *Id*. Automakers can satisfy these emission limits through a combination of actions, including the use of alternative fuels, credits for air conditioner improvements, credits carried over from another year or fleet, and credit-trading among manufacturers. *Id.*, § 1961.1(a)(1), a through d, and 1961.1(b).

California's Waiver Application and EPA's Response.  Following adoption of these regulations, CARB applied to EPA on December 21, 2005, for a waiver of its greenhouse regulations from federal preemption under section 209(b) of the Clean Air Act, 42 U.S.C. § 7543(b).  JA000624.  Clean Air Act section 209(b) requires that EPA waive preemption of its motor vehicle emission standards unless the EPA Administrator makes findings that California failed to meet one of the three criteria specified in the Act. 42 U.S.C. § 7543(b)(1)(A)-(C).

When EPA failed to inform California of any work being done on the application, Governor Schwarzenegger wrote to President Bush on April 10, 2006, to request prompt EPA action on the waiver.  JA000059.  Receiving no response or indication of any movement on his request, Governor Schwarzenegger wrote EPA on October 24, 2006, again requesting prompt action.  JA000061.  A senior EPA official finally wrote California a response on February 21, 2007, stating that nothing would be done on the waiver until the Supreme Court issued its decision in *Massachusetts v. EPA*.  JA000063. On April 2, 2007, the Supreme Court rejected EPA's position and held that the Clean Air Act authorizes the regulation of greenhouse gases.  *Massachusetts v. EPA*, U.S. *supra,* 127 S.Ct. 1438.

Shortly after the *Massachusetts* decision, Governor Schwarzenegger gave EPA Administrator Johnson formal notice of his intent to sue EPA to end the unreasonable delay in issuing the waiver decision.  JA000588.  At about the same time, EPA finally issued a notice of hearing and solicitation of public comments on California's waiver

application. JA000065.  The notice was published in the Federal Register on April 30, 2007, 16 months after CARB submitted its application.  JA000072.

EPA held hearings on May 22 and 30, 2007.  JA000074.  The noticed comment period formally expired on June 15, 2007.  JA000072.

EPA's Administrator informed Governor Schwarzenegger on June 21, 2007, that he had "evaluated the volume and nature of the comments received during the public comment period" and promised that he would "make a final determination on the State's request by the end of this year."  JA000612.  The Administrator further stated that the "time frame is consistent with that of earlier California requests involving fact-based technical assessments and legal analysis," and assured the Governor that a decision "by the end of this year is both responsible and expeditious."  JA000612.  Five days later, the Administrator reiterated to Congress his commitment to issue a decision by year's end:

> In recent written correspondence with California's Governor Schwarzenegger, I have committed to issuing a decision on the waiver by the end of this year. We will continue to inform the Committee of our progress in this matter.

JA000614-JA000615.

California initiated this action in November 2007 to challenge EPA's unreasonable delay in taking final action on its waiver application.  In response to this filing, the Administrator's spokesman reiterated EPA's commitment to issue the final waiver decision by the end of 2007.  JA000620.

EPA Administrator Johnson finally announced his decision to deny California's application in a December 19, 2007, letter to Governor Schwarzenegger.  JA000597. The Administrator stated that he was going to deny the waiver because "California does not have a 'need to meet compelling and extraordinary circumstances.'" JA000598.  The Administrator stated that he had instructed his staff to write down his "denial in more detail" and to have the "appropriate documents" ready for his signature "as soon as possible." JA000598   Two days later, EPA filed papers in this Court stating that "[A]lthough the Administrator's December 19 letter is not final agency action for purposes of judicial review under section 307(b) of the Act, 42 U.S.C. § 7607(b), this case is likely to become moot in the near future."  JA000601-JA000602.

Nearly a month has now passed since the Administrator's letter.  However, EPA has not provided the additional documentation and has not indicated when it will produce it.

California's Other Pending Actions Against EPA.   At the same time that California petitioned this Court to review EPA's unreasonable delay, California filed a protective action seeking the same relief in the United States District Court for the District of Columbia, *State of California v. EPA et al.*,  Case No. 1:07-CV-2024 (RCL).

California also filed a petition for review of the Administrator's December 19 decision in the United States Court of Appeals for the Ninth Circuit, *State of California et al. v. EPA*, Case No. 08-70011.  California filed its petition in the Ninth Circuit because the EPA did not include a determination of "nationwide scope or effect" in its

December decision, which is the necessary predicate for this Court's jurisdiction over an EPA final action.  42 U.S.C. § 7607(b)(1).

The Impact of Climate Change on California and EPA's Awareness of Those Impacts Unique to California.  The harm to California from greenhouse gas emissions is becoming increasingly severe.  Its population of nearly 37 million people and its $32 billion annual agricultural production depend on water provided by an extensive network of dams and aqueducts that store and transport snowmelt from the Sierra Nevada mountains and the Colorado River Basin to California's coast and interior and southern valleys. JA000638 and JA000643.  Due to global warming, these watersheds receive less precipitation as snow, experience earlier snowmelt, and, particularly in the case of the Colorado Basin, have lower river flows and reservoir storage.  JA000653 and JA000664.

The climatic change caused by increased greenhouse gas emissions not only reduces the amount of spring runoff required for irrigation and domestic consumption, but, in combination with extreme weather events, increases flood risks.  JA000646 and JA000669.  Higher ambient temperatures increase evaporation, transpiration, ozone formation, and the length and severity of debilitating heat waves.  JA000667.  The combination of earlier snowmelts and rising ambient temperatures extend the fire season and increase the size of large wildfires. JA000673.  In addition, the Pacific Ocean's rising sea level and the more extreme storms caused by global warming will erode California's 1100-mile coastline, inundate low-lying coastal lands and marshes, exacerbate flooding, increase the risk of salt water intrusion into estuaries and coastal aquifers, increase the

10

risk of levee failures, and impair the State's system for controlling water flow in the Sacramento-San Joaquin Delta.    JA000655.    These events have already begun. JA000681.

The impacts of greenhouse gas emissions on climate change have been extensively studied and were known to EPA before California applied for a waiver. *Massachusetts v. EPA, supra,* 127 S.Ct. at 1455 (noting that a report the EPA considered "objective and independent" describes a series of environmental changes that have already "inflicted significant harm").    EPA has documented the unique harm that California faces as a result of increasing greenhouse gas emissions.  For example, EPA issued a report in 1997 that described the following effects of climate change on human health in California:

> Higher temperatures and increased frequency of heat waves may increase the number of heat-related deaths and the incidence of heat-related illnesses. Cities such as Los Angeles that experience occasional very hot, dry weather may be especially susceptible. One study estimates that a 3°F warming could almost double heat-related deaths in Los Angeles, from about 70 today to 125 (although increased air conditioning use may not have been fully accounted for). Little change in winter mortality is expected in Los Angeles. The elderly, particularly those living alone, are at greatest risk.

> There is concern that climate change could increase concentrations of ground-level ozone. For example, high temperatures, strong sunlight, and stable air masses tend to increase urban ozone levels. Air pollution also is made worse by increases in natural hydrocarbons emissions during hot weather. If a warmed climate causes increased use of air conditioners, air pollutant emissions from power plants also will increase.

> In the Bay Area and the Central Valley, with no other changes in weather or emissions, a 7.2°F warming would increase ozone concentrations by 20% and almost double the size of the area not meeting national health standards for air quality. Currently, the national standards for ozone are not attained throughout much of the state. Ground-level ozone has been shown to aggravate existing respiratory illnesses such as asthma, reduce lung function, and induce respiratory inflammation. In addition, ambient ozone reduces agricultural crop yields and impairs ecosystem health.

JA000584.

Recent reports continue to emphasize the need for immediate action to begin to reverse the levels of greenhouse gas emissions. For example, on November 15, 2007, the Intergovernmental Panel on Climate Change (IPCC) reported that the growth in greenhouse gases would have to be reversed by 2015 in order to avoid an equilibrium global increase of 2 to 2.4 degrees Celsius from pre-industrial levels. JA000701. Just a few weeks earlier, scientists reported in the Proceedings of the National Academy of Sciences that atmospheric carbon dioxide concentrations are increasing at a greater rate than previously anticipated and are generating "stronger-than-expected climate forcing sooner than expected." JA000707.

The bad news continues. The IPCC states with "high confidence" that the western United States "will suffer a decrease in water resources due to climate change," and that there "very likely" will be an "increase in frequency of hot extremes, heat waves, and heavy precipitation." JA000688. "Warming in the western mountains is projected to cause decreased snowpack, more winter flooding, and reduced summer flows,

exacerbating competition for over-allocated water resources." JA000690. "[C]ities, that currently experience heat waves are expected to be further challenged by an increased number, intensity and duration of heatwaves during the course of the century, with potential for adverse health impacts." JA000690. In other words, the need to reduce greenhouse gas emissions has become steadily more urgent since California adopted its greenhouse gas regulations.

<u>Under the Authority of the Clean Air Act, Other States Have Adopted California's Greenhouse Gas Standards.</u> Section 177 of the Clean Air Act, 42 U.S.C. § 7507, permits other states to adopt standards identical to California's Clean Air Act emission standards. The following 17 states have adopted or are in the process of adopting the California standards established under its greenhouse regulation: Arizona, Colorado, Connecticut, Florida, Iowa, Maine, Maryland, Massachusetts, New Jersey, New Mexico, New York, Oregon, Pennsylvania, Rhode Island, Utah, Vermont, and Washington. *See*, Arizona Executive Order 2006-13 (September 8, 2006); Conn. Agencies Regs. § 22a-174-36b (2007); Florida Executive Order 07-127; 06-096-127 Me. Code R. §§ 3-4 (2007); Md. Reg. 1609 (August 31, 2007); 310 Mass. Code Regs. 7.40 (2007); N.M. Code R. §§ 20.2.88.101, 20.11.104.101 (2007); N.Y. Comp. Codes R. & Regs. tit. 6, § 218-8.3 (2007); Or. Admin. R. 340-257-0100 (2007); 25 Pa. Code § 126.411 (2007); 12-031-037 R.I. Code R. § 37.2 (2007); 158 Vt. Gov't Reg. 2 (March 2004); and Wash. Admin. Code 173-423-050 (2007).

California and these 17 other states account for approximately 45% of the nation's

new car sales and more than 45% of the nation's population. JA000712-0715. The greenhouse gas regulations in twelve of these states—California, Connecticut, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont and Washington—apply to the 2009 and subsequent model-year vehicles. New Mexico's regulations start applying in model-year 2011.

Procedural Posture of this Litigation. On January 3, 2008, this Court entered its order denying California's motion to expedite this petition and EPA's motion to abate the proceedings. The Court set a briefing schedule and ordered the parties to set out their jurisdictional arguments with their briefs on the merits. JA000608.

## SUMMARY OF ARGUMENT

### A.    Jurisdictional Argument Summary.

The unsettled jurisdictional question presented for this Court's determination is relatively narrow. California contends that jurisdiction over cases of unreasonable delay in the performance of discretionary acts lies with the United States Courts of Appeals under 42 U.S.C. §7607(b), as this Court decided in *Thomas, supra,* 828 F.2d 783. Because EPA's action on a waiver application does not contain a date certain for performance, it is considered a discretionary action under *Thomas* and this Court has jurisdiction over California's petition.

EPA contends that a 1990 amendment to 42 U.S.C. § 7604 effectively overruled this Court's decision in *Thomas* and shifted jurisdiction for all unreasonable delay cases to the district courts. EPA's contention fails because the 1990 amendment did not

14

change the *Thomas* rule. The 1990 amendment only provided that the district courts may decide unreasonable delay cases where EPA's duty to act is nondiscretionary. Congress' rejection of a Senate proposal that would have expanded the district court's jurisdiction to discretionary act cases supports California's position.

## B.  <u>Merits Argument Summary.</u>

The reasonableness of EPA's delay in issuing the documentation that it contends is needed to constitute final agency action is subject to the "rule of reason" under *Mashpee Wampanoag Tribal Council, Inc., v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). EPA promised that it would provide a final determination by December 2007. EPA does not and cannot justify why it failed to meet this self-imposed deadline. Now, EPA has only to finalize the document detailing the previously stated rationale for a decision it made in December. The scrivener's task is relatively simple and the EPA allocated the necessary resources to complete the task "as soon as possible." Further delay is all the more unjustified.

## STANDING

The State of California has standing in its sovereign capacity as the state that adopted the regulations that are the subject of this petition. California also has standing because its greenhouse gas regulations will mitigate the harm being caused to the health, safety, welfare, economy, public services, and natural environment of the State by greenhouse gases. *See Massachusetts v. EPA supra*, 127 S. Ct. at 1453-1458.

# ARGUMENT

# I.

## THIS COURT HAS JURISDICTION OVER CALIFORNIA'S PETITION FOR UNREASONABLE DELAY UNDER 42 U.S.C. § 7607(b)(1)

### A.    Under This Court's Decision In *Thomas*, EPA's Consideration Of A Waiver Petition Is A Discretionary Act And Therefore Review For Unreasonable Delay Lies  In The Court Of Appeals

Section 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1), provides for judicial review of EPA final actions in the United States Courts of Appeals.[1] Furthermore, this Court has held that where final agency action is committed to the federal appellate courts, any suit for relief that might affect this jurisdiction is also subject to the appellate courts' jurisdiction.  *Telecommunications Research & Action Center v. FCC (*hereafter *"TRAC"*), 750 F.2d 70, 75 (D.C. Cir. 1984).  This Court later held that this rule specifically applies to an action under the Clean Air Act that is brought to challenge the EPA Administrator's unreasonable delay in the performance of a discretionary act.  *Thomas supra,* 828 F.2d at 793 (circuit court has jurisdiction to

---

1.  When this petition was filed, it was assumed that the EPA administrator would declare, as he has in past waiver decisions, that his decision on California's application for waiver action would have "nationwide scope and effect"and, thus, place jurisdiction and venue over this action in this Court under 42 U.S.C. § 7607(b).  That continues to be the assumption for purposes of this petition.  It bears noting, however, that the Administrator's December 19, 2007, letter informing Governor Schwarzenegger of the waiver denial did not include a "national scope and effect" determination.  For this reason, California has petitioned for review of the letter decision in the Ninth Circuit Court of Appeals, which under Section 307(b)(1) is the "appropriate circuit" for review of an EPA final action specific to the State of California

review "agency inaction" in order to provide "effective review of final action.")

In *Thomas*, this Court explained the difference between a discretionary act and a non-discretionary act for the purposes of determining jurisdiction of an unreasonable delay claim. This Court held that a discretionary act for jurisdictional purposes is one that lacks a date-certain deadline for performance, even where the duty to act is itself, mandatory:

> Where Congress has established no date-certain deadline-explicitly or implicitly-but EPA must nevertheless avoid unreasonable delay, it does not follow that EPA is, for the purposes of section 304(a)(2) under a nondiscretionary duty to avoid unreasonable delay. Instead, this type of duty is discretionary and, pursuant to *TRAC,* this court reviews claims alleging unreasonable delays of this type in order that we may protect our eventual jurisdiction under section 307 to review the final EPA action.

*Thomas*, *supra*, 828 F.2d at 792; *see also State of Maine v. Thomas*, 874 F.2d 883, 888 (1st Cir. 1989) (district court lacked jurisdiction under Clean Air Act where statute lacked a non-discretionary deadline.)

The necessary predicates for this Court's jurisdiction exist here. Clean Air Act section 307, 42 U.S.C. § 7607(b), authorizes the Court of Appeals to review the EPA Administrator's decision to approve California's waiver application under section 209(b) of the Act, 42 U.S.C. 7543(b). Although section 42 U.S.C. § 7543(b) imposes a mandatory duty upon the EPA Administrator to take final action on California's waiver application, this statute does not include a date certain for performance. Accordingly, under *Thomas*, the timing of EPA's duty to act in this case is "discretionary" and

17

jurisdiction to compel action that has been unreasonably delayed lies with this Court, rather than the district court.

> **B.**  **The 1990 Amendments Confine District Court Jurisdiction Over Unreasonable Delay Cases To Those Involving Non-discretionary Acts.**

EPA contends that the 1990 amendments to the "citizen suit" provisions of 42 U.S.C. § 7604 effectively overruled *Thomas*.  When *Thomas* was decided, 42 U.S.C. § 7604(a)(2) authorized any person to "commence a civil action on his own behalf-against the [EPA] Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator . . . ."

The 1990 amendment upon which EPA relies was added at the end of subsection (a).  It provides:

> The district courts of the United States shall have jurisdiction to compel (consistent with paragraph (2) of this subsection) agency action unreasonably delayed, except that an action to compel agency action referred to in section 307(b) which is unreasonably delayed may only be filed in a United States District Court within the circuit in which such action would be reviewable under section 307(b). In any such action for unreasonable delay, notice to the entities referred to in subsection (b)(1)(A) shall be provided 180 days before commencing such action.

104 Stat. 2399,  PL 101-549, November 15, 1990, § 707(f).

In arguing that this amendment vests "unreasonable delay" cases exclusively in the district courts, EPA fails to take into account the amendment's language that the conferral of jurisdiction be "consistent with paragraph (2) of this subsection."  Paragraph 2 limits

a citizen suit for inaction to those acts or duties which are "not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). Read in tandem, these two provisions mean that the district court's jurisdiction is limited to cases for unreasonable delay where the EPA fails to perform a non-discretionary act. (*See Sierra Club v. Leavitt*, 355 F.Supp.2d 544, 549 (D.C. Dist. 2005) ("a person may only bring an action in [the District] Court to compel the Administrator to perform a duty that is 'not discretionary.'")

Therefore, Congress did not shift jurisdiction for all unreasonable delay claims to the district courts but only those involving acts that are "non-discretionary with the Administrator" under Paragraph 2. Because EPA has no time certain by which to decide California's waiver application, EPA's duty to act is discretionary under *Thomas*, and jurisdiction is conferred on this Court. The 1990 Act did not alter *Thomas*'s interpretation of a discretionary act, and did not change the jurisdictional rule of *Thomas*.

### C.     The House Rejected The Senate's Proposal To Shift Jurisdiction To The District Court.

EPA mistakenly relies on Senate Report No. 101-228 to support a construction of 42 U.S.C. § 7604(a) that would encompass both discretionary and non-discretionary duties and acts. S. Rep. No. 101-228, at 398 (1989) reprinted in 1990 U.S.C.C.A.N. 3385, 3757. This report was written to explain a proposed amendment that was never adopted. The proposed amendment, Senate Bill 1630, would have placed jurisdiction over discretionary and non-discretionary act cases in the district courts by substituting the bolded paragraph 2 for the bracketed paragraph 2, below, in 42 U.S.C. § 7604(a):

CITIZEN SUITS

SEC. 304. (a) Except as provided in subsection (b), any person may commence a civil action on his own behalf--

  (1) . . . .

  [(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this Act which is not discretionary with the Administrator, or]

  (2) **against the Administrator where there is alleged a failure to act that violates one or more of the standards set forth in section 307(d)(9), or constitutes unreasonable delay, provided however that a failure to act does not include a written decision not to take action which the Administrator designates, within such decision, as a final action within the meaning of section 307(b)(1)**;

Clean Air Act Amendments of 1990, S. 1630, 101st Cong., 1st Sess. §609, p. 648 (Dec. 20, 1989). The Senate's proposed language lacked the limitation contained in Paragraph 2 and did not distinguish between discretionary and non-discretionary acts.

However, the House voted to strike the Senate's proposed amendment. 104 Stat. 2399, PL 101-549, House Debate (May 23, 1990) (Legislative History of the Clean Air Act Amendments at p. 3019.) The House proposed its own amendments to 42 U.S.C. § 7604(a) in House Bill 3030:

> (f) UNREASONABLE DELAY.--Section 304(a) is amended by adding the following at the end thereof: "The district courts of the United States shall have jurisdiction to compel (consistent with paragraph (2) of this subsection) agency action unreasonably delayed, except that an action to compel agency action referred to in section 307(b) which is unreasonably delayed may only be filed in a United States District Court within the circuit in which such action would be reviewable under section 307(b). In any such action for unreasonable delay, notice to the entities referred to in subsection (b)(1)(A) shall be provided 180 days before

commencing such action.

Calendar No. 113, H.R. Rep. No. 494, 101st Cong., 2nd Sess. 1990 (Legislative History of Clean Air Act Amendments of 1990 at p. 2349-50.)

The competing Senate and House bills were presented to a joint conference committee. The bill that emerged contained the House language rather than the Senate language. H.R. Rep. No. 952, 101st Cong., 2nd Sess. 1990 (October 26, 1990). This House language is the version that was finally adopted. 1990 Amendments to the Clean Air Act, PL 101-549, (November 15, 1990) § 707(f); 104 Stat 2574, 2683 (1990).

EPA's claim that the House bill is simply a differently worded version of the Senate bill does not withstand scrutiny. The Senate bill would have made unreasonable delay an entirely independent basis for jurisdiction in the district courts. The House version that Congress adopted retained the express reference to non-discretionary acts, and the amendment incorporated this limitation by providing the district courts with jurisdiction over unreasonable delay cases that involved acts that were "non-discretionary." In other words, the House bill that Congress adopted narrowed the broad transfer of jurisdiction contemplated by the Senate bill.

In these circumstances, Congress's rejection of the Senate version is strong evidence that Congress did not intend that the adopted amendment extend unreasonable delay cases to those involving a discretionary duty of timeliness. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-43, 107 S.Ct. 1207 (1987) ("Few principles of statutory construction are more compelling than the proposition that Congress does not

intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language"); *Russello v. United States*, 464 U.S. 16, 23-24, 104 S.Ct. 296, (1983) ("Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended"). Accordingly, the Senate Report does not support EPA's broad construction of the 1990 amendments. Instead, it shows that Congress chose to maintain jurisdiction over discretionary act cases in the federal courts of appeals.

In short, this Court has jurisdiction over this unreasonable delay claim.

## II.

**THE COURT SHOULD GRANT CALIFORNIA'S PETITION BECAUSE EPA HAS EXCEEDED ITS OWN DEADLINE FOR PROVIDING A FINAL ACTION AND THERE IS NO GOOD REASON WHY IT HAS NOT ISSUED ITS "APPROPRIATE DOCUMENTS" BY NOW.**

### A. <u>The Court Uses A Rule Of Reason To Evaluate The Reasonableness Of EPA's Delay.</u>

This Court drew together a list of factors that can provide "useful guidance in assessing claims of agency delay" in *TRAC, supra,* 750 F.2d at 80. These factors can include an "indication of the speed with which [Congress] expects the agency to proceed; the nature and extent of the interests prejudiced by delay, particularly in matters involving human health and welfare; and the effect of expediting delayed action on agency activities of a competing or higher priority. *Id.* The Court emphasized that the time agencies take to make decisions must be governed by a rule of reason, and finally stated that a court

need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed. *Id.*

More recently, this Court stated that the issue of unreasonable delay "will depend in large part, . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Mashpee Wampanoag Tribal Council, Inc., v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Application of the three principal factors identified in *Mashpee* show that EPA has unreasonably delayed issuing the detailed documents that it considers essential for final agency action. The reasonableness of the delay in EPA's action is reviewed for an abuse of discretion. *Thomas, supra*, 828 F.2d at 792.

     **B.**    **EPA Broke Its Promise To Provide California A "Final Determination" On California's Waiver Application Before The End Of 2007.**

Over two years ago, California adopted regulations to reduce greenhouse gas emissions from new motor vehicles, and applied to EPA for the waiver authorized by the Clean Air Act. EPA refused to act on that application until the Supreme Court decided *Massachusetts v. EPA*. Even after the Supreme Court's decision, EPA continued to delay its action on California's waiver application, despite the repeated entreaties of Governor Schwarzenegger and other government officials that EPA terminate its delay. *Supra* at 6-8.

With growing public outcry over EPA's inaction, EPA's Administrator promised both Governor Schwarzenegger and the United States Senate Environment and Public

Works Committee that he would make a "final determination" on the California waiver by the end of 2007. JA000612 and JA000614-615. Because of the issues at stake, California filed this petition on November 8, 2007, as well as a protective action in the United States District Court for the District of Columbia, *State of California v. EPA, et al.,* Case No. 1:07-CV-2024 (RCL). California's foresight was soon vindicated.

On December 19, 2007, EPA issued its decision to deny California's waiver application. But EPA sought to avoid judicial accountability by claiming, within two days, that its denial was not a "final action" for the purposes of judicial review. JA000601-602. EPA still has never explained why it did not honor its commitment to issue a final determination by the end of 2007. Nor has it promised when it will provide the "appropriate documents" that it believes are necessary to make its decision final.

Without judicial intervention requiring that EPA complete its process, California potentially will be left unable to enforce its emission standards in the current model-year and without the ability to pursue judicial review on the merits of EPA's denial of its waiver application. EPA's unexplained failure to honor its commitment to issue a final determination by the end of last year is unreasonable.

## C.     EPA's Remaining Task Of Drafting The Details Of Its Decision Is Not Complex.

The Administrator's December 19, 2007, letter reveals that the only remaining task is the exposition of the details supporting his rationale. The December 19th letter, and the Administrator's accompanying public explanation of his decision, show that he has completed his decision-making process. JA000597-598. His staff needs only to organize

24

his analysis into a narrative explanation.  Completion of the administrative process at this point should be pro forma and ministerial.

The scope of EPA's task is also limited.  The Administrator is basing his denial solely on a disputed finding that California does not need its greenhouse gas regulations to "meet compelling and extraordinary conditions," one of the criteria that EPA considers in making a waiver determination under section 209(b).  JA000598.  EPA has applied this criterion in many of its prior decisions, and therefore EPA already has developed a legal framework to analyze that criterion in this case.  *See, e.g.*, 49 Fed.  Reg. 18887, 18889-18890, May 3, 1984; 71 Fed. Reg. 78190, 78192, December 28, 2006.

Finally, EPA has extensive knowledge and experience regarding the impacts of global warming in California.  EPA reported  on these impacts more than 10 years ago.  JA000584.  EPA's familiarity with the issues, both legal and scientific, should make its drafting task that much easier.

### D.    EPA Acknowledges That Agency Resources Are Available To Draft The Final Documentation And That California's Application Has High Priority.

EPA also clearly had, and had assigned, the resources needed to draft the final documentation to support the Administrator's decision.   Five months earlier the Administrator reported to Congress that EPA was committing all necessary resources to the project and was performing a rigorous analysis:

> EPA is devoting the necessary resources in order to expeditiously review the extensive comments we have received, and respond to the waiver request. The Agency is performing a rigorous analysis in order to properly consider

> the legal and technical issues that we must address in making a decision under the Clean Air Act waiver criteria. In recent written correspondence with California's Governor Schwarzenegger, I have committed to issuing a decision on the waiver by the end of this year. We will continue to inform the Committee of our progress in this matter.

JA000614-615.  Thus, EPA's drafting delay cannot be blamed on a lack of resources or the need for new rigorous analysis.  And, although courts are understandably reluctant to get involved in setting an agency's priorities, this is not one of those cases—the EPA Administrator himself set the priority on this task, by stating that California's application was receiving the most expeditious review and would be completed by the end of 2007. Indeed, even while disputing the December 2007 decision was final agency action, the EPA also stated that this petition is "likely to become moot in the near future." JA000602.  That was nearly a month ago.

### E.    There Would Be Significant Adverse Impacts To California And The Public Interest If EPA Continues Its Delay.

EPA's delay threatens to put California in an untenable situation.  Without the waiver, California is unable to enforce its standards for the 2009 model-year, which began in January 2008.  If the agency is correct that the December 19th letter is not itself final action, then California lacks a forum for timely judicial review of the merits of EPA's refusal to grant a waiver.  In addition to its inability to enforce its greenhouse gas standards in the current model-year, California's ability to implement its greenhouse gas emission standards in future years will also be at risk while California seeks judicial reversal of EPA's decision.  California's standards require that automakers achieve

26

progressively greater reductions in future model-years through 2016. As those years pass without an enforceable regulation, the total emission reductions achievable will decline further. The longer that EPA delays in memorializing the details of its decision, the more the enforcement of California's standards are imperiled.

Finally, there is no justification for the additional months of delay that would be engendered by litigating the reviewability of the Administrator's December 19th decision. EPA promised Governor Schwarzenegger that it would make its "final determination" in 2007 and repeated that assurance to Congress. EPA has only to state the details of the Administrator's rationale for denying the waiver, and it has publicly stated that it has the resources to do the job and it will issue those details "as soon as possible." There is no excuse for any more delay.

# CONCLUSION

California requests that the Court grant its petition and that it compel EPA

to issue the documentation EPA contends constitutes final agency action within 30 days

of the Court's decision.


Dated:  January 14, 2008                    Respectfully Submitted,

                                            EDMUND G. BROWN Jr.
                                            Attorney General of the State of California
                                            MARY E. HACKENBRACHT
                                            Senior Assistant Attorney General
                                            ELLEN M. PETER
                                            Supervising Deputy Attorney General
                                            JOSEPH B. BARBIERI
                                            Deputy Attorney General


                                            JAN ZABRISKIE
                                            Deputy Attorney General


                                            Attorneys for Petitioner State of California by and
                                            through Arnold Schwarzenegger, Governor of the
                                            State of California, and the California Air
                                            Resources Board